UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THOMAS HOY AND
ELKE HOY

                                    Plaintiffs,

                                                        **VERIFIED COMPLAINT**

            -against-

THE INCORPORATED
VILLAGE OF BAYVILLE,
SPRINT SPECTRUM REALTY COMPANY, L.P.,
as Successor in Interest to SPRINT SPECTRUM, L.P.,          **JURY TRIAL DEMANDED**
NEXTEL OF NEW YORK d/b/a as NEXTEL
COMMUNICATIONS, OMNIPOINT FACILITIES
NETWORK 2, LLC, and NEW YORK SMSA LIMITED
PARTNERSHIP

                                    Defendants.
------------------------------------------------------------------X

        Plaintiffs, by their attorneys, Campanelli & Associates, P.C., as and for their complaint

respectfully allege as follows:

                        I        **NATURE OF THE ACTION**

        1.        This is a civil action seeking a declaratory judgment, equitable relief, costs and

attorneys fees, brought 28 U.S.C. §1331, 28 U.S.C. §2201-2202, 42 U.S.C. §1983 and 42 U.S.C.

§1988, to redress violations of the plaintiffs' rights to due process as guaranteed under the 5th

and 14th Amendments to the United States Constitution.

2.      The plaintiffs seek to secure, among other things, a declaratory judgment from the Court declaring that the Telecommunications Act of 1996 (47 U.S.C. §151 et seq.) does not pre-empt the plaintiffs from securing the enforcement of their vested property rights arising under restrictive covenants within a deed.

3.      This action concerns a parcel of real property which was donated to the defendant Incorporated Village of Bayville, and was deeded to same, subject to several explicit and affirmative restrictive covenants, which were made to run with the land.

4.      A copy of such deed is annexed hereto as Exhibit "A."

5.      The covenants contained within the deed explicitly provided that: (a) the property could never be put to any commercial use or used for a commercial enterprise, and (b) the property could never be put to any use which was found offensive, obnoxious and/or dangerous, "in any way, whatsoever" to property owners situated within one mile of the property.

6.      The rights to enforce such covenants are property rights vested within the plaintiffs under the explicit provisions of the deed, and are property rights recognized under New York State Law.

7.      In direct violation of those restrictive covenants, the defendant Village has granted licenses to the other defendants herein to use the property for a commercial enterprise, and to put the property to a purely commercial use, by causing the installation of an antenna farm, consisting of more than <u>fifty (50)</u> commercial cellular transmission antennas, which are owned by private companies, and have been installed upon the surface of a water tower on the property, for the commercial transmission and receipt of both microwaves and RF emissions.

2

8.     In further violation of the restrictive covenants within the deed, the Village, as proprietor of the property, has also permitted the property to be used in a manner which is obnoxious, highly offensive, and (as apparently determined by the Village), potentially dangerous to the inhabitants of the Village.

9.     Apparently possessed of a belief that there exists potentially harmful effects from the cumulative radiation emanating from more than <u>fifty 50</u> antennas which have been clustered on the water tower, the Village had posted a warning sign on the property which states:

> "NOTICE: RF controlled area beyond this point.
> Radiofrequency (RF) emissions *may exceed FCC standards for general public exposure*. Only authorized workers are permitted to enter."
> (Emphasis added.)

10.     This excessive concentration of 50+ cellular transmission antennas, and the above-referenced sign, are situated a mere <u>fifty (50) feet</u> from Bayville's only elementary school.

11.     With the antenna cluster being only <u>fifty (50) feet</u> away, the children who attend the Bayville elementary school, and their teachers and staff, are continuously subject to the cumulative Microwave and RF emissions of all of such fifty commercial cellular antennas on a daily basis.

12.     Upon information and belief, as many as thirty (30%) percent of the teachers and employees at the Bayville Elementary School have been diagnosed with some form of cancer or leukemia.

13.     According to a licensed health care professional, whose practice is in Bayville, the rate of cancer and/or leukemia diagnosis among the children of Bayville is three hundred and ninety eight (398%) percent higher than the state-wide average within the State of New York.

3

14.     In 2002, the Second Circuit held that, "The Telecommunications Act does not preempt nonregulatory decisions of a local government entity or instrumentality acting in its proprietary capacity." Sprint Spectrum L.P. v. Mills, 283 F.3d 404 (2nd Cir. 2002).

15.     In 2003, the Appellate Division, Second Department, of the New York State Supreme Court ruled that the Telecommunications Act of 1996 does not pre-empt the enforcement of restrictive covenants running with the land, in Chambers v. Old Stone Hill Road Associates, et al, 303 A.D.2d 536 (2003)

16.     In 2007, four residents of Bayville commenced an action in the New York State Supreme Court, under CPLR Article 78, to challenge a decision by the Village to install police antennas on the water tower, citing the restrictive covenants in the deed described herein.

17.     The current plaintiffs were not parties to that action, but learned of the action, only after it had been filed by persons other than themselves.

18.     By decision dated August 10, 2008, the New York State Supreme Court, Nassau County dismissed the petition, premised upon a finding that (contrary to the 2003 ruling of the Appellate Division) the federal Telecommunications Act of 1996 pre-empted enforcement of the restrictive covenants in the deed, stating as follows:

> "The court determines that enforcement of the restrictive
> covenant would conflict with federal authority"

19.     See Exhibit "B," at page 7, that being a true copy of the lower State Court's decision in the respective matter of Perrin v. Baville Village Board et al, Supreme Court, Nassau County, Index # 07-9468 (August 13, 2008).

20.     Based upon the lower Court's 2007 decision, the defendant Village of Bayville now posits that the federal Telecommunications Act of 1996 pre-empts enforcement of the restrictive covenants in the deed.

21.     As property owners who were not parties to the <u>Perrin</u> action, the plaintiffs seek a declaratory judgment, declaring that, contrary to the 2007 ruling from the New York State Supreme Court, Nassau County, the Telecommunications Act of 1996 does not pre-empt the enforcement of the plaintiffs' rights to enforce the covenants within the deed, which empower the plaintiffs to prevent the property from being used for a commercial enterprise, commercial purpose, or for a use which they find obnoxious, offensive and/or dangerous.

22.     The plaintiffs seek to enforce their vested property rights under the restrictive covenant within the deed described herein above.  They assert that the Village is committing two separate and distinct violations of the restrictive covenants by:

(a)     causing the property to be used for commercial purpose, which is explicitly prohibited by the restrictive covenants, and

(b)     employing the property in a manner which is deemed both obnoxious and offensive to the plaintiffs, which is also explicitly prohibited by the deed.

23.     The plaintiffs herein do not assert a claim that the Telecommunications Act of 1996 is unconstitutional as written.

24.     The plaintiffs assert that it is unconstitutional *as it is being applied* by the Village of Bayville as proprietors of the subject property, in that the Act does not preempt, and was not intended to preempt, the enforcement of private property rights expressly created within restrictive covenants within a deed.

5

25.     To the extent that the Village is applying the Act in such manner, the plaintiffs are being deprived of their property rights without Due Process of law, in violation of the constraints of the 14th Amendment, and they are entitled to seek redress under 42 U.S.C. §1983.

26.     Concomitantly, the plaintiffs also seek a declaratory judgment, declaring that (a) the Telecommunications Act of 1996 does not preempt enforcement of their property rights in the restrictive covenants, and (b) that as such, the Village exceeded its authority, as property owner, in granting licenses to the other defendants in violation of the restrictive covenants within.

27.     The plaintiffs further seek an order enjoining the defendants from continuing their commercial and offensive use of the property, in violation of the deed.


## II    JURISDICTION AND VENUE

28.     Jurisdiction of the court is invoked pursuant to 28 U.S.C. §1331 in that this is a civil action arising under the Constitution and laws of the United States.

29.     Jurisdiction of the court is also invoked pursuant to 28 U.S.C. §1343(a)(3) and §1343(a)(4) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, and under 28 U.S.C. §1367 for ancillary claims under New York State law.

30.    Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201(a) and 2202.

31.    Plaintiffs seek permanent injunctive relief pursuant to Fed. R. Civ. P. 65.

32.    The plaintiffs possess standing to commence and maintain this action, by virtue of their fee ownership of real property situated less than one mile from the subject property, thereby vesting them with the right to enforce the restrictive covenants described herein, as provided under the explicit terms of the deed and the covenants contained therein.

33.    Plaintiffs seek reasonable attorney's fees as part of the costs authorized to the prevailing party in an action pursuant to 42 U.S.C. §1983, predicated upon 42 U.S.C. §1988 and 42 U.S.C. §2000.

34.    Venue is proper in the Eastern District of New York, pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in Nassau County, New York, and the defendant's actual place of business and/or employ was within the Eastern District of New York.

### III    **THE PARTIES**

A    The Plaintiffs

35.    At all relevant times mentioned herein, plaintiff THOMAS HOY, was and still is an individual residing at 24 Cat Hollow Road, Bayville, County of Nassau, New York 11709.

36.    At all relevant times mentioned herein, plaintiff ELKE HOY, was and still is an individual residing at 24 Cat Hollow Road, Bayville, County of Nassau, New York 11709.

37.     At all relevant times mentioned herein, plaintiffs resided, and still reside, within one (1/4) quarter mile of a parcel of real property which was deeded to the defendant Village of Bayville, by Mona Williams, for the purposes of having it used as a public park, and as a location for the installation of a water tower to be used for the benefit of the residents of Bayville.

B.      The Defendants

38.     Upon information and belief, at all relevant times mentioned herein, the defendant, THE VILLAGE OF BAYVILLE ("VILLAGE"), was and continues to be a municipal corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 34 School Street, Bayville, NY 11709.

39.     At all times relative herein, the defendant SPRINT SPECTRUM REALTY COMPANY, L.P., as Successor in Interest to SPRINT SPECTRUM, L.P., ("SPRINT") was and continues to be a Delaware limited partnership having a principal place of business situated at 6391 Sprint Parkway, Overland Park, Kansas.

40.     Upon information and belief, at all relevant times described herein, SPRINT was engaging in business within the State of New York, and owned, operated and maintained cellular and/or RF antennas which are situated within New York and the maintenance of which have given rise to the federal claims asserted herein.

41.     Upon information and belief, at all times relative herein, the defendant NEXTEL OF NEW YORK d/b/a as NEXTEL COMMUNICATIONS ("NEXTEL") was and continues to be a Delaware Corporation, having a principal place of business situated at 1 North Broadway, White Plains, New York.

8

42.    Upon information and belief, at all relevant times described herein, NEXTEL was engaging in business within the State of New York, and owned, operated and maintained cellular and/or RF antennas which are situated within New York and the maintenance of which have given rise to the federal claims asserted herein.

43.    Upon information and belief, at all times relative herein, the defendant OMNIPOINT FACILITIES NETWORK  2, LLC ("OMNIPOINT") was and continues to be a limited liability company, and a wholly owned subsidiary of T-Mobile USA Inc, a Delaware corporation, having a principal place of business situated at 4 Sylvan Way, Parsippany, New Jersey.

44.    Upon information and belief, at all relevant times described herein, OMNIPOINT was engaging in business within the State of New York, and owned, operated and maintained cellular and/or RF antennas which are situated within New York and the maintenance of which have given rise to the federal claims asserted herein.

45.    Upon information and belief, at all times relative herein, the defendant NEW YORK SMSA LIMITED PARTNERSHIP ("SMSA") was and continues to be a Delaware Limited Partnership having a principal place of business situated at 2000 Corporate Drive, Orangeburg, New York.

46.    Upon information and belief, at all relevant times described herein, SMSA was engaging in business within the State of New York, and owned, operated and maintained cellular and/or RF antennas which are situated within New York and the maintenance of which have given rise to the federal claims asserted herein.

## IV    THE FACTS

### A.    The Schoolhouse Road Property

47.    This action concerns a parcel of real property situated on Schoolhouse Road, within the Incorporated Village of Bayville, New York, said parcel hereinafter referred to as the "Schoolhouse Road Property."

48.    In 1950, the fee owner of the Schoolhouse Road Property, Mona Williams, granted and conveyed title to the Schoolhouse Road Property to the Incorporated Village of Bayville.

49.    As explicitly set forth within the deed within which title to the property was conveyed to the Village, in consideration for such grant, the Village covenanted and agreed, for itself, its successors and assigns, that the Schoolhouse Road Property be held subject to the explicitly stated conditions that:

> "... no public amusements, concessions, vending, restaurants or other "*commercial enterprises*" shall be permitted thereon, and in addition, *no use of the premises shall be made or permitted which would be offensive, dangerous, or obnoxious to the owners or any owner (now or hereafter) of land within a radius of one mile of the premises whether by reasons of smoke, odor, fumes or any other use whatsoever offensive to such owners or owner of land.*"

50.    As intended by the grantor, and as set forth within such deed, the restrictions set forth within same became covenants, running with the land, which vested property rights in the owners of properties situated within a one mile radius of the Schoolhouse Road Property.

10

51.     The deed further explicitly provided that (a) a specified portion of the property was to be used as a "landscaped park," (b) a second specified portion of the property was to be used for municipal uses, subject to the restrictions set forth within paragraph "41" herein above, and (c) that a public water tank could be erected upon a specified area, again subject to the restrictions set forth within paragraph "41" herein above.

52.     As expressly permitted under the deed, sometime after the Schoolhouse Road Property was deeded to the Village, the Village caused a public water tower to be constructed upon the property.

53.     The water tower is situated approximately fifty (50) feet from the Bayville Elementary School, which is also situated on Schoolhouse Road.

54.     In direct breach of the restrictive covenants which bind the Schoolhouse Road Property, and the plaintiffs' property rights regarding same, the Village of Bayville has granted licenses to the other defendants herein to operate a commercial enterprise upon the property, caused and permitted the property to be used for commercial purposes, and has caused and permitted the property to be used in a manner which is offensive, dangerous and obnoxious to the plaintiffs.

55.     The Village has caused and permitted the property to be used as "an Antenna Farm" whereat the Village has caused and permitted to be installed upon the water tower on the Schoolhouse Road Property an excessive saturation of more than fifty (50) Cellular transmission antennas, each and every one of which emits RF radiation and/or microwave radiation in their day-to-day operation.

11

56.     Those antenna are owned by, have been installed by, and are used by the commercial defendants joined herein, as commercial entities, for purely commercial purposes.

57.     Each and every one of those antennas are owned, operated and maintained upon the water tower, as part of a commercial enterprise which is being operated for profit.

58.     That Antenna Farm, and saturation of cellular antennas and their emissions of RF radiation and microwave radiation, are situated a scant fifty (50) feet from Bayville's only Elementary School, "the Bayville School."

59.     According to a licensed health care practitioner, who maintains a medical office in Bayville, and treats Bayville residents, the rate of cancer and/or leukemia in the Village of Bayville is 398.2% higher than the rate of cancer and/or leukemia throughout New York State.

60.     Upon information and belief, as many as 30% of the teachers and staff in the Bayville elementary school have been diagnosed with cancer or leukemia.


B.      The Village has violated the restrictive covenants by permitting and/or causing both concessions and commercial enterprises to be maintained upon the Schoolhouse Road Property

61.     The deed which conveyed the Schoolhouse Road property to the Village explicitly proscribed that:

> "No . . . *concessions*, vending, restaurants or other
> *commercial enterprises* shall be permitted
> [upon the premises conveyed to the Village]"

12

62.     In direct violation of both facets of the restrictive covenant, the Village of Bayville, has granted, caused and/or permitted numerous concessions and commercial enterprises to be operated upon the premises, by granting private corporations the right to install and maintain more than 50 antenna transmitters and/or receivers, as part of commercial enterprises which are being operated for private profit.

63.     More specifically, the Village granted each of the other defendants licenses to install upon the subject property: "antenna arrays," associated transmission lines, mounting apparatus, 24-hour, 365 day easements, one or more equipment housings, and wires, cables and necessary connections and equipment between the antenna arrays and equipment housings (See e.g. Exhibit "F" at pages 3-4, paragraph 1).

64.     In granting such concessions and licenses to the other defendants herein, the defendant Village acted in a proprietary capacity, and not in a regulatory capacity.

65.     By definition, a "concession" is (a) something conceded by a government or a controlling authority, as a grant of land, a privilege or a franchise, or (b) a space or privilege within certain premises for a subsidiary business or service.

66.     The defendant Village of Bayville has granted precisely such a privilege by executing license agreements, granting commercial companies a "license" to install, maintain and operate, commercial cellular antenna, as part of a commercial business which is being operated for profit.

67.     Contemporaneously, the defendant Village of Bayville has violated the restrictive covenant by causing and permitting a commercial enterprise to be operated upon the property.

68.    By definition, a commercial enterprise is an operation which provides goods or services for the purpose of generating a profit, which is realized by the owners of such enterprise.

69.    The defendant Village of Bayville has permitted the installation and operation of more than 50 antenna upon the water tower, to be employed there as part of a commercial enterprise, which encompasses the provision of cellular telephone services, for the purpose of generating a profit, which is realized by the companies which own and operate such antennas.

70.    Given the forgoing, the defendant Village of Bayville has violated both facets of the restrictive covenant which proscribes against permitted concessions or commercial enterprises to be operated upon the premises.

71.    The plaintiffs, Thomas Hoy and Elke Hoy, reside at, and are the fee owners of the real property situated at, 24 Cat Hollow Road, Bayville.

72.    The plaintiffs' property is situated less than one mile from the Schoolhouse Road Property, and as such, the plaintiffs are possessed of a property right, under New York State Law, in the form of a right to enforce the restrictive covenants, described herein above.

73.    To the extent that the defendant Village of Bayville has interpreted, or secured a State Court interpretation of The Telecommunications Act of 1996 as pre-empting the plaintiffs' property rights, the plaintiffs have standing to secure a declaratory judgment that the Act does not preempt enforcement of their property rights.

74.    To the extent that the Act has been applied by the defendants to deprive the plaintiffs of such property rights, the plaintiffs have been deprived of such property rights without Due Process of Law, as guaranteed to the plaintiffs under the 14th Amendment, and the plaintiffs have standing to pursue redress for such deprivation, pursuant to 42 U.S.C. §1983.

14

C.   The Village has violated the restrictive covenants
by permitting and/or causing use of the property
which is offensive and obnoxious to the plaintiffs, being
<u>the owners of property within one mile of the premises</u>

75.   As explicitly set forth within the deed within which title to the property was conveyed to the Village, in consideration for such grant, the Village covenanted and agreed, for itself, its successors and assigns, that the Schoolhouse Road Property be held subject to the explicitly stated conditions that:

"... no public amusements, concessions, vending, restaurants or other *"commercial enterprises"* shall be permitted thereon, and in addition, *no use of the premises shall be made or permitted which would be offensive, dangerous, or obnoxious to the owners or any owner (now or hereafter) of land within a radius of one mile of the premises whether by reasons of smoke, odor, fumes or any other use whatsoever offensive to such owners or owner of land."*

76.   As intended by the grantor, and as set forth within such deed, the restrictions set forth within same became covenants, running with the land, which vested property rights to the owners of properties situated within a one mile radius of the Schoolhouse Road Property (*See* Exhibit "A" at paragraph 1), and a one mile radius of same (*Id.* at paragraph 2).

77.   In direct violation of the restrictive covenants, by granting private corporations the right to install and maintain a saturation of more than 50 antenna transmitters and/or receivers upon the water tower, the Village of Bayville, has made and permitted a use of the Schoolhouse Road Property which is offensive, obnoxious and dangerous, or perceived of as dangerous, to the plaintiffs, who are the owners of land situated within one mile of the property.

78.    In granting such concessions and licenses to the other defendants herein, the defendant Village acted in a proprietary capacity, and not in a regulatory capacity.

79.    The restrictive covenants in the deed are specific and do not reflect terms of art used when drafting deeds.

80.    Looking at the meaning and intentions of the drafter of the restrictive covenant, it is clear on its face that the plaintiffs are within the class of persons within whom the grantor intended to vest the right to enforce the covenant, and concomitantly to afford them against uses of the property which the plaintiffs found to be either (a) a commercial use, or (b) a use which the plaintiffs found to be offensive or obnoxious.

81.    Each of the plaintiffs recognize the property's current use as commercial, and/or encompassing the operation of a "commercial enterprise" upon the property, and as such, each of the plaintiffs is vested with a right to secure enforcement of the restrictive covenant to prevent the continued use of the property for operation of such commercial enterprise.

82.    Each of the plaintiffs find the use of the property as an antenna farm both offensive and obnoxious, in that the saturation of more than fifty (50) antennas upon the property is visually and aesthetically offensive, obnoxious and contrary to the character and appearance of their residence and is inconsistent with the general appearance of the residential neighborhood within which the plaintiffs' home is situated.

83.    Each of the plaintiffs find the use of the property as an antenna farm both offensive and obnoxious, in that the saturation of more than fifty (50) antennas, and the acknowledgement by the defendant Village that the cumulative RF emissions emanating from those 50 plus antennas may exceed FCC standards for general public exposure.

16

84.     Each of the plaintiffs find the use of the property as an antenna farm both offensive and obnoxious, in that, according to a local real estate broker, homes located near the antenna farm have been devalued 3 to 5 %, as a result of their proximity to the antenna farm, which has been confirmed by a finding that there is an inverse proportion to the amount of antennas on a cell phone tower and the value of the resale of the home.

        D.     The defendants were aware of the restrictive covenants, and entered agreements which explicitly provide that in the event that Village exceeded its authority by granting the commercial defendants a license to install and maintain RF antennas upon the subject parcel, the defendant Village has the contractual right to terminate such licenses and require that <u>the antennas be removed</u>

85.     Upon information and belief, the defendant Village has entered written license agreements with defendants Sprint, Nextel, Omnipoint and SMSA, pursuant to which the Village granted each of the other respective defendants license to install and maintain RF antennas upon the property which is the subject of this action.

86.     Upon information and belief, at the time such licensing agreements were entered, and at the time that the defendants installed antennas upon the subject property, each and every one of the defendants were affirmatively aware of the restrictive covenants set forth within the deed described herein, as well as the plaintiffs' right to secure enforcement of such restrictive covenants.

87.    Upon information and belief, as a result of such knowledge, in entering such license agreements, and installing such antennas, the defendants caused the license agreements by and between them to explicitly provide that in the event that the granting of the license to install and maintain such antennas is, or was, "beyond the authority of the Village to permit," the Village retained, and still possesses the contractual right to terminate each of the license agreements and to require the removal of the antennas which have been installed upon the subject property.

88.    Consistent with such right, the contractual agreements between the defendants explicitly provide that upon the cancellation of such licenses, by the Village, the Village may "cause" the other defendants to remove "any equipment" on the subject property "without any liability to the [Village]."

<div align="center">Sprint</div>

89.    Annexed hereto as Exhibit "C" is a copy of a license agreement by and between the Village and defendant Sprint.

90.    Upon information and belief, at the time the defendant Village and defendant Sprint entered such agreement, *they affirmatively knew of the restrictive covenants described within this complaint.*

91.    As a direct result of such knowledge, the defendants included a provision within the license agreement which provided that in the event that "it is determined to be beyond the authority of the [Village]" to grant such license, the Village is entitled to cancel the license agreement, and Sprint must then remove its equipment from the subject premises "without any liability to the [Village]. *See* Exhibit "C" at page 8, paragraph 10(b).

### Nextel

92.     Annexed hereto as Exhibit "D" is a copy of a license agreement by and between the Village and defendant Nextel.

93.     Upon information and belief, at the time the defendant Village and defendant Nextel entered such agreement, *they affirmatively knew of the restrictive covenants described within this complaint.*

94.     As a direct result of such knowledge, the defendants included a provision within the license agreement which provided that in the event that "it is determined to be beyond the authority of the [Village]" to grant such license, the Village is entitled to cancel the license agreement, and Nextel must then remove its equipment from the subject premises "without any liability to the [Village]. *See* Exhibit "D" at page 7, paragraph 10(b).

### Omnipoint

95.     Annexed hereto as Exhibit "E" is a copy of a license agreement by and between the Village and defendant Omnipoint.

96.     Upon information and belief, at the time the defendant Village and defendant Omnipoint entered such agreement, *they affirmatively knew of the restrictive covenants described within this complaint.*

97.     As a direct result of such knowledge, the defendants included a provision within the license agreement which provided that in the event that "it is determined to be beyond the authority of the [Village]" to grant such license, the Village is entitled to cancel the license agreement, and Omnipoint must then remove its equipment from the subject premises "without any liability to the [Village]. *See* Exhibit "E" at page 8, paragraph 10(b).

19

<u>SMSA</u>

98.     Annexed hereto as Exhibit "F" is a copy of a license agreement by and between the Village and defendant SMSA.

99.     Under the terms of such license agreement, if it is determined that the Village did not have authority to enter such license agreement, SMSA is entitled to terminate the agreement. *See* Exhibit "E" at page 8-9, paragraph 14.

E.     Conflicting New York State Court Opinions,
       and the Village's reliance upon same

100.    In 2003, the Appellate Division, Second Department of the New York State Supreme Court ruled that the Telecommunications Act of 1996 does not pre-empt the enforcement of restrictive covenants running with the land <u>Chambers v. Old Stone Hill Road Associates, et al,</u> 303 A.D.2d 536 (2003)

101.    In a decision diametrically opposed to the New York Appellate Courts' decision in <u>Chambers,</u> in 2008, the New York State Supreme Court, Nassau County, ruled that the Telecommunications Act of 1996 "<u>did</u>" pre-empt enforcement of the restrictive covenants described within the current action.

102.    The plaintiffs herein were not parties to the lower court action, (<u>Perrin</u> described *supra*), nor were they aware that it had been commenced.

103.    Based upon the 2007 holding of the New York State Supreme Court, in Nassau County, the defendant Village of Bayville has adopted the position that, as enacted by the U.S. Congress, the federal Telecommunications Act of 1996 (47 U.S.C. §151 et seq.) "pre-empts" enforcement of the restrictive covenants within the deed described herein.

104.    Based upon such position, the defendant Village has continued to permit and authorize the installation and maintenance of the antenna farm described herein.

105.    In permitting the property to be used for commercial enterprises, and in a manner which the plaintiffs find to be obnoxious, offensive and potentially dangerous, the Village has violated the restrictive covenants which continue to run with the land, and the plaintiffs are legally entitled to secure enforcement of same, through the instant action.-00

## Count I

## Declaratory Judgment

106.    Plaintiffs repeat and reiterate the allegations set forth within paragraphs "1" through "105" with the same force and effect as if fully set forth at length herein.

107.    As set forth herein above, the plaintiffs seek enforcement of restrictive covenants which were incorporated into the deed.

108.    As enacted by the U.S. Congress, The Telecommunications Act of 1996 was not intended to pre-empt enforcement of private property rights in the form of restrictive covenants running with the land, nor was it intended to prevent municipalities from complying with such restrictive covenants when acting in a proprietary capacity, as opposed to acting in the capacity of a zoning or regulatory authority.

109.    Since the Antenna Farm is being used by the defendants for commercial and not municipal purposes thereby the Village is acting in a proprietary manner, as opposed to a regulatory capacity, and as such, the defendant Village is not exempted from claims seeking enforcement of the restrictive covenants in the deed.

110.    Defendant Village of Bayville is operating the water tower for a corporate purpose and as such is acting as a proprietor, with all of the same restrictions and covenants as are placed upon any other person holding title to the Schoolhouse Road Property.

111.    As such, the plaintiffs are entitled to a declaratory judgment, declaring that the Telecommunications Act of 1996 does not pre-empt enforcement of their private property rights, in the form of their right to enforce the restrictive covenants described herein.

112.   Since the Telecommunications Act of 1996 was not intended to pre-empt, and does not pre-empt, enforcement of such restrictive covenants, the plaintiffs are further entitled to a declaratory judgment that the defendant Village remains bound by the restrictive covenants contained within the deed which conveyed the subject property to the Village, and that the Village exceeded its authority by granting the remaining defendants licenses to use the property at issue for a commercial enterprise, and/or in a manner which is offensive and/or obnoxious to the plaintiffs.

113.   The plaintiffs are further entitled to a declaratory judgment adjudging that the defendant Village's application of federal Telecommunications Act of 1996 is unconstitutional, *as it is being applied by the defendant Village*, to deprive the plaintiffs in a manner which Congress did not intend, and in a manner which deprives the plaintiffs of property rights, without due process, in violation of the constraints of the 14th Amendment.

114.   An actual controversy exists because:

(a)   the plaintiffs seek to enforce restrictive covenants which were incorporated into a deed for the purpose of affording them protections, and which constitute property rights clearly established, and enforceable, under New York State Law,

(b)   the plaintiffs' position is supported by a ruling of the Appellate Division of The New York State Court, which ruled that the Telecommunications Act of 1996 does not preempt enforcement of such restrictive covenants,

(c)     a lower state Court, The New York State Supreme Court, Nassau County, subsequently issued a diametrically opposing ruling, holding that the Telecommunications Act of 1996 does pre-empt enforcement of the restrictive covenants which were intended to benefit the plaintiffs, and

(d)     based upon the lower Court's decision, the defendant Village is maintaining that enforcement of the restrictive covenants in favor of the plaintiffs is pre-empted by the Telecommunications Act of 1996.

## Count II

### Due Process Claim - 42 U.S.C. §1983

115.    Plaintiffs repeat and reiterate the allegations set forth within paragraphs "1"

through "114" with the same force and effect as if fully set forth at length herein.

116.    As the fee owners of real property which is situated within one mile of the

Schoolhouse Road Property, that being the same property which was conveyed to the Village via

the deed annexed hereto as Exhibit "A," the plaintiffs are possessed of a property right,

recognized under New York State Law, to secure the enforcement of the restrictive covenants

contained within the deed, to prevent the use of the property in a manner which the plaintiffs find

to be offensive, obnoxious and/or dangerous.

117.    By having interpreted and applied the Telecommunications Act of 1996 (47

U.S.C. §151 et seq.) as *pre-empting* enforcement of the plaintiffs' property rights, the defendant

Village has deprived the plaintiffs of such property rights, without due process of law, in

violation of rights guaranteed to the plaintiffs under the 14th Amendment to the United States

Constitution, and the Telecommunications Act of 1996 (47 U.S.C. §151 et seq.) is

unconstitutional, *as it is being applied by* the defendant Village.

118.    Having substantially interfered with and/or deprived the plaintiffs of both their

property rights, and liberty interests in their right to secure enforcement of the restrictive

covenants without having afforded the plaintiffs any opportunity at a meaningful time and

meaningful manner within which to review the defendant Village's behavior, the defendant

Village has violated the plaintiffs' right to procedural due process as guaranteed to the plaintiffs

under the Fourteenth Amendment of the U.S. Constitution.

119. The aforesaid defendants' violation of plaintiffs' due process rights were made under color of state law, which constitutes "state action" under 42 U.S.C. § 1983.

120. Defendants' deprivation of the plaintiffs' property rights under the due process clause of the Fourteenth Amendment to the United States Constitution is in violation of 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

**WHEREFORE**, the plaintiff respectfully demands the following relief:

### Count I
### Declaratory Judgment

1. That the Court grant declaratory relief, adjudging and declaring (a) that the Telecommunications Act of 1996 does not preempt enforcement of their property rights in the restrictive covenants, and (b) that the Telecommunications Act of 1996 is unconstitutional *as it is being applied* by the defendant Village of Bayville, (c) that the defendants' use of the property is in violation of the restrictive covenants within the deed, and (d) that the plaintiffs are possessed of the right to secure enforcement of such restrictive covenants; and

26

2.      That the Court grant affirmative injunctive relief, directing the defendants to remove and/or cause the removal of all non-governmentally owned or operated antennas from the real property described within the deed which annexed to, and incorporated into, this complaint as Exhibit "A" hereof; and

3.      That this Court grant such other and further relief as it deems just and appropriate; and

4.      That this Court award the plaintiffs the costs of this action and reasonable attorney's fees.

## Count II

### Due Process Claim - 42 U.S.C. §1983

1.      That this Court grant an award of compensatory damages against all defendants, jointly and severally,  in such an amount proven at trial; and

2.      That the Court grant affirmative injunctive relief, directing the defendants to remove and/or cause the removal of all non-governmentally owned or operated antennas from the real property described within the deed which annexed to, and incorporated into, this complaint as Exhibit "A" hereof; and

3.      For an award of reasonable attorneys fees and costs pursuant to 42 U.S.C. §1988(b);

4.      For an award for reimbursement of any and all expert fees incurred by the plaintiff, pursuant to 42 U.S.C. §1988(c); and

5.      For such other and further relief as this court may deem just and proper.

Dated:  January 8, 2010
        Garden City, New York

                              CAMPANELLI & ASSOCIATES, P.C.
                              Attorneys for Plaintiff

                              By: _____
                                    Andrew J. Campanelli, Esq. (AC 4014)

                              623 Stewart Avenue, Suite 203
                              Garden City, New York 11530
                              (516) 746-1600

28

# VERIFICATION

STATE OF NEW YORK     )
                             ) ss.
COUNTY OF NASSAU     )

      THOMAS HOY, being duly sworn, deposes and states that I am the Plaintiff in this action and that the foregoing COMPLAINT is true to the best of my knowledge, except to those matters therein stated to be alleged upon information and belief and as to those matters I believe them to be true.

 

_(signature)_

THOMAS HOY

Sworn to before me on this
7ᵗʰ day of January, 2010

_(signature)_

Notary Public

ANDREW J. CAMPANELLI
Attorney At Law
NOTARY PUBLIC, State of New York
No. 30-5008814
Qualified in Nassau County
Commission Expires March 1, 20 11

# VERIFICATION

STATE OF NEW YORK          )
                           ) ss.
COUNTY OF NASSAU           )

ELKE HOY, being duly sworn, deposes and states that I am the Plaintiff in this action and that the foregoing COMPLAINT is true to the best of my knowledge, except to those matters therein stated to be alleged upon information and belief and as to those matters I believe them to be true.

ELKE HOY

Sworn to before me on this
7 `` day of January, 2010

Notary Public

ANDREW J. CAMPANELLI
Attorney At Law
NOTARY PUBLIC, State of New York
No. 30-5008814
Qualified in Nassau County
Commission Expires March 1, 20 11

30

**Exhibit A**

DEED 4388 PAGE 543

THIS INDENTURE, made the 12th day of December, 1950, between MONA WILLIAMS, residing at (no street number) Bayville Avenue, Village of Bayville, Nassau County, New York, party of the first part, and INCORPORATED VILLAGE OF BAYVILLE, Nassau County, New York, party of the second part:

WITNESSETH, that the party of the first part, in dedication of the following described premises to public uses and the acceptance thereof by the party of the second part for the public use of the people of Bayville, does hereby grant and release unto the party of the second part and its public successors forever,

ALL that certain tract or parcel of land in the Incorporated Village of Bayville, Nassau County, New York, consisting of approximately 29 acres of land more or less, with the buildings and structures erected thereon, described as follows:

BEGINNING at a point on the southerly line of Bayville Avenue where the same is intersected by the westerly line of a certain private street known as School House Road, which point is the northeast corner of property now or formerly of Cheshire; running thence along the southerly line of Bayville Avenue South 83° 31' East 49.60 feet to a point; thence South 2° 53' West 197.37 feet along property now or formerly of Helme; thence continuing along said Helme property South 81° 52' East 209.90 feet and North 2° 39' East 196.92 feet to a point in the southerly line of Bayville Avenue; thence South 73° 07' East 290.87 feet along the southerly line of Bayville Avenue to a point in the westerly line of property now or formerly of Jelke; thence along land of Jelke South 4° 41' 40" West 1573.45 feet more or less to the northerly side of Godfrey Avenue; thence along the northerly side of Godfrey Avenue as it bends and turns to a point in the east line of land now or formerly of Clarkson; thence North 3° 58' East 775.41 feet along land now or formerly of Clarkson to a stone monument and land now or formerly of Rouss; thence along said land of Rouss South 79° 18' East 534 feet to another stone monument; thence continuing along said land of Rouss and later along land now or formerly of Cheshire North 2° 53' East 967.14 feet to the southerly side of Bayville Avenue and the point

DEED 4388 PAGE 243

DEED 4388 PAGE 544

or place of beginning, be said courses and distances more or less.

TOGETHER with all the right, title and interest of the party of the first part, of, in and to Bayville Avenue and Godfrey Avenue in front of and adjoining the premises to the center lines thereof and of, in and to all gores and strips of land, if any, lying between Bayville Avenue and Godfrey Avenue adjoining the above described premises.

The party of the second part, in consideration of this grant by the party of the first part and to induce the party of the first part to make this grant, hereby covenants and agrees for itself, its successors and assigns with the party of the first part and declares that the property hereby conveyed is held and shall forever be held subject to the following conditions, restrictions, covenants and agreements:

1. The premises to a uniform depth of 800 feet south of Bayville Avenue, except for a roadway at the present location of the private road known as School House Road, shall be used and maintained as a landscaped park area with footpaths, without roads, but shall not be used in whole or in part as an amusement or playground area or municipal assembly or gathering place and no buildings shall be erected thereon and no public amusements, concessions, vending, restaurants or other commercial enterprises shall be permitted thereon and in addition, no use of the premises shall be made or permitted which would be offensive, dangerous or obnoxious to the owners or any owner (now or hereafter) of land within a radius of one-quarter of a mile of the premises whether by reason of the type of persons permitted to use the area, smoke, odor, fumes or any other use whatsoever offensive to such owners or owner of land.

2. The land lying south of the above mentioned 800 foot strip shall be used for municipal uses and purposes and for recreational facilities for use by the People of Bayville, but no public amusements, concessions, vending, restaurants or other commercial enterprises shall be permitted thereon and, in addition, no use of the premises shall be

or hereafter) of land within a radius of one mile of the premises whether by reason of smoke, odor, fumes or any other use whatsoever offensive to such owners or owner of land.

3. No part of the premises shall be used for a dumping ground, garbage disposal purposes, an incinerator or any like particular or general use but this enumeration shall not limit the generality of the limitations upon use provided in "1" and "2" hereof.

4. Notwithstanding the foregoing provisions, a water tank may be erected on said premises at any point within 200 feet of Godfrey Avenue.

The provisions herein contained constitute conditions, restrictions, covenants and agreements running with the land and shall bind the land as well as the party of the second part, its successors and assigns.

TOGETHER with the appurtenances and all the estate and rights of  the party of the first part in and to said premises.

TO HAVE  AND TO HOLD the premises herein granted unto the party of the second part, its public successors forever subject, however, to the obligations, covenants and restrictions herein expressed.

And the party of the first part, in compliance with Section 13 of the Lien  Law, covenants that she will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and that she will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

IN WITNESS WHEREOF, the party of the first part has hereunto set her hand and seal the day and year first above written.

MONA WILLIAMS

*Harrison Williams* (L.S.)

Harrison Williams

In Presence of:

DEED 4388 PAGE 546

STATE OF NEW YORK )
: SS.:
COUNTY OF NEW YORK )

On this 13 day of December, 1950, before me personally came Harrison Williams to me known to be the individual described in and who executed the foregoing instrument, and to me known to be the attorney-in-fact of Mona Williams, the individual described in, and who by his said attorney-in-fact, executed the same, and acknowledged that he executed said instrument as the act and deed of said Mona Williams, by virtue of a power of attorney, dated November 28 , 1950, and to be recorded in the office of the register of the County of Nassau simultaneously with this instrument.

[signature]

OTTO A. PHILIPP
NOTARY PUBLIC, STATE OF NEW YORK
No. 3 ... 8720
Qualified in Nassau County
Cert. filed with N. Y. Co. Clerk & Register
Term expires March 30, 1951

DEED **4388** PAGE **547**

RECORDED
UNIT CLERK'S OFFICE
NASSAU COUNTY
ROSE E. DAWSON
DEC 28 9 44 M '50

LIBER DEEDS

21920

MONA WILLIAMS

to

38

INCORPORATED VILLAGE
OF BAYVILLE

DEED

Dated, December 13, 1950.

The within premises are situate in District 29 Block E in Nassau Co. first Mortgage

**Exhibit B**

SHORT FORM ORDER

SUPREME COURT - STATE OF NEW YORK

Present:

HON. F. DANA WINSLOW,

|  |  |
|---|---|
|  | Justice |
|  | TRIAL/IAS, PART 7 |
| MADELEINE PERRIN, ANGELO COTRONEO,<br>JOSEPH DiGENNARO, and JO-TINA<br>DiGENNARO, | NASSAU COUNTY |

                            Petitioners,

   - against -

BAYVILLE VILLAGE BOARD, VICTORIA
SIEGEL, as MAYOR and in her individual
capacity; TIMOTHY J. HORGAN, CAROL
KENNEDY, JOHN LAURINE, and DOUGLAS G.
WATSON, as TRUSTEES OF BAYVILLE
VILLAGE and in their individual capacities; and
JAMES A. REILLY, ESQ., as VILLAGE
ATTORNEY OF BAYVILLE VILLAGE and in
his individual capacity,

                           Respondents,

THE COUNTY OF NASSAU; NEW YORK
SMSA LIMITED PARTNERSHIP D/B/A
VERIZON WIRELESS; OMNIPOINT
COMMUNICATIONS, INC.; SPRINT
SPECTRUM L.P.; and NEXTEL OF
NEW YORK, INC.,

                 Intervenor-Respondents.

RETURN DATE:   07/28/08
SEQUENCE NO.: 001, 006, 007

INDEX NO.: 9468-07

The following papers read on the motions (numbered 1-7):

Motion Sequence 001
     Notice of Petition and Verified Petition...............................................1

Motion Sequence 006
     Order to Show Cause [County of Nassau].........................................2
     Affirmation in Opposition of Motion to Dismiss.............................3
     Reply Affirmation.................................................................................4

     Memorandum of Law in Support of Motion to Dismiss Petition..............A
     Reply Memorandum of Law....................................................................B

**Motion Sequence 007**
    Notice of Motion to Dismiss Petition [Bayville]................................5
    Affirmation in Opposition to Motion to Dismiss............................6
    Reply Affirmation in Support of Motion to Dismiss.......................7

Upon the foregoing papers, (i) the Verified Petition pursuant to **CPLR Article 78** [Seq. 001] (ii) the Motion to dismiss the Petition pursuant to **CPLR §3211** and/or **CPLR §7804(f)** brought by intervenor-respondent COUNTY OF NASSAU (the "COUNTY") [Seq. 006], and (iii) the Motion to dismiss the Petition pursuant to **CPLR §3211** and/or **CPLR §7804(f)** brought by respondents BAYVILLE VILLAGE BOARD, VICTORIA SIEGEL, as MAYOR and in her individual capacity; TIMOTHY J. HORGAN, CAROL KENNEDY, JOHN LAURINE, and DOUGLAS G. WATSON, as TRUSTEES OF BAYVILLE VILLAGE and in their individual capacities; and JAMES A. REILLY, ESQ., as VILLAGE ATTORNEY OF BAYVILLE VILLAGE and in his individual capacity (the "BAYVILLE respondents") [Seq. 007]; are determined as follows.

In this proceeding pursuant to **CPLR Article 78**, petitioners challenge two resolutions of respondent BAYVILLE VILLAGE BOARD (the "VILLAGE BOARD") adopted on April 23, 2007 and filed on May 1, 2007 (the "Resolutions"). Resolution 2007-34 authorizes the VILLAGE BOARD to enter into a License Agreement with the COUNTY permitting the installation of, among other things, two microwave dish antennae and six omni-directional antennae on the Bayville Village Water Tower (the "Water Tower") for use by the Nassau County Police Department in its overhaul of the Nassau County Public Safety Radio System. Resolution 2007-33 states the finding of the VILLAGE BOARD that the proposed installation would cause no significant adverse effect on the environment, constituting a Negative Declaration pursuant to the **State Environmental Quality Review Act** ("SEQRA") and its implementing regulations. *See* **Environmental Conservation Law, Article 8; 6 NYCRR Part 617**. The Petition seeks vacatur of the Resolutions and punitive damages.

Petitioners assert that approval of the Resolutions was arbitrary and capricious, an abuse of discretion, and contrary to law. *See* **CPLR §7803(3)**. First and foremost, petitioners argue that the Resolutions violate the deed, dated December 13, 1950 (the "Deed"), which conveyed the property on which the Water Tower is located to the Village. The Deed was subject to certain restrictions and covenants, including, in pertinent part, the following (the "Restrictive Covenant"):

        "...no use of the premises shall be made or permitted which
        would be offensive, dangerous or obnoxious to the owners or

> any owner (now or hereafter) of land within a radius of one
> mile of the premises whether by reason of smoke, odor, fumes
> or any other use whatsoever offensive to such owners or
> owner of land."

Deed, conditions, restrictions, covenants and agreements, ¶2.

Petitioners are among the class of persons protected by the Restrictive Covenant
insofar as they live within a one-mile radius of the Water Tower. They argue that the
approved installation is offensive, dangerous and obnoxious to them because microwave
dishes and antennae such as those approved by the VILLAGE BOARD emit Radio-
frequency Radiation ("RFR"), the safety of which is a subject of growing concern in the
scientific and political communities. Petitioners assert that RFR is a threat to human
health and well-being, based upon studies and journal articles depicting a correlation
between RFR and a disproportionate incidence of cancer and other illnesses. According
to Petitioners, the proposed use is not only objectively dangerous, but is also subjectively
offensive to the individual owners protected by the Restrictive Covenant, as evidenced by
the overwhelming opposition to the Resolutions expressed by petitioners and other
Bayville residents at the public hearings. Petitioners conclude that, insofar as the
Resolutions approve a use that is dangerous or offensive to the residents protected by the
Restrictive Covenant, they violate the Deed and are therefore contrary to law.

In addition, petitioners argue that the Resolutions violate **SEQRA** and its
implementing regulations. *See* **Environmental Conservation Law §§ 3-0301(1)(b); 3-
0301(2)(m), 8-0113; 6 NYCRR Part 617.** SEQRA requires that an Environmental
Impact Statement be issued before a project is approved by a local agency. The
VILLAGE BOARD issued a Negative Declaration indicating "no significant adverse
effect on the environment" based upon a report entitled "Environmental Effects of
Antennas on Water Tower, dated December 18, 2006, prepared by Donald E. Cotten, PhD
and Stuart Maurer, PhD (the "Report"). Petitioners claim that the Report was biased
insofar as it was indirectly funded by Motorola, the company that had contracted to install
the subject devices, as well as similar RFR-emitting devices at approximately 24 sites.
Petitioners contend that the VILLAGE BOARD violated **SEQRA** by approving the
installation without commissioning an independent study to be prepared by an unrelated
environmental agency, with a health expert analyzing the data.

The COUNTY and the BAYVILLE respondents challenge petitioners' contentions
and advance several procedural and substantive grounds for dismissal of the Petition
which, for the sake of brevity, will not be repeated herein. The Court finds the
respondents' most salient argument to be dispositive; namely, that the principles of

3

federal preemption bar this Court from determining that the RFR emissions resulting from the approved installation constitute a danger to petitioners which violates the Restrictive Covenant.

"Under the Supremacy Clause a state law that interferes with, or is contrary to federal law is invalid. There are three theories under which Congress preempts state law. First, under express preemption Congress expressly declares its intent to preempt state law. Second, under field preemption Congress impliedly preempts state law when federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the states to supplement it. Third, under conflict preemption Congress impliedly preempts state law when it actually conflicts with federal law." **Pinney v. Nokia, Inc.,** 402 F.3d 430, 453 (internal quotation marks and citations omitted).

Congress has delegated to the Federal Communications Commission ("FCC") the responsibility for regulating wire and radio communication service nationwide. **Federal Communications Act, 47 U.S.C. 151** *et seq.* The FCC has broad preemptive authority pursuant to the **Telecommunications Act of 1996** (the "TCA"). **Sprint Spectrum L.P. v. Mills,** 283 F.3d 404; **Cellular Phone Taskforce v. FCC,** 205 F.3d 82. Although Section 704 of the TCA preserves some local zoning authority regarding the placement, construction or modification of personal wireless service facilities, that authority is limited. In addition to certain procedural requirements with which local boards must comply, the TCA also imposes a substantive limitation. *See* **Cellular Telephone Co. v. Town of Oyster Bay,** 166 F.3d 490. In pertinent part, the TCA provides:

> "No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions."

**47 U.S.C. §332(c)(7)(B)(iv) ("Section 332(c)(7)(B)(iv)").**

In view of the overarching policy and design of federal regulation in the area of telecommunications, the question before this Court is whether, as an instrumentality of the State, the Court is barred from granting the relief sought herein, either by reason of express, conflict or field preemption. The parties have not presented, and the Court has not found, case law precisely resolving this issue.

4

A Federal Court interpreting **Section 332(c)(7)(B)(iv)** has held that a local zoning board cannot deny a land use permit to a FCC-compliant wireless service provider on the basis of the perceived health effects of RFR. **Cellular Telephone Co. v. Town of Oyster Bay**, 166 F.3d 490. The Court expressly stated that "health concerns" is an impermissible basis for decision, having the equivalent meaning as "environmental effects" in the statute. **Id.**, at 495 n.3. Although that decision is analogous and supports preemption in the instant case, it does not directly resolve the question of whether a different result may be reached where the wireless service facility violates a private contractual right, such as a restrictive covenant. (For purposes of discussion, the Court shall assume that RFR is among the sort of dangerous or offensive emission covered by the Restrictive Covenant here, without repudiating the COUNTY's argument that the Restrictive Covenant must be construed more narrowly. The Court, however, shall not read the Restrictive Covenant to permit a purely subjective definition of offense.)

The enforcement of a restrictive covenant did not offend the TCA where a wireless service facility was enjoined on the basis of a restrictive covenant limiting the area to residential use. **Chambers v. Old Stone Hill Road**, 1 NY3d 424. The injunction in **Chambers**, however, falls within the powers expressly preserved for state and local governments by the TCA – to regulate the placement, construction, and modification of personal wireless service facilities, subject to certain limitations. *See* **47 U.S.C. §332(c)(7)(A)**. The enforcement of the covenant did not fall within any of the express limitations set forth in **47 U.S.C. §332(c)(7)(B)**; specifically, it was not based on the perceived harmful effects of RFR. *See* **Section 332(c)(7)(B)(iv)**.

The Federal Courts have carved out circumstances in which consideration of RFR as a basis for decision is not preempted by the TCA. A local zoning board does not violate the TCA if it bases its choice between two competing sites for the construction of a wireless telecommunications tower on the desire to minimize the level of RFR that would reach the surrounding locations; i.e., the so-called theory of "prudent avoidance." **New York SMSA Limited Partnership v. Town of Clarkson**, 99 F.Supp.2d 381. Further, a local governmental entity or instrumentality does not violate the TCA if it acts in a proprietary, as opposed to a regulatory, capacity. **Sprint Spectrum L.P. v. Mills**, 283 F.3d 404 (preemption did not bar a school district from imposing conditions regarding RFR emissions in the lease of its own property to a wireless telecommunications provider). None of the above cases, however, stands for the proposition that a State Court may *require* a local board to choose an alternate site, or to impose conditions on use, in order to limit RFR exposure.

Thus, it appears to be a question of first impression in this jurisdiction whether a zoning board's approval of federally compliant wireless service facility may be annulled

by a state Court on the ground that dangerous RFR emissions violate a restrictive covenant. By Order of this Court dated May 21, 2008, the Court gave the FCC an opportunity to be heard on the matter. The position of the FCC, as set forth in the letter dated June 18, 2008 [Seq. 006, Reply Aff., Exh. A], is that petitioners' application to enforce the Restrictive Covenant based upon the health effects of RFR is preempted by federal law, both because the FCC's RFR regulations occupy the field and because any State law determination challenging the safety of emissions within FCC approved levels directly conflicts with FCC policy. (Apparently, the FCC does not dispute petitioners' contention that the relief sought is not *expressly* preempted by the TCA, either in **Section 332(c)(7)(B)(iv)** or elsewhere.)

The views of the FCC regarding the preemptive force of its own regulations must be afforded substantial deference by the Court. **Medtronic, Inc. v. Lohr**, 518 U.S. 470, 496 (1996); **Cellular Phone Taskforce**, 205 F.3d at 96. As noted in an analogous context, "Congress has delegated authority to the [the agency] to implement the statute, the subject matter is technical, and the relevant history and background are complex and extensive. The agency is likely to have a thorough understanding of its own regulation and its objectives and is 'uniquely qualified' to comprehend the likely impact of state requirements." **Geier v. American Honda Motor Co., Inc.**, 529 U.S. 861, 883 (quoting **Medtronic**, 518 U.S. at 496 ).

Giving appropriate weight to the opinion of the FCC, this Court cannot properly sustain petitioners' claim. In order to find that the Restrictive Covenant was breached by the adoption of the Resolutions, this Court would have to find that the incremental or cumulative RFR emissions resulting from the installation approved by the Resolutions would be harmful to residents within a one-mile radius of the Water Tower. No one disputes that the approved installation would be FCC-compliant. Therefore, a finding that it would result in a dangerous level of RFR would directly conflict with federal RFR testing and emission standards.

The FCC considers its testing and emission standards to represent "the best scientific thought on the RF limits necessary to protect the public health and provide a proper balance between the need to protect the public and workers from exposure to excessive RF electromagnetic fields and the need to allow communications services to readily address growing marketplace demands." FCC Brief, as Amicus Curiae, in the consolidated matters of **Murray v. Motorola**, Superior Court for the District of Columbia, Civil Division, C.A. No. 01-8479, p.10 (internal citations omitted) ("FCC Brief") [Seq. 006, Reply Aff., Exh. A]. Petitioners are seeking a determination that, in effect, would impose more stringent requirements than those imposed by the FCC. This is essentially "a back-door challenge to the .... adequacy of the RF standards the FCC

adopted." FCC Brief, p.16. When State law action contravenes a determination of the agency responsible for implementing a federal statute, such State law action "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." **Geier**, 529 U.S. 874-75. Insofar as it stands in conflict with federal law, the State law action is therefore preempted. *See* **Id.**, FCC Brief, p. 16. *See also* **Broyde v. Gotham Tower, Inc.**, 13 F.3d 994.

Petitioners' reliance on **Pinney**, 402 F.3d 430, is unavailing. In denying a motion to dismiss state law tort claims predicated upon the alleged effects of RFR, the Fourth Circuit in **Pinney** considered only express preemption. As stated by the Court in **Murray v. Motorola**, "the [respondents] are entitled to have this Court consider all of their preemption theories, not merely the one that was rejected in **Pinney**." **Murray v. Motorola**, *supra*, p.41. The FCC articulated several flaws in the **Pinney** decision, ultimately arguing that the **Pinney** analysis "cannot be squared with the uniform federal regulatory framework for the provision of wireless telephone services, or the primacy that the Communications Act gives the FCC in technical matters relating to RF transmissions." FCC Brief, p. 17-18. The Court in **Murray** agreed. *See* **Murray v. Motorola**, *supra*, p. 40-45.

In accordance with the foregoing, this Court determines that enforcement of the Restrictive Covenant would conflict with federal authority. Therefore, the Court need not belabor discussion on the issues of express or field preemption.

The petitioners' second argument offers a procedural basis for overturning the Resolutions which appears, on its face, to sidestep the preemption challenge. Petitioners argue that adoption of the Resolutions violated **SEQRA** and was arbitrary and capricious because the VILLAGE BOARD's environmental determination was based solely upon a study (as defined above, the "Report") funded by Motorola, the company hired to provide and install the equipment. Petitioners claim that the Report was unreliable because of Motorola's interest in the outcome, and that petitioners should have commissioned an independent study.

First, Petitioners cite no authority for the proposition that SEQRA mandates reliance upon sources of information that qualify as disinterested by any articulated standard. Second, petitioners have failed to establish, *prima facie,* that the VILLAGE BOARD's environmental determination was inadequate or that the reliability of the Report was compromised by the purported bias. The VILLAGE BOARD's determination, as set forth in Resolution 2007-33, delineates the factors considered, including (m) Public Health and Safety (Radio Frequency Emissions) and (o) Cumulative Impacts. With respect to RFR, the VILLAGE BOARD's determination in paragraph (m)

7

essentially recognizes that federal standards govern emissions and that the facility will be required to comply with FCC regulations. The Report measured the exposure levels at various critical locations and compared them with FCC "maximum permissible exposure" standards. Based upon its calculations, the Report concluded that the level of electro-magnetic radiation from the additional antennae will be far below the health and safety standards established by the FCC. Petitioners offer no evidentiary facts to undermine the methodology or substance of the Report. That the Report may be incomplete, in petitioners' view, is insufficient to sustain a claim that the VILLAGE BOARD's reliance thereon was irrational. To the extent that petitioners imply that the VILLAGE BOARD should have applied any other health and safety standard in making its environmental determination, that claim is barred by the doctrine of preemption, as discussed above.

The Court notes that the petitioners are concerned about the cumulative RFR issuing from the existing and additional antennae, and that the Report does not purport to measure that effect. The VILLAGE BOARD has addressed this concern in paragraph (o) of Resolution 2007-33. The VILLAGE BOARD relies upon the FCC licensing and regulatory process to ensure that the cumulative emissions will not exceed FCC guidelines.

The Court finds that the VILLAGE BOARD "identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for their determination." **Concerned Citizens of Valley Stream, Inc. v. Bond**, 282 AD2d 532. Accordingly, it has satisfied SEQRA and its determination shall not be disturbed. **Id.**

The Court has considered the remaining arguments of the parties and finds them to be without merit or rendered moot by the above determination.

Based upon the foregoing, it is

ORDERED, that the motions to dismiss the petition (Seq. 006, Seq. 007) are **granted**, and the Petition (Seq. 001) is **dismissed**.

ENTER:

Dated: 8/10/08                    F. Dana Winslow
                                  J.S.C.

**ENTERED**

AUG 1 3 2008

NASSAU COUNTY
COUNTY CLERK'S OFFICE

8