UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THOMAS HOY AND
ELKE HOY,

                                Plaintiffs,

                                                        10-CV-0094
            -against-                                   (JFB) (AKT)

THE INCORPORATED                          **MEMORANDUM OF**
VILLAGE OF BAYVILLE,                      **LAW IN SUPPORT OF**
SPRINT SPECTRUM REALTY COMPANY, L.P.,     **MOTION TO DISMISS**
as Successor in Interest to SPRINT SPECTRUM, L.P.,
NEXTEL OF NEW YORK d/b/a as NEXTEL
COMMUNICATIONS, OMNIPOINT FACILITIES
NETWORK 2, LLC, and NEW YORK SMSA LIMITED
PARTNERSHIP,

                                Defendants.
------------------------------------------------------------------------X

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**THE WIRELESS DEFENDANTS' MOTION TO DISMISS**</u>

Alfred L. Amato (AA 2354)                    Joshua S. Turner (*pro hac vice* JT 5778)
Richard S. Keenan (RK 2182)                  Brendan T. Carr (*pro hac vice* BC 3689)
Amato & Associates, P.C.                     Brendan J. Morrissey (*pro hac vice* BM 8800)
666 Old Country Road, Suite 901              Wiley Rein LLP
Garden City, New York 11530                  1776 K Street, N.W.
(516) 227-6363                               Washington, DC 20006
*Attorneys for Defendant New York SMSA Limited*  (202) 719-4807
*Partnership d/b/a Verizon Wireless*         *Attorneys for Defendant New York SMSA*
                                             *Limited Partnership d/b/a Verizon Wireless*


John J. Coughlin (JC 2700)                   A. Ross Pearlson (ARP 1277)
Ré, Nielsen, Huber & Coughlin, LLP           Sills Cummis Epstein & Gross, PC
36 North New York Avenue                     One Riverfront Plaza
Huntington, NY 11743                         Newark, NJ 07102
(631) 425-4100                               (973) 643-7000
*Attorney for Defendant Sprint Spectrum Realty*  *Attorney for T-Mobile Northeast LLC, the*
*Company, L.P. as successor-in-interest to Sprint*  *successor-in-interest to Omnipoint Facilities*
*Spectrum, L.P., and for Nextel of New York d/b/a*  *Network 2, LLC*
*Nextel Communications*

May 24, 2010

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ........................................................................................................ 2

SUMMARY OF ARGUMENT .................................................................................. 5

STANDARD OF REVIEW ........................................................................................ 8

ARGUMENT .............................................................................................................. 8

I.    COUNT I AND COUNT II ARE EACH TIME-BARRED. ............................ 8

    A.    Count I Is Time-Barred .......................................................................... 8

    B.    Count II Is Also Barred By The Applicable Statute Of Limitations.................. 16

II.   IF NOT TIME-BARRED, THE COMPLAINT SHOULD BE DISMISSED AS A MATTER OF LAW ON A NUMBER OF INDEPENDENT GROUNDS .................... 17

    A.    Plaintiffs' Claims Fail To The Extent That They Rely On The ODO Covenant For Relief ............................................................................... 17

        1.    The Doctrine Of Collateral Estoppel Prevents The Plaintiffs From Relitigating Issues Decided In The *Perrin* Action................................. 17

        2.    The ODO Covenant Does Not Prohibit The Wireless Defendants' Antennas. ................................................................................................. 21

        3.    Federal Law Preempts Any State-Law Attempt To Regulate The Wireless Defendants' Facilities Based On The Health Effects Of RF Emissions ........................................................................................... 24

        4.    Preemption Principles Embodied In Federal Telecommunications Law Also Show That The Plaintiffs' Claims Under The ODO Covenant Are Void As Against Public Policy ....................................... 36

    B.    The Plaintiffs' Claims Fail To The Extent That They Rely On The Commercial Enterprises Covenant For Relief ....................................... 36

        1.    The Plaintiffs Lack Standing To Enforce The Commercial Enterprises Covenant ............................................................................. 36

        2.    The Commercial Enterprises Covenant Does Not Prohibit The Wireless Defendants' Use Of The Property ............................................. 40

    C.    The Plaintiffs' Section 1983 Due Process Claim Fails As A Matter Of Law. ................................................................................................... 42

CONCLUSION ......................................................................................................... 47

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allen v. McCurry,*
  449 U.S. 90 (1980)................................................................18

*American Manufacturers Mutual Insurance Co. v. Sullivan,*
  526 U.S. 40 (1999)................................................................46

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009)..........................................................42

*Bastien v. AT&T Wireless Services, Inc.,*
  205 F.3d 983 (7th Cir. 2000) ................................................35

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)...........................................................8, 42

*Bennett v. T-Mobile USA, Inc.,*
  597 F. Supp. 2d 1050 (C.D. Cal. 2008) .............................29, 30

*Board of Regents v. Roth,*
  408 U.S. 564 (1972)..............................................................43

*Campbell v. City of Champaign,*
  940 F.2d 1111 (7th Cir. 1991) .............................................43

*Cellular Phone Taskforce v. FCC,*
  205 F.3d 82 (2d Cir. 2000).........................26, 27, 28, 30, 33

*Cellular Telephone Co. v. Town of Oyster Bay,*
  166 F.3d 490 (2d Cir. 1999)..................................................35

*Ciambriello v. County of Nassau,*
  292 F.3d 307 (2d Cir. 2002)..................................................45

*City of Rancho Palos Verdes, California v. Abrams,*
  544 U.S. 113 (2005)..............................................................34

*Cleveland v. Caplaw Enterprises,*
  448 F.3d 518 (2d Cir.2006)....................................................8

*Consolidated Edison, Inc. v. Northeast Utilities,*
  426 F.3d 524 (2d Cir. 2005)..................................................39

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.,*

544 U.S. 280 (2005).........................................................................................46

*FCC v. Pottsville Broadcasting Co.*,
309 U.S. 134 (1940)........................................................................................26

*Federal Radio Commission v. Nelson Brothers Bond & Mortgage Co.*,
289 U.S. 266 (1933)........................................................................................32

*Fidelity Federal Savings & Loan Association v. de la Cuesta*,
458 U.S. 141 (1982)........................................................................................25

*Florida Lime & Avocado Growers, Inc. v. Paul*,
373 U.S. 132 (1963)........................................................................................28

*Freeman v. Burlington Broadcasters, Inc.*,
204 F.3d 311 (2d Cir. 2000)...............................................................26, 31, 33

*Ganci v. New York City Transit Authority*,
420 F. Supp. 2d 190 (S.D.N.Y. 2005).............................................................43, 44

*Geier v. American Honda Motor Co.*,
529 U.S. 861 (2000)........................................................................................35

*Ghartey v. St. John's Queens Hospital*,
869 F.2d 160 (2d Cir. 1989)............................................................................13, 14

*Hillsborough County, Florida v. Automated Medical Laboratories, Inc.*,
471 U.S. 707 (1985)........................................................................................33, 35

*Hines v. Davidowitz*,
312 U.S. 52 (1941)..........................................................................................28

*Jasso v. Citizens Telecommunications Co. of California, Inc.*,
2007 WL 2221031 (E.D. Cal. 2007).................................................................29

*Medtronic v. Lohr*,
518 U.S. 470 (1996)........................................................................................35

*Nationwide Auction Co. v. Lynn*, No. 90 Civ. 7643 (AGS) (THK),
1996 WL 148489 (S.D.N.Y. April 1, 1996) ...................................................39

*NBC v. U.S.*,
319 U.S. 190 (1943)........................................................................................26

*Oberstein v. SunPower Corp.*,
2010 WL 1705868 (E.D.N.Y. Apr. 28, 2010) ...............................................11

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC*,
   595 F.3d 86 (2d Cir. 2010)...................................................................................8

*Ormiston v. Nelson*,
   117 F.3d 69 (2d Cir. 1997)...................................................................................16

*Pacific Gas & Electric Co. v. State Energy Resources Conservation &*
   *Development Commission*,
   461 U.S. 190 (1983)...........................................................................................32

*Reyes v. Fairfield Properties*,
   661 F. Supp. 2d 249 (E.D.N.Y. 2009) ................................................................46

*Rice v. Santa Fe Elevator Corp.*,
   331 U.S. 218 (1947)...........................................................................................31

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007)...................................................................................3

*S & D Maintenance Co., Inc. v. Goldin*,
   844 F.2d 962 (2d Cir. 1988)...........................................................................44, 45

*San Bernardino Physicians' Services Medical Group v. County of San*
   *Bernardino*,
   825 F.2d 1404 (9th Cir. 1987) ...........................................................................43

*Spear v. Town of West Hartford*,
   954 F.2d 63 (2d Cir. 1992)..................................................................................45

*Sprint Spectrum L.P. v. Mills*,
   283 F.3d 404 (2d Cir. 2002)................................................................................25

*Trancredi v. Met. Life Insurance Co.*,
   316 F.3d 308 (2d Cir.2003)............................................................................45, 46

*Travelers Insurance Co. v. 633 Third Associates*,
   14 F.3d 114 (2d Cir. 1994).................................................................................21

*Walentas v. Lipper*,
   862 F.2d 414 (2d Cir. 1988)...............................................................................44

*Warth v. Seldin*,
   422 U.S. 490 (1975)...........................................................................................39

*Yatvin v. Madison Metropolitan Sch. District*,

840 F.2d 412 (7th Cir. 1988) ..................................................................................43

## **STATE CASES**

*9394, LLC v. Farris*,
    10 A.D.3d 708, 782 N.Y.S.2d 281 (2d Dep't 2005).............................................22, 40

*Biggs v. Sea Gate Ass'n*,
    211 N.Y. 482, 105 N.E. 664 (N.Y. 1914) ....................................................................24

*Bodouva v. Ross*,
    246 A.D.2d 617, 667 N.Y.S.2d 306 (N.Y. App. Div. 2 Dep't 1998) .........................12

*Buechel v. Bain*,
    97 N.Y.2d 295, 766 N.E.2d 914, 740 N.Y.S.2d 252 (N.Y. 2001)..................17, 18, 21

*Cellular Telephone Company v. Rosenberg*,
    82 N.Y.2d 364, 604 N.Y.S.2d 895, 624 N.E.2d 990 (N.Y. 1993)...............................41

*Chambers v. Old Stone Hill Road Associate*,
    1 N.Y.3d 424, 774 N.Y.S.2d 866, 806 N.E.2d 979 (N.Y. 2004)...............12, 13, 22, 25

*Chambers v. Old Stone Hill Road Associates*,
    303 A.D.2d 536, 757 N.Y.S.2d 70 (N.Y. App. Div. 2 Dep't 2003) ...........................25

*City of New York v. Delafield 246 Corp.*,
    236 A.D.2d 11, 662 N.Y.S.2d 286 (N.Y. App. Div. 1 Dep't 1997) ...........................14

*Crane Neck Ass'n, Inc. v. New York City/Long Island County Services Group*,
    61 N.Y.2d 154 (N.Y. 1984) ........................................................................................36

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*,
    485 N.E.2d 208 (N.Y. 1985).......................................................................................37

*Greek Peak v. Grodner*,
    75 N.Y.2d 981, 556 N.Y.S.2d 509, 555 N.E.2d 906 (1990).......................................22

*Guglielmo v. Unanue*,
    244 A.D.2d 718, 664 N.Y.S.2d 662 (N.Y. App. Div. 3 Dep't 1997) .........................14

*Herald Square South Civic Association v. Consolidated Edison Co. of N.Y.*,
    307 A.D.2d 213 (N.Y. App. 1st Dep't 2003)...............................................................23

*In re Stephiana UU.*,
    66 A.D.3d 1160, 887 N.Y.S.2d 699 (N.Y. App. Div. 3 Dep't 2009) ..........................20

*J.B. Realty Enterprises Corp. v. City of Saratoga Springs*,
    270 A.D.2d 771, 704 N.Y.S.2d 742 (N.Y. App. Div. 3 Dep't 2000) ....................9, 10

*Juan C. v. Cortines*,
    89 N.Y.2d 659, 679 N.E.2d 1061, 657 N.Y.S.2d  581 (N.Y. 1997) ..........................20

*Judski v. Village of Johnson City*,
    226 A.D.2d 862, 640 N.Y.S.2d 362 (N.Y. App. Div. 3 Dep't 1996) ........................13

*LaSalle National Bank v. Ernst & Young LLP*,
    285 A.D.2d 101, 729 N.Y.S.2d 671 (N.Y. App. Div. 1st Dep't 2001).....................37

*Motor Vehicle Acc. Indemnification Corp. v. Aetna Casualty & Surety Co.*,
    89 N.Y.2d 214, 674 N.E.2d 1349 (N.Y. 1996)............................................................15

*Murray v. Motorola*,
    982 A.2d 764 (D.C. 2009) ...............................................................................6, 29, 30

*Newcomb v. Congdon*,
    160 A.D.2d 1192, 555 N.Y.S.2d 202 (N.Y. App. Div. 3d Dep't 1990) ....................11

*Oneida County Mobile Home Sales, Inc. v. Niagara Mohawk Power Corp.*,
    407 N.Y.S.2d 89, 63 A.D.2d 385 (N.Y. App. Div. 4 Dep't 1978) ..............................9

*Perrin v. Bayville Village Board*, No. 9468-07,
    2008 WL 4124110, 2008 N.Y. Slip Op. 32401(U) (N.Y. Sup. Ct. Aug 10,
    2008) ("*Perrin I*") .............................................................1, 6, 7, 18, 19, 20, 25, 46, 47

*Perrin v. Bayville Village Board*,
    70 A.D.3d 835, 894 N.Y.S.2d 131 (N.Y. App. Div. 2d Dep't 2010) ("*Perrin II*").................................................................1, 17, 18, 19, 20, 22, 23, 24, 25, 36, 40

*Perrin v. Bayville Village Board*,
    2009 N.Y. Slip Op. 30460(U), No. 9468-07, 2009 WL 599808 (N.Y. Sup. Ct.
    Jan 31, 2009)............................................................................................................6, 28

*Rachmani Corp. v. 9 East 96th Street Apartment Corp.*,
    629 N.Y.S.2d 382 (N.Y. App. Div. 1 Dep't 1995) ....................................................15

*Ram Island Homeowners Association v. Hathaway Realty*,
    305 A.D.2d 390, 758 N.Y.S.2d 522 (N.Y. App. Div. 2 Dep't 2003) ...................10, 11

*Rautenstrauch v. Bakhru*,
    64 A.D.3d 554, 884 N.Y.S.2d 77 (N.Y. App. Div. 2d Dep't 2009) ...........................22

*Rowland v. Miller*,
   139 N.Y. 93, 34 N.E. 765 (N.Y. 1893) ........................................................24

*Salesian Society, Inc. v. Village of Ellenville*,
   41 N.Y.2d 521, 393 N.Y.S.2d 972 (N.Y. 1977) .........................................13

## ADMINISTRATIVE MATERIALS

FCC, Office of Engineering Technology, *Questions and Answers About
   Biological Effects and Potential Hazards of Radiofrequency Electromagnetic
   Fields*, OET Bulletin 56 (Aug. 1999) .......................................................27

FCC, Office of Eng'g & Tech., *Evaluating Compliance with FCC Guidelines for
   Human Exposure to Radiofrequency Electromagnetic Fields*, OET Bulletin 65
   (Aug. 1997) ...............................................................................................27

*Future Use of Frequency Band 806-960 MHz*,
   46 F.C.C.2d 752 (1974) ...........................................................................26

*In the Matter of Procedures for Reviewing Requests for Relief from State and
   Local Regulations Pursuant to Section 332(c)(7)(B)(v) of the
   Communications Act of 1934*,
   15 F.C.C.R. 22821 (2000) ................................................................34, 35

*In the Matter of Guidelines for Evaluating the Environmental Effects of
   Radiofrequency Radiation*,
   11 F.C.C.R. 15123 (1996) .......................................................27, 28, 29

*In the Matter of Promotion of Competitive Networks in Local
   Telecommunications Markets*,
   19 F.C.C.R. 5637 (2004) .........................................................................32

*In the Matter of Guidelines for Evaluating the Environmental Effects of
   Radiofrequency Radiation Of The Communications Act Of 1934*,
   12 F.C.C.R. 13494 (1997) .................................................................27, 29

*Petition on Behalf of the State of Connecticut*,
   10 F.C.C.R. 7025 (1995) .........................................................................31

*Use of the Bands 825-845 and 870-890 MHz*,
   89 F.C.C.2d 58 (1982) ............................................................................30

## FEDERAL STATUTES AND RULES

42 U.S.C. § 1983 ...............................................................................................16

47 C.F.R. §§ 1.1307(b), 2.803(a), 2.907, 2.915, 2.925, 22.377, 24.51 ............................28

47 C.F.R. § 1.1310 ....................................................................................................27

47 U.S.C. § 152(a) ....................................................................................................32

47 U.S.C. § 301 .........................................................................................................26

47 U.S.C. § 332(c)(3)(A) ..........................................................................................35

47 U.S.C. § 332(c)(7)(B)(iv)......................................................33, 34, 35, 36, 37

28 U.S.C. § 1738 .......................................................................................................18

Fed. R. Civ. P. 8 ....................................................................................................7, 42

Fed. R. Civ. P. 12(d) ................................................................................................11

Fed. R. Civ. P. 56(c) ................................................................................................11

H.R. Conf. Rep. No. 104-204 (1996)........................................................................31

H.R. Conf. Rep. No. 104-458 (1996)........................................................................34

H.R. Rep. No. 103-111 (1993)..................................................................................31

H.R. Rep. No. 104-104 ..............................................................................................34

U.S. Const. art. VI, § 2..........................................................................................24, 25

## STATE STATUTES

N.Y. C.P.L.R. § 213....................................................................................5, 8, 14, 15

N.Y. C.P.L.R. § 9802.............................................................5, 9, 12, 13, 14, 15

N.Y. R.P.A.P.L. § 2001 ...........................................................5, 8,9, 10, 11, 14

## MISCELLANEOUS

Letter from Mathew B. Berry, General Counsel, FCC, to Justice Winslow, Justice
    of the Supreme Court of the State of New York, Nassau County (June 18,
    2008), *Perrin I* (No. 07-009468)....................................................6, 29, 33

Brief for the Respondents in Opposition, *Citizens for the Appropriate Placement
    of Telecomms. Facilities v. FCC,*

531 U.S. 1070 (2001), No. 00-393, 2000 WL 33999532 ......................................29, 30

Brief of the United States and the FCC as Amicus Curiae in Support of
   Appellees, *Murray v. Motorola*,
   982 A.2d 764 (No. 07-cv-1074).....................................................................29, 30, 32

Motion of the FCC to Dismiss for Lack of Standing, *EMR Policy Institute v.
   FCC*, No. 08-1383 (D.C. Cir. Jan. 26, 2009).............................................................30

## PRELIMINARY STATEMENT

This action presents issues nearly identical to those recently raised and decided by the

Nassau County Supreme Court and the Appellate Division, Second Department in *Perrin v.*

*Bayville Village Board*.[1]  In *Perrin*, a case brought by neighbors of the Plaintiffs in this action

which dealt with radio antennas located on the same water tower at issue here, the Supreme

Court found the claims preempted by federal law, and the Appellate Division affirmed on the

separate ground that there was no violation of the clause in the restrictive covenant that

prohibited the uses of the property that "would be offensive, dangerous or obnoxious" to

adjoining property owners "by reason of smoke, odor, fumes" or any other offensive use (the

"Offensive, Dangerous, or Obnoxious Covenant" or "ODO Covenant") as a matter of state law.

Plaintiffs, hoping for a different result in a different court, argue that both *Perrin I* and

*Perrin II* were wrongly decided and that this Court should step in and right those wrongs.

Plaintiffs' claims must be summarily dismissed for a number of independent reasons.  *First,* the

Plaintiffs' claims are not properly before this Court because they are time-barred.  *Second*, even

if Plaintiffs had brought their claims in a timely fashion, they still must be dismissed.  Those of

Plaintiffs' claims that seek to re-litigate the precise issues decided in *Perrin* under the ODO

Covenant are barred by the doctrine of collateral estoppel and were in any event correctly

dismissed by the New York courts.  Those of Plaintiffs' claims that attempt to go beyond the

specific holding of *Perrin* also fail to state any claim upon which relief could be granted.  Like

Plaintiffs' claims under the ODO Covenant, both Plaintiffs' claims that purport to rely upon a

different clause in the restrictive covenant that prohibits the use of the property for "public

---

[1]     2008 WL 4124110, 2008 N.Y. Slip Op. 32401(U) (N.Y. Sup. Ct. Aug 10, 2008) (No.
9468-07) ("*Perrin I*"), *modified*, 70 A.D.3d 835, 894 N.Y.S.2d 131 (2d Dep't 2010) ("*Perrin II*"), *motion for leave to appeal filed* (N.Y. Apr. 21, 2010).

amusements, concessions, vending, restaurants or other commercial enterprises (the "Commercial Enterprises Covenant") and Plaintiffs' claims under Section 1983 are time-barred. Moreover, not only do these plaintiffs lack standing to enforce the Commercial Enterprises Covenant, but basic principles of contract interpretation under New York law dictate that the covenant cannot be read so as to prohibit the use of the property to operate radio antennas on the water tower. Because the use of radio antennas is more akin to a public telephone pole than a "commercial enterprise," and does not interfere with the intended use of the property by creating foot traffic or noise like the other proscribed uses, it does not fun afoul of the Commercial Enterprises Covenant. Finally, Plaintiffs have not and could not allege a violation of rights that would give them a cause of action under Section 1983. Therefore, this action is without merit and the Complaint should be dismissed in its entirety.

## BACKGROUND

**The Deed.** In 1950, Mona Williams granted and conveyed a parcel of land (the "Property") to defendant Village of Bayville (the "Village"). *See* Compl. Exh. A. The deed conveying the land (the "Deed") allows the Property to be used for public and municipal uses. *See* Compl. ¶¶ 49, 51 & Exh. A. To prevent interference with the Property's contemplated uses, the Deed contains a covenant that prohibits "public amusements, concessions, vending, restaurants or other commercial enterprises," and uses of the Property that "would be offensive, dangerous, or obnoxious to the owners or any owner (now or hereafter) of land within one mile of the premises by reasons of smoke, odor, fumes, or any other use whatsoever offensive to such owners of or owner of land." *See* Compl. ¶ 49. The Deed expressly permits a water tower (the "Water Tower") to be located on the Property, and contains no suggestion that utilities are in any way restricted from using the Property. Compl. ¶ 51 & Exh. A.

**The Wireless Defendants' Agreements.** Starting in the early 1990s, the Village entered into a number of separate agreements that permit the Wireless Defendants to install antennas on the Water Tower. *See* Compl. ¶¶ 89-99.[2] Verizon Wireless entered into its agreement with the Village on or about March 10, 1992.[3] Sprint entered into its agreement on or about May 9, 2003.[4] Nextel entered into its agreement on or about May 6, 2004.[5] Omnipoint entered into its agreement on or about June 25, 2003.[6]

In accordance with its agreement, Verizon Wireless obtained a building permit on or around March 3, 1992, to place antennas on the Water Tower. *See* Brennan Affid. ¶ 6 & Exh. B. On or about June 22, 1992, construction of Verizon Wireless' antennas on the Water Tower was fully complete and the antennas began to provide service. *See* Brennan Affid. ¶ 9 & Exh. C. On or about December 11, 2009, Verizon Wireless obtained a building permit to remove the nine

---

[2]     As used herein, the term "Wireless Defendants" refers to Defendants Sprint Spectrum Realty Company, L.P. (as successor-in-interest to Sprint Spectrum, L.P.), Nextel of New York d/b/a Nextel Communications, T-Mobile Northeast LLC (as successor-in-interest to Omnipoint Facilities Network 2, LLC) d/b/a T-Mobile, and New York SMSA Limited Partnership d/b/a Verizon Wireless. All of the Wireless Defendants' agreements with the Village are referenced in the Complaint and are attached to the affidavits that are appended to this motion. As such, the dates of the agreements and any other information contained therein can be relied on by the Court without the need to convert this motion into one for summary judgment. *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.").

[3]     *See* Compl. ¶¶ 98-99 (referencing Verizon Wireless' agreement); *see also* Affidavit of Michael Brennan, sworn to on the 21st day of May, 2010, ¶ 4 & Exh. A (containing a copy of Verizon Wireless's agreement). The Brennan Affidavit is appended hereto as Attachment 1.

[4]     *See* Compl. ¶¶ 89-91 (referencing Sprint's agreement); *see also* Affidavit of Michael Ahl, sworn to on the 28th day of April, 2010, ¶ 7 & Exh. A (containing a copy of Sprint's agreement). The Ahl Affidavit is appended hereto as Attachment 2.

[5]     *See* Compl. ¶¶ 92-94 (referencing Nextel's agreement); *see also* Affidavit of Michael Ahl, sworn to on the 28th day of April, 2010, ¶ 11 & Exh. C (containing a copy of Nextel's agreement).

[6]     *See* Compl. ¶¶ 95-97 (referencing Omnipoint's agreement); *see also* Affidavit of Robert Ciaglia, sworn to on the 24th day of May, 2010, ¶ 4 & Exh. A (containing a copy of Omnipoint's agreement). The Ciaglia Affidavit is appended hereto as Attachment 3.

3

existing antennas and install nine new antennas at the same location on the Water Tower on the same antenna mounting structures.  *See* Brennan Affid. ¶¶ 12-13 & Exh. D.

Sprint obtained a building permit to place antennas on the Water Tower on or about July 31, 2003.  *See* Ahl Affid. ¶ 8 & Exh. B.  On December 20, 2003, construction of Sprint's antennas on the Water Tower was fully complete and the antennas began providing service.  *See* Ahl Affid. ¶¶ 9, 10.  Nextel obtained a building permit to place its wireless antennas on the Water Tower on or about October 21, 2004.  *See* Ahl Affid. ¶ 12, Exh. D.  On or about January 3, 2005, construction of Nextel's antennas on the Water Tower was fully complete and the antennas began providing service.  *See* Ahl Affid. ¶¶ 13, 14.

Omnipoint obtained a building permit to place its antennas on the Water Tower on or about July 31, 2003.  *See* Ciaglia Affid. ¶ 6 & Exh. B.  On or about December 9, 2003, construction of the Omnipoint antennas on the Water Tower was fully complete.  *See* Ciaglia Affid. ¶ 7.[7]

As with every device used in wireless communication, the antennas that the Wireless Defendants have placed on the Water Tower pursuant to these agreements use radiofrequency ("RF") emissions to send and receive the wireless signals to and from handsets (or "cell phones").  The safety of these emissions is regulated exclusively by the Federal Communications Commission (the "FCC").

In 2010, nearly eighteen years after the first of these agreements was signed, and following the unsuccessful attempt by the plaintiffs in *Perrin* to have RF-emitting antennas removed from the Water Tower through an action in state court, Plaintiffs filed their Complaint here requesting a determination that the state courts got it wrong, and that the execution of these

agreements between the Village and the Wireless Defendants violated the Commercial Enterprises and ODO Covenants. *See* Compl. ¶¶ 54, 62, 77. As a remedy for this alleged violation, the Plaintiffs seek removal of the antenna structures from the Water Tower and relief under Section 1983.

## SUMMARY OF ARGUMENT

Plaintiffs' Complaint must be dismissed for a number of separate, independent reasons, ranging from a failure to abide by the relevant statutes of limitations and collateral estoppel to a failure to state claims under New York and federal law.

**This Action Is Time-Barred.** The events that gave rise to the claims in this case occurred long ago, and the Plaintiffs have been on notice of them for years. Thus, the Plaintiffs' claims under Count I are completely or partially time-barred by a number of separate statutes, including (1) the statutory provision codified at N.Y. R.P.A.P.L. § 2001 that deems released any claims seeking to remove structures pursuant to a restrictive covenant if those claims are not brought within two years; (2) the 1-year and/or 18-month statute of limitation codified at N.Y. C.P.L.R. § 9802, which apply to actions brought against villages; and/or (3) the 6-year statute of limitation codified at N.Y. C.P.L.R. § 213. Moreover, the claims arising under Count II are barred by the 3-year statute of limitations contained in N.Y. C.P.L.R. § 214(5).

**The ODO Covenant Provides No Basis For Relief.** *First*, the claims relating to the ODO Covenant are barred pursuant to the doctrine of collateral estoppel. In *Perrin*, New York state courts at both the trial and appellate level have already considered claims materially identical to those brought by the Plaintiff and have determined that the ODO Covenant does not prohibit the installation or use of RF-emitting antennas on the same tower at issue in this case.

---

[7]     Due to maintenance issues at the Water Tower, the antennas were not used to provide service until several months later. *See* Ciaglia Affid. ¶ 7.

The Plaintiffs here are in a position legally indistinguishable from the *Perrin* plaintiffs and are thus collaterally estopped from arguing any entitlement to relief based on the ODO Covenant.

*Second*, if this Court finds that collateral estoppel does not apply, the Court should defer to the conclusions of the Appellate Division in *Perrin* (*Perrin II*) as they relate to the construction of the ODO Covenant under New York law. As the Appellate Division found, a restrictive covenant must be read narrowly, in context, and must be strictly construed against the party seeking to enforce it. The *Perrin II* court correctly held in light of these interpretative rules that it is clear that the transmission of RF is not "offensive, dangerous, or obnoxious."

*Third*, the Plaintiffs' claims under the ODO Covenant are barred by the doctrines of conflict, field, and express preemption. To succeed on their claims, the Plaintiffs must show that the RF emissions from the antennas on the Water Tower are "offensive, dangerous, or obnoxious" as a matter of New York law. As *Perrin I* already recognized, however, a court cannot read the ODO Covenant in this manner because doing so would constitute preempted regulation of FCC-compliant equipment. Indeed, in reaching its preemption holding, the court in *Perrin I* sought and gave proper deference to the views of the FCC, which participated in *Perrin I* and opined that the claims in that action were preempted.[8]  Preemption of the claims in this case is even clearer than in the *Perrin I* opinion, since the facilities operated by the Wireless

---

[8]    *See* Letter from Mathew B. Berry, General Counsel, FCC, to Justice Winslow, Justice of the Supreme Court of the State of New York, Nassau County (June 18, 2008), *Perrin I* (No. 07-009468) ("FCC *Perrin* Letter").  A copy of the FCC *Perrin* Letter is appended hereto as Attachment 4.  The D.C. Superior Court opinion that the FCC attached to its letter has since been affirmed in part and reversed in part by *Murray v. Motorola, Inc.*, 982 A.2d 764 (D.C. 2009). Both the trial and appellate courts in New York also held that the Village properly relied on a study showing that the Wireless Defendants' antennas emit a cumulative level of RF that is far below the federal health and safety standard.  *See Perrin v. Bayville Village Bd.*, 2009 N.Y. Slip Op. 30460(U), No. 9468-07, 2009 WL 599808, at *4 (N.Y. Sup. Ct. Jan 31, 2009) (appended hereto as Attachment 5); *see also Perrin II*, 894 N.Y.S.2d at 134-35.

Defendants are personal wireless service facilities and thus covered by an explicit statutory reference that did not apply to the government-owned facilities discussed in *Perrin I.*

*Fourth*, in addition to preempting this action, federal telecommunications law provides another basis for dismissing the Plaintiffs' claims relating to the ODO Covenant. The covenant cannot prohibit the Wireless Defendants' use of the Property because, if it did, this would unlawfully frustrate the public policies embodied in federal telecommunications law.

**The Commercial Enterprises Covenant Provides No Basis For Relief.** Plaintiffs cannot rely on the Commercial Enterprises Covenant for two independent reasons. *First*, the Plaintiffs do not have standing as intended third-party beneficiaries to enforce this covenant because, unlike the ODO Covenant, it was not intended to protect a specific group of property owners.

*Second*, applying the controlling principles of New York real property law discussed in *Perrin II*, it is clear that the Wireless Defendants' use of the Property does not amount to a "concession" or "commercial enterprise" as those terms are used in the Commercial Enterprises Covenant. Indeed, under well-established New York law, the Wireless Defendants are treated as utilities when it comes to the placement of their facilities, and the RF antennas at issue here are much more closely analogous to telephone poles and other utility infrastructure than the type of public amusements contemplated by the Commercial Enterprises Covenant. Read narrowly, as New York law requires, it is clear that this covenant only prohibits certain specific uses of the Property, rather than any activity that has some connection to a commercial enterprise.

**The Section 1983 Claim Fails as a Matter of Law.** The Plaintiffs' Section 1983 due process claim must be dismissed because it does not satisfy the pleading requirements of Fed. R. Civ. P. 8. The Complaint does not provide any facts about the process they allege was due or

when it was supposedly denied.  Moreover, the Plaintiffs have not and cannot show that any such denial amounts to the deprivation of an interest protected by the Due Process Clause.  Federal law is clear that Section 1983 protects only a very limited set of contractual rights, and cannot be used as a vehicle for turning any ordinary contract disputes like this one into a federal cause of action.

## STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level,'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and must include "enough facts to state a claim for relief that is plausible on its face," *Twombly*, 550 U.S. at 570.  In adjudicating a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

Consistent with the page limits set by the Court during the April 14, 2010, pre-motion conference, this memorandum of law does not exceed 50 pages, exclusive of the table of contents and the table of authorities.

## ARGUMENT

### I.    COUNT I AND COUNT II ARE EACH TIME-BARRED.

#### A.    Count I Is Time-Barred.

In Count I, the Plaintiffs seek a declaratory judgment that the Wireless Defendants' use of the Property violates the restrictive covenants and an injunction ordering the removal of their antenna structures.  *See* Compl. pp. 26-27.  As discussed below, this Count is (1) deemed released under the 2-year statutory provision codified at N.Y. R.P.A.P.L. § 2001; (2) barred by

the 1-year or 18-month limitation period codified at N.Y. C.P.L.R. § 9802; and/or (3) barred by the 6-year statute of limitation codified at N.Y. C.P.L.R. § 213.

**N.Y. R.P.A.P.L. § 2001.**  Under New York law, when a plaintiff brings an action to have a structure altered or removed on the grounds that it is prohibited by a covenant restricting the use of land, the action must be brought within two years "from the completion of the structure concerned" or the action is deemed to have been "released."  N.Y. RPAPL § 2001; *J.B. Realty Enterp. Corp. v. City of Saratoga Springs*, 270 A.D.2d 771, 774, 704 N.Y.S.2d 742, 745-46 (N.Y. App. Div. 3 Dep't 2000); *Oneida County Mobile Home Sales, Inc. v. Niagara Mohawk Power Corp.*, 407 N.Y.S.2d 89, 92-93, 63 A.D.2d 385, 390-91 (N.Y. App. Div. 4 Dep't 1978).

By its express terms, R.P.A.P.L. § 2001 applies to this action.  The statute:

> applies to actions [1] to enforce a covenant or agreement restricting the use of land . . . including an action predicated on infringement of an easement or other interest created by the covenant or agreement, [2] to the extent that the restriction relates to structures that may be erected on the premises and [3] limits such structures with respect to . . . the area that may be built upon, the location, independent character or number of structures, height, or general purpose for which they shall be designed or typically suited.

N.Y. R.P.A.P.L. § 2001(1).  Plaintiffs' action clearly falls within the scope of the statute.  *First*, the Plaintiffs are bringing an action to "enforce a covenant or agreement restricting the use of land" because they filed the Complaint allegedly to enforce the ODO and Commercial Enterprises Covenants and these covenants restrict the use of the Property.  *Second*, insofar as this action is concerned, the restrictions "relate[] to structures that may be erected on the premises" because, according to the Plaintiffs' allegations, the two covenants prohibit the placement of RF antennas on the Property and the Plaintiffs are specifically seeking to have those structures removed.  And *third*, the Plaintiffs claim that the restrictions "limit[] such structures with respect to the area that may be built upon, the location, independent character or

number of structures, height, or general purpose for which they shall be designed or typically suited" because, *inter alia*, Plaintiffs allege that the covenants prevent RF antennas from being built or operated on the portion of the Property where the Water Tower is located. Indeed, the gravamen of the Plaintiffs' Complaint is not that the Defendants' use of the property violates the covenants in the abstract, but rather that the antenna structures on the Property violate the covenants, *see, e.g.*, Compl. ¶ 7, and that the Court should order these structures to be removed, *see* Compl. at pp. 26-27 (for relief under Count I, demanding that the Court "direct[] the defendants to remove and/or cause the removal of all non-governmentally owned or operated antennas from the real property").

New York courts have consistently applied R.P.A.P.L. § 2001 to actions where the relief sought is the removal or alteration of structures. In *J.B. Realty*, for example, a group of property owners who lived next to a park owned by the City of Saratoga Springs sued the City. The property owners argued that the City violated a restriction in the deed that conveyed the park to the City—including a restriction that required the property to be used for "local park and recreational purposes"—by approving the construction of open air pavilions and a restroom in connection with a local farmer's market. *J.B. Realty*, 270 A.D.2d at 774, 704 N.Y.S.2d at 745-46. As here, the specific portion of the covenant at issue in *J.B. Realty* prohibited certain uses of the property, and the court found that R.P.A.P.L. § 2001 applied to the plaintiffs' claim because the Plaintiffs were seeking to have structures removed pursuant to this covenant. *J.B. Realty*, 270 A.D.2d at 774, 704 N.Y.S.2d at 746; *accord Ram Island Homeowners Ass'n v. Hathaway Realty*, 305 A.D.2d 390, 391, 758 N.Y.S.2d 522, 522 (N.Y. App. Div. 2 Dep't 2003) ("RPAPL

2001 applies when a party is seeking to remove or alter a structure that is in violation of covenants or restrictions pertaining to real property.").[9]

Under R.P.A.L. § 2001, an action "cannot be maintained unless it is commenced . . . before the expiration of two years from the completion of the structure concerned."  N.Y. R.P.A.L. § 2001(2).  As established above, *see* Background *supra*, all of the Wireless Defendants' antennas were completed far more than two years before the Plaintiffs brought this action.[10]  Ominpoint's antennas were completed on or about December 9, 2003.  Verizon Wireless began offering service using its antennas on or about June 22, 1992—and because a facility must be complete before it can provide service, it is clear that construction of Verizon

---

[9]    During the pre-motion conference held by this Court, counsel for the Plaintiffs suggested that R.P.A.L. § 2001 does not apply in this case because, in the Plaintiffs' view, the restrictive covenants prohibit certain uses of the Property but do not limit what structures can be built or operated thereon.  The Plaintiffs' position is not based on a proper reading of New York law.  As noted above, application of R.P.A.L. § 2001 turns on the type of relief the Plaintiffs seek.  While courts have determined that R.P.A.L. § 2001 does not apply where the plaintiffs are *not* seeking to remove or alter any structures on the property but, instead, are only attempting to prohibit certain uses of the property, *see Newcomb v. Congdon*, 160 A.D.2d 1192, 555 N.Y.S.2d 202 (N.Y. App. Div. 3d Dep't 1990) (finding that R.P.A.L. § 2001 did not apply in a case where the plaintiffs only sought money damages and an injunction prohibiting the defendants' use of the property), the Plaintiffs here are seeking to use the restrictive covenants to have certain structures removed or altered, *see, e.g.*, Compl. at pp. 26-27.  Therefore, R.P.A.L. § 2001 applies.

[10]    While the Court can grant the Wireless Defendants' motion and dismiss this action in its entirety at the motion to dismiss stage, adjudicating the Wireless Defendants' arguments under R.P.A.L. § 2001 may require the Court to rely on dates or other factual information in the attached affidavits that go beyond the scope of what the Court may consider in deciding a motion to dismiss.  *See Oberstein v. SunPower Corp.*, 2010 WL 1705868, at *3 (E.D.N.Y. Apr. 28, 2010) (identifying the documents and information the Court can rely on when deciding a motion to dismiss without having to convert the filing into one for summary judgment).  If the Court determines that referring to these materials is helpful in disposing of this action, the Court can convert this motion into one for summary judgment.  *See* Fed. R. Civ. P. 12(d).  Under the standard that would then apply, judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Wireless' antennas was fully complete, at the latest, as of that date.[11]  Similarly, Sprint began providing service on December 20, 2003 and Nextel on or about January 3, 2005, leaving no doubt that the construction of each of these facilities was complete by those dates.

**N.Y. C.P.L.R. § 9802.**  New York law also imposes a separate 1-year or 18-month statute of limitation that bars the claims presented in Count I.  This statute applies to all actions brought against a New York village, and it has two operative provisions.  First, the statute provides that:

> no action shall be maintained against the village upon or arising out of a contract of the village unless the same shall be commenced within eighteen months after the cause of action therefor shall have accrued, nor unless a written verified claim shall have been filed with the village clerk within one year after the cause of action shall have accrued.

N.Y. C.P.L.R. § 9802.

Second, the statute includes a catch-all provision, which provides that

> no other action shall be maintained against the village unless the same shall be commenced within one year after the cause of action therefor shall have accrued, nor unless a notice of claim shall have been made and served in compliance with section fifty-e of the general municipal law.

*Id*.

Restrictive covenants are contracts falling within the first prong of Section 9802.  *See Chambers v. Old Stone Hill Road Assocs.*, 1 N.Y.3d 424, 441, 806 N.E.2d 979, 988 (2004) (a

---

[11]     As discussed in an appended affidavit, Verizon Wireless obtained a building permit from the Village on or around December 11, 2009, to replace nine existing antennas with nine new antennas.  *See* Brennan Affid. ¶¶ 12-13, Exh. E.  The replacement of these existing antennas does not create a new accrual date because the substitution of new equipment for old does not "constitut[e] or creat[e] a different or more extensive violation" of the covenants.  *See* N.Y. R.P.A.P.L § 2001(3)(a); *see also Bodouva v. Ross*, 246 A.D.2d 617, 667 N.Y.S.2d 306 (N.Y. App. Div. 2 Dep't 1998) ("a new cause of action did not accrue where the defendant's replacement structure was designed so as to fall within the profile of the prior structure").

restrictive covenant is "a private contract").  But regardless of which subsection governs, C.P.L.R. § 9802 provides that for all actions against a village, "[t]he omission to present a claim or to commence an action thereon within the respective periods of time above stated applicable to such claim, *shall be a bar to any claim or action therefor against said village.*"  N.Y. C.P.L.R. § 9802; *see also Salesian Soc'y, Inc. v. Village of Ellenville*, 41 N.Y.2d 521, 523-24, 393 N.Y.S.2d 972, 974-75 (N.Y. 1977) (discussing the purposes underlying C.P.L.R. § 9802's statutory bar).  The Plaintiffs' Complaint does not allege that they presented their claims to the Village within the time period specified in C.P.L.R. § 9802.  Accordingly, New York law requires that their claims be dismissed.  *See, e.g.*, *Judski v. Village of Johnson City*, 226 A.D.2d 862, 863, 640 N.Y.S.2d 362, 362 (N.Y. App. Div. 3 Dep't 1996) ("Compliance with the CPLR 9802 . . . is a condition precedent to be pleaded and proved by the party bringing a breach of contract action against a village . . . .  As plaintiffs failed to plead the filing of a verified claim . . . the complaint failed to state a cause of action[.]").[12]  In addition, the dates alleged in the Complaint affirmatively show that the Village breached the restrictive covenants, if at all, when it entered into the agreements with the Wireless Defendants—all of which were entered into more than 18 months ago.  *See* Background *supra*.

Because the Plaintiffs' claims under Count I cannot be maintained against the Village, they must be dismissed against all of the Wireless Defendants as well.  Under Count I, the

---

[12]    Because compliance with C.P.L.R. § 9802 is a condition precedent that must pled and proved by the party bringing the action, and because the Complaint does not plead compliance with this provision, the Court can adjudicate the Wireless Defendants' argument under this statute on a motion to dismiss because it does not require the Court to consider any information outside the scope of the Complaint.  *See* n.10 *supra*; *see also Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.  Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted[.]").

Plaintiffs have alleged that the Village was a party to the Deed and exceeded the limits imposed therein. *See, e.g.*, Compl. ¶ 112. They have not alleged—nor could they—that the Wireless Defendants were either parties to the Deed or are directly bound by its covenants. Thus, if the Village is dismissed from this action, Count I must also be dismissed for failure to state a claim against the Wireless Defendants.

**N.Y. C.P.L.R. § 213.** Count I should be dismissed in its entirety against all of the defendants under either R.P.A.P.L. § 2001 or C.P.L.R. § 9802. However, even under the catch-all 6-year statute of limitation codified at C.P.L.R. § 213, all or most of the claims presented by Plaintiffs would still be time-barred.[13]

The limitations period in Section 213 applies to actions "for which no limitation period is specifically prescribed by law" and to actions "upon a contractual obligation or liability, express or implied." N.Y. C.P.L.R. § 213. New York courts have determined that this statute applies to actions seeking to enforce covenants where no more stringent statute applies. *See, e.g.*, *City of New York v. Delafield 246 Corp.*, 236 A.D.2d 11, 27, 662 N.Y.S.2d 286, 296 (N.Y. App. Div. 1 Dep't 1997). The 6-year limitations period begins to run "upon accrual of the cause of action." *Guglielmo v. Unanue*, 244 A.D.2d 718, 721, 664 N.Y.S.2d 662, 665 (N.Y. App. Div. 3 Dep't 1997). And a "cause of action accrues, for the purpose of measuring the period of limitations, when all of the facts necessary to the cause of action have occurred so that the party would be

---

[13]    The Court can adjudicate the Wireless Defendants' arguments under C.P.L.R. § 213 at the motion to dismiss stage because doing so would not require the Court to consider any facts that fall outside the scope of the Plaintiffs' Complaint. *See Ghartey*, 869 F.2d at 162 ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted[.]"); *see also* nn.10 & 12 *supra*. As will be discussed below, the accrual date for the limitations period codified at C.P.L.R. § 213 runs from the dates the agreements were entered

entitled to obtain relief in court." *Motor Vehicle Acc. Indemnification Corp. v. Aetna Cas. & Sur. Co.*, 89 N.Y.2d 214, 221, 674 N.E.2d 1349, 1352 (N.Y. 1996) (quotation marks omitted).

In this case, the Plaintiffs' cause of action accrued for purposes of C.P.L.R. § 213 on the date the Village allegedly breached the restrictive covenants by entering into an agreement to allow the placement of wireless antennas on the Water Tower because, on that date, the Village had manifested its intent to allow the placement of wireless facilities and Plaintiffs could have commenced an action to obtain relief. *See, e.g.*, *Rachmani Corp. v. 9 East 96th Street Apartment Corp.*, 211 A.D.2d 262, 266, 629 N.Y.S.2d 382, 384 (N.Y. App. Div. 1 Dep't 1995) (recognizing that "the date the statutory period of limitation commences to run is logically the date of the act that constitutes repudiation"). As with C.P.L.R. § 9802, the relevant date for accrual under C.P.L.R. § 213 is different from the date on which R.P.A.P.L. § 2001's two-year limitations period began to run. R.P.A.P.L. § 2001 specifically provides that its limitations period starts to run from the date the structure was "complet[ed]," *see* N.Y. R.P.A.P.L. § 2001(2). In contrast, C.P.L.R. § 213 runs from an earlier date—the date on which the Village allegedly repudiated the Deed and manifested its intent to allow the placement of wireless facilitates on the Water Tower. Here, the Village entered into its first agreement to allow the placement of wireless facilities (with Verizon Wireless) on March 10, 1992, nearly eighteen years before this action was filed.[14]

---

into, which are facts that are pled in and within the scope of the Plaintiffs' Complaint. *See* Background *supra*.

[14]   *See* Background *supra* (discussing relevant dates). With one exception, each of the license agreements cited by the Plaintiffs in the Complaint were entered into more than six years before the Complaint was filed, and thus fall outside the statute of limitations period even if the signing of each agreement constituted a new accrual date as to each individual carrier. *See* Background *supra*. The Nextel agreement is the only one that Plaintiffs allege was signed within six years of the filing of the Complaint.

**B.      Count II Is Also Barred By The Applicable Statute Of Limitations.**

In Count II, the Plaintiffs assert that they were deprived of procedural due process in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.  *See* Compl. at ¶¶ 115-120.  New York's three-year statute of limitations—N.Y. C.P.L.R. § 214(5)—applies to Section 1983 actions such as this one.  *See, e.g.*, *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997).

Although state law supplies the limitations period for Section 1983 claims, "federal law governs the determination of the accrual date," and, under federal law, "the statute of limitations accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Ormiston*, 117 F.3d at 71 (quotation marks omitted).  While the Plaintiffs have only made vague allegations regarding their Section 1983 claim, these allegations are sufficient for this Court to determine that their claim is time-barred.

The Complaint alleges that before the Village agreed to allow the installation of the antennas, the Village needed to "afford[] the plaintiffs [an] opportunity at a meaningful time and meaningful manner . . . to review the defendant Village's behavior." Compl. at ¶ 118.  The execution of the agreements constituted the Village's agreement to permit placement of the antennas.  As a result, the Plaintiffs' Section 1983 claim accrued at the latest when the Village executed the agreements authorizing the Wireless Defendants to install RF antennas on the Water Tower.  As established in the Complaint and the documents referenced therein, all of the agreements were entered into more than three years prior to the filing of the complaint in this action.  *See* Background *supra*.  Thus, Count II is time-barred as to all of the defendants.

II.   **IF NOT TIME-BARRED, THE COMPLAINT SHOULD BE DISMISSED AS A MATTER OF LAW ON A NUMBER OF INDEPENDENT GROUNDS.**

A.   **Plaintiffs' Claims Fail To The Extent That They Rely On The ODO Covenant For Relief.**

The Plaintiffs here argue that the operation of wireless communication antennas on the Water Tower violates the ODO Covenant, a claim identical in all material respects to the one made by the parties that brought suit in *Perrin*.  In *Perrin*, the Nassau County Supreme Court found that the plaintiffs' claim failed because a finding that RF emissions were "offensive, dangerous, or obnoxious" would conflict with—and therefore, is preempted by—the FCC's determination that such emissions are safe.  Although the Supreme Court did not pass on the *Perrin* defendants' argument that the claim failed as a matter of law because RF emissions do not fall within the category of "offensive, dangerous, or obnoxious" activities barred by the covenant, the Second Department addressed this argument on appeal and found that RF emissions "would not violate the restrictive covenant."  *Perrin II*, 70 A.D.3d at 838, 894 N.Y.S.2d at 134.  These issues have therefore been decided and, under the doctrine of collateral estoppel, the Plaintiffs cannot relitigate them.  In any event, the reasoning of both the Second Department and the Supreme Court was correct, and even if those decisions are not given preclusive effect this Court should reach the same conclusions and hold that the Plaintiffs' claims fail as a matter of law.

1.   **The Doctrine Of Collateral Estoppel Prevents The Plaintiffs From Relitigating Issues Decided In The *Perrin* Action.**

Under New York law, the doctrine of collateral estoppel, or "issue preclusion," prevents the relitigation of issues decided in a prior action, and applies when:  (1) the moving party carries its burden of establishing that there is "an identity of issue [2] which has necessarily been decided in the prior action and [3] is decisive of the present action," *Buechel v. Bain*, 97 N.Y.2d

295, 304, 766 N.E.2d 914, 919, 740 N.Y.S.2d 252, 257 (N.Y. 2001); and (4) the non-moving party fails to carry its burden of showing that there has "been a full and fair opportunity to contest the decision now said to be controlling." *Id.* The doctrine applies not just against parties to the prior litigation but also those deemed to be in "privity" with a party to the prior action—a term which New York courts have defined broadly.[15] *See, e.g., Buechel*, 97 N.Y.2d at 303-05, 766 N.E.2d at 919-20, 740 N.Y.S.2d at 257-58. The elements of New York's doctrine of collateral estoppel have been satisfied here.

### a.    Issues Dispositive Of The Plaintiffs' Claims Were Litigated And Decided In The *Perrin* Actions.

The success of the Plaintiffs' claims here depends on this Court determining that (1) the Village violated the terms of the ODO Covenant by authorizing the placement of RF-emitting antennas on the Water Tower, *see, e.g.*, Compl. ¶¶ 8, 112; and (2) that federal law does not preempt state law from holding that RF emissions are "offensive, dangerous, or obnoxious" under the terms of a restrictive covenant, *see, e.g.*, Compl. ¶¶ 2, 111. The *Perrin I* and *Perrin II* courts have already decided both issues.

The *Perrin* action was commenced by a group of landowners – indeed, the Plaintiffs' neighbors – who lived within a one mile radius of the Property – like the Plaintiffs here – and who claimed – also like the Plaintiffs here – to be among the class of third-party beneficiaries protected by the Deed under the ODO Covenant. *See Perrin I*, Slip Op. at 3. The *Perrin* plaintiffs – again like the Plaintiffs here – contended that RF emissions from antennas on the Water Tower violated the ODO Covenant because they posed a health risk. *See, e.g.*, Verified

---

[15]    Federal courts must provide state-court judgments with preclusive effect when the law of the state that issued the judgment would give them such effect. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." (citing  28 U.S.C. § 1738)).

Complaint at ¶¶ 23, 35, *Perrin I*, 2008 WL 4124110 (No. 07-009468).  That claim was rejected for two reasons, both of which warrant findings of collateral estoppel in this case.

(1)     Nassau County Supreme Court – Preemption Finding.

The Nassau County Supreme Court sought the views of the FCC on the preemption issue, and the FCC responded in a June 18, 2008, letter to the court that the *Perrin* petitioners' claims were preempted under the doctrines of field and conflict preemption.  *Perrin I*, Slip Op. at 6. "Giving appropriate weight to the opinion of the FCC," the Supreme Court found that it could not "properly sustain petitioner's claim" because, in order to find that the Village breached the ODO Covenant by authorizing the installation of RF-emitting antennas on the Water Tower, the court would "have to find that the incremental or cumulative RFR emissions resulting from the installation . . . would be harmful to residents within a one-mile radius of the Water Tower"—"a finding that . . . would directly conflict with federal RFR testing and emission standards." *Perrin I*, Slip Op. at 6, 2008 WL 4124110, at *5.  Adopting this reasoning, the *Perrin I* court held that enforcement of the ODO Covenant would conflict unlawfully with federal law, and found that the *Perrin* plaintiffs' claims were preempted and failed as a matter of law as a result.  *Id.*

(2)     Appellate Division – Covenant Interpretation Finding.

On appeal, the Second Department affirmed and modified *Perrin I*, finding that, in addition to its preemption holding, the Supreme Court "should have included a provision declaring that the proposed installation of the antenna would not violate the restrictive covenant." *Perrin II*, 70 A.D.3d at 838, 894 N.Y.S.2d at 134.  The Appellate Division noted that a party seeking to enforce a restrictive covenant must prove its limitation by clear and convincing evidence, and that RF emissions are not "offensive, dangerous, or obnoxious" within the meaning of the ODO Covenant.  *Perrin II*, 70 A.D.3d at 836-38, 894 N.Y.S.2d at 133-4.  Thus,

19

the court found that the *Perrin* plaintiffs' claim that RF emissions violated that covenant failed as a matter of law.

### b.    The Other Requirements Of Collateral Estoppel Have Been Met.

Both the preemption holding of the Supreme Court (adopted by the Appellate Division) and the failure-to-state-a-claim holding of the Appellate Division were sufficient to support the judgment reached – namely, that the *Perrin* plaintiffs' claims failed.  Either holding would also be decisive of the present action to the extent that the Plaintiffs here rely on the ODO Covenant: if RF emissions cannot be considered "offensive, dangerous, or obnoxious" either because federal law precludes that conclusion or because they do not fall within the terms of the covenant as a matter of state law, then the Plaintiffs' claims fail.

Although the Plaintiffs did not participate in the *Perrin* action, their position is legally and factually indistinguishable from that of the *Perrin* plaintiffs, and they are therefore in privity with the *Perrin* plaintiffs.  New York law broadly defines the term "privity" for collateral estoppel purposes, and the term "includes those . . . whose interests are represented by a party to the action."  *Juan C. v. Cortines*, 89 N.Y.2d 659, 667-68 679 N.E.2d 1061, 1065, 657 N.Y.S.2d 581, 585 (N.Y. 1997) (quotation marks omitted).  In pursuing their claims on the ODO Covenant against the Village, the *Perrin* plaintiffs clearly represented the interests of the Plaintiffs in this action.   The *Perrin* plaintiffs, like the Plaintiffs here, pursued their claims as third-party beneficiaries of the ODO Covenant.  Indeed, there is no way to distinguish the parties' relative interests with respect to enforcement of the ODO Covenant.  *See In re Stephiana UU.*, 66 A.D.3d 1160, 1163, 887 N.Y.S.2d 699, 703 (N.Y. App. Div. 3 Dep't 2009) (finding privity where "the court perceive[d] no basis in the record that would support a conclusion that the interests of the" two entities "were in any material respect different").  Thus, because the interests of the *Perrin*

petitioners and the Plaintiffs in this case are "coextensive" and "aligned with" each other, they are in privity for collateral estoppel purposes. *See, e.g.*, *Buechel*, 97 N.Y.2d at 304, 766 N.E.2d at 920, 740 N.Y.S.2d at 258 (finding privity between a party and a non-party to a prior action where the rights at issue "were coextensive with . . . and derived from the identical arrangement entered into").

Because privity exists and the first three elements of the collateral estoppel test have been satisfied, the Plaintiffs must carry their burden under the fourth element and show that the *Perrin* plaintiffs did not have an opportunity to fully and fairly litigate the issues in the previous action. *See Buechel*, 97 N.Y.2d at 306, 766 N.E.2d at 921, 740 N.Y.S.2d at 259. There is no way for the Plaintiffs to satisfy their burden on this point because the *Perrin* petitioners had an opportunity to—and in fact did—litigate both issues at the trial and appellate levels. Therefore, the doctrine of collateral estoppel applies and bars the Plaintiffs from arguing any entitlement to relief based on the ODO Covenant.

### 2. The ODO Covenant Does Not Prohibit The Wireless Defendants' Antennas.

Even if this Court were to find that the doctrine of collateral estoppel does not preclude the Plaintiffs from bringing their claims based on the ODO Covenant, the holdings of the Supreme Court and Appellate Division – based on established New York law regarding the interpretation of real property covenants – make clear that Plaintiffs' claims fail to the extent that they are based on the ODO Covenant, and this Court should follow these decisions. *See Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994) (federal courts must give "proper regard" to the rulings of state intermediate appellate courts on issues of state law).

"Restrictive covenants will be enforced when the intention of the parties is clear and the limitation is reasonable and not offensive to public policy.'"[16] *Perrin II*, 70 A.D.3d at 836, 894 N.Y.S.2d at 133 (quoting *Chambers*, 1 N.Y.3d at 431, 774 N.Y.S.2d at 868, 806 N.E.2d at 981). Any ambiguity in a covenant restricting the use of real property must be strictly construed against the party seeking to enforce it. *9394, LLC v. Farris*, 10 A.D.3d 708, 709, 782 N.Y.S.2d 281 (2d Dep't 2005); *Rautenstrauch v. Bakhru*, 64 A.D.3d 554, 884 N.Y.S.2d 77 (2d Dep't 2009) ("A covenant is ambiguous when it is capable of more than one interpretation or, in other words, when it does not unequivocally prohibit a use."). Thus, "'[a] party seeking to enforce a restriction on land use must prove, by clear and convincing evidence, the scope, as well as the existence, of the restriction.'" *Perrin II*, 70 A.D.3d at 836-37, 894 N.Y.S.2d at 133 (quoting *Greek Peak v. Grodner*, 75 N.Y.2d 981, 982, 556 N.Y.S.2d 509, 509, 555 N.E.2d 906, 906 (1990)).

The ODO Covenant provides that:

> No use of the premises shall be made or permitted which would be offensive, dangerous or obnoxious to the owners or any owner (now or hereafter) of land within a radius of one mile of the premises whether by reason of smoke, odor, fumes or any other use whatsoever offensive to such owners or owner of land.

The language of the covenant nowhere refers to RF emissions. Thus, with respect to RF emissions, the covenant is at best ambiguous and must be interpreted according to the ordinary canons and strictly construed against the Plaintiffs. Two canons of construction are particularly apt here – *noscitur a sociis* (the meaning of the "offensive, dangerous or obnoxious" phrase depends on the other provisions of the covenant) and *ejusdem generis* (a general word or phrase

---

[16]    As argued *infra*, Plaintiffs' interpretation of the ODO Covenant as prohibiting RF transmissions is also void as violating public policy, which favors the build-out of wireless service facilities. *See* Parts II.A.4 *infra*.

following a list of specific persons or things should be interpreted to include only the persons or things of the same type as those listed before it) – and both lead to the same result.

The covenant's use of the words "offensive, dangerous or obnoxious," as the *Perrin II* court found, is informed by the covenant's further provisions on "smoke, odor [or] fumes," "public amusements, concessions, vending, restaurants or other commercial enterprises," and use of the property as a "dumping ground, [for] garbage disposal purposes, [or as] an incinerator." *Perrin II*, 70 A.D.3d at 837-38, 894 N.Y.S.2d at 134 (internal quotations omitted).   RF emissions, which are intangible and which the federal government has declared to be safe when within the limits set by the FCC, are entirely unlike the smoke, odor, and fumes that form the basis for the ODO Covenant.   See *Perrin II*, 70 A.D.3d at 838, 894 N.Y.S.2d at 134 ("[I]nterpreting the restrictive covenant to prohibit such an uncertain, intangible, and attenuated danger as the danger allegedly posed by emissions of RF radiation from FCC-licensed antennae, would extend the covenant beyond the contextual meaning of its terms, and would impermissibly serve to extend, rather than limit, its restriction.").

Moreover, while the phrase "or any other use whatsoever offensive" is broadly inclusive on its face, it follows the list of smoke, odor, and fumes.  The common elements of those three items are that they are physically detectable by normal persons and irritating to the physical senses.  RF emissions like those emitted from the Wireless Defendants' equipment bear no similarities to these uses; such emissions are undetectable without special equipment and do not irritate the physical senses.  Indeed, the covenant in this case is much like the covenant at issue in *Herald Square S. Civic Ass'n v. Consol. Edison Co. of N.Y.*, 307 A.D.2d 213, 213-14 (N.Y. App. Div. 1st Dep't 2003), where the plaintiffs raised concerns regarding the health effects of electromagnetic fields and the First Department found that an electrical substation is not a

23

"noxious use" of property "comparable to the 19th-century trades and businesses specifically enumerated in the covenant."

Finally, the phrase, "or any other use whatsoever offensive to such owners or owner of land" cannot be read to allow the Plaintiffs' subjective views on RF to inform the meaning of the ODO Covenant.  Incorporating such a subjective viewpoint into the meaning of the covenant would extend its reach to the outer limits of the imagination of any potential plaintiff.  This view runs headlong into the maxim that covenants must be construed narrowly and in favor of the free use of land.  *See Biggs v. Sea Gate Ass'n*, 211 N.Y. 482, 488, 105 N.E. 664, 666-67 (1914); *Rowland v. Miller*, 139 N.Y. 93, 102, 34 N.E. 765 (1893).  The *Perrin II* court agreed, finding that construing the covenant according to the plaintiffs' subjective views on what is "offensive, dangerous or obnoxious" "would not constitute a 'reasonable limitation on the free use of land, and the petitioners would not be capable of demonstrating, by clear and convincing evidence, the scope of the restriction and its violation, as is their burden."  *Perrin II*, 70 A.D.3d at 837, 894 N.Y.S.2d at 134 (citations omitted).

In light of these well-established principles of construction and the state-court's construction of this particular covenant as not including RF emissions, the Plaintiffs' claims fail as a matter of law to the extent that they rely on the ODO Covenant.

### 3. Federal Law Preempts Any State-Law Attempt To Regulate The Wireless Defendants' Facilities Based On The Health Effects Of RF Emissions.

The Plaintiffs' claims under the ODO Covenant are also barred by the doctrines of field, conflict, and express preemption.[17]  To succeed on their claims, the Plaintiffs ask this Court to

---

[17]    All three forms of preemption flow from the Supremacy Clause of the U.S. Constitution, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the contrary notwithstanding."  U.S. Const.

determine that RF emissions from antennas on the Water Tower are "offensive, dangerous, or obnoxious" as a matter of New York law.  However, a determination as to the safety of RF emissions is not a conclusion that New York law is free to reach.[18]  Federal law occupies the field of technical standards for wireless service, including safety standards for RF emissions, and the states may not enter that realm.  In any event, the FCC has determined that RF emissions from FCC-compliant antennas are safe, and any state-law finding to the contrary directly conflicts with that agency's expert judgment.  And the ability of states to make such

---

art. VI, § 2.  For preemption purposes, federal "law" includes federal regulations.  *See, e.g.*, *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

[18]      It is the common law of New York—as interpreted by this Court in ruling on Plaintiffs' claims—that is subject to preemption, rather than the ODO Covenant itself.  *See  Perrin I*, 2008 WL 4124110, 2008 N.Y. Slip Op. 32401(U) at 4, 6 (holding that the court could not grant the requested relief because a state-law determination that RF emissions are "offensive, dangerous, or obnoxious" as a matter of New York law would be preempted).

For this reason, the Complaint's citation to *Chambers* is misplaced.  *See* Compl. ¶ 15 (citing *Chambers v. Old Stone Hill Road Assocs.*, 303 A.D.2d 536, 757 N.Y.S2d 70 (N.Y. App. Div. 2 Dep't 2003)); *see also Chambers v. Old Stone Hill Road Associates*, 1 N.Y.3d 424, 774 N.Y.S.2d 866 (2004).  *Chambers* involved a restrictive covenant that limited the use of property to single-family homes, and the plaintiffs in that case argued that the telecommunications facility at issue there violated that restrictive covenant.  *Chambers*, 1 N.Y.3d at 429, 774 N.Y.S.2d at 867.  Unlike in this case, the *Chambers* court could and did rule in the plaintiffs' favor without ever making a state-law determination about the relative safety of the facility.  *See Perrin I*, 2008 WL 4124110, 2008 N.Y. Slip Op. 32401(U) at 5 (distinguishing *Chambers* on this ground).  Unlike *Chambers*, but like *Perrin I*, to grant the Plaintiffs relief here would require the Court to make a state-law judgment that RF emissions are "offensive, dangerous, or obnoxious," a finding regarding safety that would directly conflict with the FCC's findings in this regard.

Plaintiffs' citation to *Sprint Spectrum L.P. v. Mills*, 283 F.3d 404 (2d Cir. 2002), *see* Compl. ¶ 14, is also inapt.  In *Mills*, where a wireless communication provider sought to compel a school district to permit the placement of a cellular communications tower on a high school roof, the court held that federal preemption principles did not apply to prevent the school district from imposing RF restrictions on that facility because the school district was acting in a proprietary, rather than regulatory, capacity when imposing that restriction.  *See Mills*, 283 F.3d at 421.  By contrast, the Plaintiffs here are asking the Court to declare that the New York state law, as embodied in the ODO Covenant, imposes on the Village a *duty* to impose stricter limits on RF than the FCC does.  *See* Compl. ¶ 111.

determinations with respect to the facilities at issue here is also expressly barred by statute, further preventing New York law from making determinations about the relative safety of RF-emitting devices.

          **a.**       **The Federal Government's Exclusive Role In Regulating RF Emissions.**

The Communications Act of 1934 "endow[s] the [FCC] . . . with comprehensive powers to promote and realize the vast potentialities of radio," *NBC v. U.S.*, 319 U.S. 190, 217 (1943), and "expresses a desire on the part of Congress to maintain, through appropriate administrative control, a grip on the dynamic aspects of radio transmission," *FCC v. Pottsville Broad. Co.*, 309 U.S. 134, 138 (1940). Title III of the Communications Act gives the FCC plenary authority over RF and almost every aspect of radio transmission and communication. *See* 47 U.S.C. § 301 *et seq.* (providing, *e.g.*, that "[n]o person shall use or operate any apparatus for the transmission of energy or communications or signals by radio, . . . except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter.").[19]

In light of this clear grant and exercise of authority, the Second Circuit has long recognized the federal government's exclusive jurisdiction over all technical aspects of wireless communications. *See Freeman v. Burlington Broads., Inc.*, 204 F.3d 311, 320 (2d Cir. 2000) ("Congress intended the FCC to possess exclusive authority over technical matters related to radio broadcasting."); *see also Cellular Phone Taskforce v. FCC*, 205 F.3d 82, 96 (2d Cir. 2000) ("The FCC has broad preemption authority under the Telecommunications Act.").

---

[19] Both Congress and the FCC have extended the federal government's exclusive control over traditional radio transmissions and devices to modern wireless telecommunications service, including the antennas at issue in this action. *See, e.g.*, *Future Use of Frequency Band 806-960 MHz*, 46 F.C.C.2d 752, 766-67 (¶¶ 43-44) (1974) ("assert[ing] Federal primacy in this area").

As part of the federal government's exclusive role in this area, the FCC—at Congress's direction and in consultation with numerous federal health and safety agencies—adopted rules for human exposure to RF emissions and has determined that all RF-emitting devices – including the antennas at issue in this case – are safe, provided they meet the federal standards. *See Cellular Phone Taskforce*, 205 F.3d at 87-88. In adopting these standards, Congress mandated and the FCC performed a careful balancing of competing federal policies and interests; nevertheless, the FCC did not sacrifice safety in any meaningful way given that the current standards incorporate a fifty-fold safety factor,[20] and include Maximum Permissible Exposure ("MPE") limits for every component of the wireless network capable of RF emissions.[21] The Commission has paid specific attention to tower safety issues, noting that it has "ensure[d] that there is no possibility of excessive exposures from these antennas." *RF Order I*, 11 F.C.C.R. at 15158 (¶ 92); *id.* ("[T]here is no evidence that typical installations in these services cause ground-level exposures in excess of our limits" and, in fact, "[f]or antennas mounted higher than 10 meters, measurement data for cellular facilities have indicated that ground-level power densities are *typically hundreds to thousands of times below the new MPE limits*.") (emphasis

---

[20]     *See Cellular Phone Taskforce*, 205 F.3d at 87-88; *see also In the Matter of Guidelines for Evaluating the Environmental Effects of Radiofrequency Radiation*, 11 F.C.C.R. 15123 (1996) ("*RF Order I*"); *see also In The Matter Of Procedures For Reviewing Requests For Relief From State And Local Regulations Pursuant To Section 332(c)(7)(B)(v) Of The Communications Act Of 1934*, 12 F.C.C.R. 13494 (1997) ("*RF Order II*"); *see also* FCC, Office of Engineering Technology, *Questions and Answers About Biological Effects and Potential Hazards of Radiofrequency Electromagnetic Fields*, OET Bulletin 56 at 13 n.10 (Aug. 1999) (discussing the safety factor adopted by the FCC).

[21]     *See* 47 C.F.R. § 1.1310 (setting forth the applicable limits for MPE); *see also* FCC, Office of Eng'g & Tech., *Evaluating Compliance with FCC Guidelines for Human Exposure to Radiofrequency Electromagnetic Fields*, OET Bulletin 65 at 7 (Aug. 1997) ("OET Bulletin 65") (discussing the FCC's limits for MPE).

added).[22]    In addition to these substantive standards, the FCC adopted detailed testing, certification, and equipment authorization procedures, which are designed to assure that all RF-emitting devices operated in the U.S. meet the federal safety standards.[23]    The Second Circuit has found that the FCC's rules in this regard adequately protect human health and safety.  *See Cellular Phone Taskforce*, 205 F.3d at 90-94.

### b.    Conflict Preemption.

Under principles of conflict preemption, federal law preempts all state laws that "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), and when "compliance with both federal and state regulations is a physical impossibility," *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963).  Here, granting the relief requested by the Plaintiffs would conflict with federal law in a number of significant and independent ways.

*First*, granting the relief requested by the Plaintiffs would conflict with the federal government's determination that FCC-compliant wireless facilities are safe.  As discussed above, the FCC has adopted standards for RF-emitting devices based on the consensus views of federal health and safety agencies and determined that all devices meeting this standard are safe.  *See* Part II.A.3.a *supra*.  Any determination that FCC-compliant wireless facilities are nonetheless, in

---

[22]    The Plaintiffs' Complaint does not appear to include a claim that the RF-antennas are out of compliance with FCC rules.  While the Complaint alleges that there was a sign on the Property relating to RF, any such sign would appear to have been consistent with FCC rules regarding distinctions between occupational and general population environments.  *See RF Order I*, 11 F.C.C.R. at 15139-40 (¶¶ 42-45 & n.56).  Nevertheless, both the Nassau County Supreme Court and the Appellate Division determined that the Village properly relied on a scientific study showing that the RF emissions from the existing RF antennas on the Water Tower—that is, the antennas at issue in this action—are "at a level far below the health and safety standards established by the FCC."  *Perrin I*, 2009 WL 599808, 2009 N.Y. Slip Op. 30460(U) at 4; *see also Perrin II*, 894 N.Y.S.2d at 134-35.

[23]    *See, e.g.*, 47 C.F.R. §§ 1.1307(b), 2.803(a), 2.907, 2.915, 2.925, 22.377, 24.51.

the words of the ODO Covenant, "offensive, dangerous or obnoxious," would thus function as an unlawful attack on the FCC's determination that they are safe.  Courts routinely find that any such state law challenge to the safety of FCC-compliant wireless devices is preempted,[24] and the FCC has emphasized that conflict preemption bars claims indistinguishable from those raised here.  FCC *Perrin* Letter at 1.

*Second*, granting the relief requested by the Plaintiffs would upset the delicate balance the FCC struck when it adopted the federal RF safety standards.  In adopting its rules, the FCC carefully balanced two congressionally mandated goals—(1) the protection of public health and safety, on the one hand; and (2) the promotion of wireless service in the most efficient and practical manner possible, on the other.[25]  As the FCC has explained to the U.S. Supreme Court, "[t]here is a trade-off between [the two goals]."[26]  For that reason, the FCC's "RF exposure standards are not simply a minimum requirement that the states are free to supplement."[27]

Here, the Plaintiffs' claims would upset the delicate balance struck by the federal government by elevating the safety consideration above the other interest Congress concerned

---

[24]     *See, e.g.*, *Murray v. Motorola, Inc.*, 982 A.2d 764, 777 (D.C. 2009) (state law actions "rest[ing] on allegations about the inadequacy of the FCC's RF radiation standard or about the safety of [devices] . . . are preempted under the doctrine of conflict preemption"); *Bennett v. T-Mobile USA, Inc.*, 597 F. Supp. 2d 1050, 1053 (C.D. Cal. 2008) (state-law determination that a wireless device is unsafe despite compliance with the FCC RF standards is "a collateral attack on the FCC regulations themselves"); *Jasso v. Citizens Telecomms. Co. of Cal., Inc.*, 2007 WL 2221031, *7-8 (E.D. Cal. 2007).

[25]     *See RF Order II*, 12 F.C.C.R. at 13496 (¶ 2) (the regulations "balance between the need to protect the public . . . from exposure to potentially harmful RF electromagnetic fields and the requirement that industry be allowed to provide telecommunications services to the public in the most efficient and practical manner possible").

[26]     Brief for the Respondents in Opposition at 21, *Citizens for the Appropriate Placement of Telecommunications Facilities v. FCC*, 531 U.S. 1070 (2001) (No. 00-393), 2000 WL 33999532, *21.

[27]     Brief of the United States and the FCC as Amicus Curiae in Support of Appellees at 17, *Murray*, 982 A.2d 764 (No. 07-cv-1074).

itself with—that is, promoting the widespread availability of wireless service.  Although "all risk from RF energy could be eliminated by prohibiting wireless communications technologies[,] Congress has entrusted to the FCC the process of striking the appropriate balance, a subject squarely within the agency's expertise."[28]   Indeed, the Second Circuit has already held that "requiring exposure to be kept as low as reasonably achievable in the face of scientific uncertainty would be inconsistent with [the FCC's] mandate" from Congress.  *Cellular Phone Taskforce*, 205 F.3d at 92.  That is the ruling the Plaintiffs seek here.  Thus, state-law claims like these—which are premised on the idea that RF emissions from FCC-compliant antennas are unsafe or dangerous—are preempted because such claims "would necessarily upset that balance and thus would contravene the policy judgments of the FCC."[29]

*Third*, the relief sought here would unlawfully conflict with the federal government's goal of creating a uniform and nationwide regulatory regime for wireless communications.  Both Congress and the FCC have long determined that uniform, national regulation of wireless telecommunications is essential.[30]   Indeed, when Congress amended the Communications Act in 1996, it did so because it was concerned that certain state and local requirements created an

---

[28]     Brief for the Respondents in Opposition at 21, *Citizens for the Appropriate Placement of Telecomms. Facilities v. FCC*, 531 U.S. 1070 (2001) (No. 00-393), 2000 WL 33999532, at *21; *see also* Motion of the FCC to Dismiss for Lack of Standing at 2, *EMR Policy Institute v. FCC*, No. 08-1383 (D.C. Cir. Jan. 26, 2009) ("Exposure to RF radiation is inevitable if the public is to have the ability, for example, to watch television, listen to the radio, and use cellular telephones.").

[29]     Brief of the United States and the FCC as Amicus Curiae in Support of Appellees at 17, *Murray*, 982 A.2d 764 (No. 07-cv-1074); *see also Murray*, 982 A.2d at 776 ("Given the FCC's contemporaneous explanations of the balance that it sought to achieve by rejecting a more stringent safety standard, we conclude that state regulation that would alter the balance is federally preempted."); *see also Bennett*, 597 F. Supp. 2d at 1053.

[30]     *See, e.g.*, *Use of the Bands 825-845 and 870-890 MHz*, 89 F.C.C.2d 58, 91-92 (¶ 81) (1982) ("[It] is imperative that no additional requirements be imposed by the states which could conflict with our standards and frustrate the federal scheme for the provision of nationwide cellular service.").

"inconsistent and, at times, conflicting patchwork of requirements" that threatened to "inhibit the deployment of Personal Communications Services (PCS) as well as the rebuilding of a digital technology-based cellular telecommunications network." H.R. Conf. Rep. No. 104-204, at 94 (1996). Congress intended that, instead of a patchwork of state and local regulations, "uniform, consistent requirements" should prevail. H.R. Conf. Rep. No. 104-204, at 94 (1996).[31]

The relief sought by the Plaintiffs—namely, an order directing the removal of RF-emitting antennas because their emissions allegedly violate the ODO Covenant—would undermine the uniform and nationwide regime that currently governs RF emitting devices. If successful, the Plaintiffs would be using state law to make local "safety" distinctions based solely on the RF characteristics of FCC-compliant wireless facilities. Such a result would directly undermine the federal government's goal of a "national regulatory policy for [wireless telephony], not a policy that is balkanized state-by-state." *Petition on Behalf of the State of Conn.*, 10 F.C.C.R. 7025, 7034 (¶ 14) (1995).

### c.    Field Preemption.

Field preemption applies where the "scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where Congress acts in "a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *see also Freeman*, 204 F.3d at 319-320. In short, "[w]hen the federal government completely occupies a given field or an identifiable portion of it," state law may not regulate in that field even if there is no discernible conflict or

---

[31]    *See also* H.R. Rep. No. 103-111, at 260 (1993) (amending the Communications Act to "foster the growth and development of mobile services that, by their nature, operate without regard to state lines as an integral part of the national telecommunications infrastructure").

interference with the federal regime.  *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 212-13 (1983).

Here, the federal regulation of RF emissions is so pervasive that no room is left for state law to supplement it.  Like the regulation of navigable waterways or aviation, the regulation of RF announces itself as amenable to only one form of central regulation.  *See, e.g.*, *Fed. Radio Comm'n v. Nelson Bros. Bond & Mortgage Co.*, 289 U.S. 266, 279 (1933) ("No state lines divide the radio waves, and national regulation is not only appropriate but essential to the efficient use of radio facilities.").

The FCC has noted that its exclusive jurisdiction over the technical standards of radio transmissions "includes preemption of local jurisdictions in matters concerning RF safety."  *In the Matter of Promotion of Competitive Networks in Local Telecommunications Markets*, 19 F.C.C.R. 5637, 5642 (¶ 11) (2004).  The FCC has also forcefully stated that the federal government occupies the field of RF emission regulation and expressed its view that state regulation premised on the notion that FCC-compliant equipment is nevertheless unsafe is preempted because it enters the "federal government's exclusive authority over technical aspects of radio communications."  Brief of the United States and the FCC as Amicus Curiae in Support of Appellees at 12-13, *Murray v. Motorola*, 982 A.2d 764 (D.C. 2009) (No. 07-cv-1074).  Such expressions of federal primacy are strong indicators of field preemption.  Congress's decision to make the FCC solely responsible for "licensing and regulating" the RF spectrum and devices that transmit RF signals, *see* 47 U.S.C. § 152(a), and its decision to maintain federal control "over all the channels of radio transmission" underscore that the federal government occupies the relevant field.

32

As with *Perrin,* this Court need not guess as to how the FCC views the claims at issue here; the FCC's letter brief in *Perrin* explicitly stated that the agency "believe[s] the same field and conflict preemption principles [as those articulated in the *Murray* briefs, which the agency attached] bar plaintiffs' claims in [that] case." FCC *Perrin* Letter at 1. As noted above, there is no material difference between the claims in *Perrin* and the claims based on the ODO Covenant in this case. Because awarding Plaintiffs relief would require the Court to interpret state law in a way that intrudes in the federally occupied field of technical standards for wireless services, the Plaintiffs cannot maintain their action under the ODO Covenant.

### d.    Express Preemption.

Express preemption applies to bar state law claims where Congress has expressly declared its intent to preempt. *See, e.g.*, *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985). Here, the Plaintiffs' claims relating to the ODO Covenant are preempted in whole or in part by, *inter alia*, 47 U.S.C. § 332(c)(7)(B)(iv) and related FCC rules, which "have the same preemptive force as federal statutes." *Freeman*, 204 F.3d at 321.

Section 332(c)(7)(B)(iv) contains an explicit admonition that "[n]o State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities *on the basis of the environmental effects of radio frequency emissions* to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv) (emphasis added); *see also Cellular Phone Taskforce*, 205 F.3d at 88.[32] Congress recognized that state and local concerns about the potential RF emissions from wireless facilities—concerns that Congress

---

[32]    The *Perrin* decisions did not address Section 332(c)(7) because the specific facilities at issue in that case were county-owned, and unlike the antennas owned by the Wireless Defendants they were thus not "personal wireless service facilities" as that term is defined in the Act.

stated were "at times not supported by scientific and medical evidence"—could inhibit the build-out of wireless network. *See* H.R. Rep. No. 104-104 pt. 1, at 61-62 (1995).[33]  This would be contrary to the primary purpose of the 1996 Act, which was to remove barriers to entry for advanced communications services and to promote their rapid deployment and adoption.  *See* H.R. Conf. Rep. No. 104-458, at 113 (1996); *see also City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 115-17 (2005).

The FCC has construed this provision broadly to grant the Commission "plenary authority in this area."[34]  As the FCC has explained, "[p]ursuant to Section 332(c)(7), and consistent with the Commission's general authority to regulate the operation of radio facilities, State and local governments are *broadly preempted* from regulating the operation of personal wireless service facilities based on RF emission considerations."  *In the Matter of Procedures for Reviewing Requests for Relief from State and Local Regulations Pursuant to Section 332(c)(7)(B)(v) of the Communications Act of 1934*, 15 F.C.C.R 22821, 22828 (¶ 17) (2000) ("*Request For Relief*") (emphasis added).  Thus, Section 332(c)(7)(B)(iv) preempts state or local law that would require "a facility to comply with RF emissions or exposure limits that are stricter than those set forth in the Commission's rules."  *Id.*  And, as the FCC has determined, state and local laws "may not restrict how a facility authorized by the Commission may operate based on RF emissions."  *Id.*[35]

---

[33]  *See also* H.R. Rep. No. 104-458 at 208  (1996) (stating that the intent of Section 332(c)(7)(B)(iv) was to prevent state and local governments "from basing the regulation of the placement, construction or modification of [commercial mobile service] facilities directly or indirectly on the environmental effects of radio frequency emissions if those facilities comply with the Commission's regulations adopted pursuant to section 704(b) concerning such emissions").

[34]  *See also Request For Relief*, 15 F.C.C.R. at 22828 (¶ 17).

[35]  As the expert federal agency charged with regulating all aspects of radio communications, and as the agency that promulgated the federal RF safety regulations, the

Here, the Plaintiffs' claims clearly fall within the zone of express preemption established by Section 332(c)(7)(B)(iv) and applicable FCC rules.  The Complaint asks this Court to find, as a matter of state law, that RF emissions from the antennas are "offensive, dangerous, or obnoxious."  *See* Compl. ¶¶ 8-13, 83-84.  The Plaintiffs are thus attempting to use state law to regulate the antennas based on the alleged environmental effects of and health concerns about RF in a manner that is expressly prohibited by Section 332(c)(7)(B)(iv).  *See, e.g.*, *Request For Relief*, 15 F.C.C.R. at 22828 (¶ 17) (determining that Section 332(c)(7)(B)(iv) preempts the regulation of "wireless service facilities based on RF emission considerations"); *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494-95 (2d Cir. 1999) (stating that "health concerns" are an impermissible basis for decision because of Section 332(c)(7)(B)(iv)).[36]

---

FCC's views on the scope of these laws are at the very least entitled to "substantial weight," *Medtronic v. Lohr*, 518 U.S. 470, 496 (1996), and can even fairly be treated as "dispositive," *id.* (quoting *Hillsborough,* 471 U.S. at 714).  The Supreme Court has held that where "Congress has delegated to [an expert agency] authority to implement the statute; the subject matter is technical; and the relevant history and background are complex," *Geier v. American Honda Motor Co.*, 529 U.S. 861, 883 (2000), "[t]he agency is likely to have a thorough understanding of its own regulation and its objectives and [is] 'uniquely qualified' to comprehend the likely impact of state requirements," *id.* (quoting *Medtronic*, 518 U.S. at 496).

[36]    In addition to Section 332(c)(7)(B)(iv), the Plaintiffs claims are also expressly preempted by 47 U.S.C. § 332(c)(3)(A).  Under this provision, Congress expressly provided that "no State or local government shall have *any authority* to regulate [1] the entry of or [2] rates charged by any commercial mobile service."  47 U.S.C. § 332(c)(3)(A) (emphasis added).  The preemption of entry regulation under Section 332(c)(3)(A) is explicit and absolute.  While state law may be used to regulate "other terms and conditions" of wireless service, *see* 47 U.S.C. § 332(c)(3)(A), the Communications Act makes clear that entry regulation is the sole province of the FCC.  *See, e.g.*, *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 987 (7th Cir. 2000) (entry regulation is exclusively "the province of federal regulators and courts").  Section 332(c)(3)(A)'s broad prohibition on entry regulation is properly construed as encompassing any state law condition on entry into the market.  Such conditions certainly encompass the state law claims brought by the Plaintiffs, which, if successful, would condition the Wireless Defendants ability to begin providing service in the Bayville area on their compliance with the Plaintiffs' reading of the ODO Covenant.  *See, e.g.*, *Bastien*, 205 F.3d at 989.

4.      **Preemption Principles Embodied In Federal Telecommunications Law Also Show That The Plaintiffs' Claims Under The ODO Covenant Are Void As Against Public Policy.**

In addition to preempting this action, federal telecommunications law provides another basis for dismissing the Plaintiffs' claims relating to the ODO Covenant.  As the Appellate Division recognized in *Perrin II*, New York has long held that restrictive covenants cannot be interpreted by state courts in a way that would violate public policy.  *See Perrin II*, 894 N.Y.S.2d at 133 ("Restrictive covenants will be enforced when . . . the limitation is . . . not offensive to public policy") (quotation marks omitted); *see also Crane Neck Ass'n, Inc. v. New York City/Long Island County Servs. Group*, 61 N.Y.2d 154, 160-67 (1984) (holding that restrictive covenants cannot contravene public policy).

In this case, the ODO Covenant cannot be read as prohibiting the Wireless Defendants' use of the Property because doing so would be contrary to the public policies embodied in the federal telecommunications statutes and FCC rules discussed above, such as 47 U.S.C. § 332(c)(7)(B)(iv).  *See Crane Neck Ass'n*, 61 N.Y.2d at 160-66 (invalidating private restrictive covenant on public policy grounds because enforcing the covenant would be inconsistent with the state's preemption of public laws and ordinances).

B.      **The Plaintiffs' Claims Fail To The Extent That They Rely On The Commercial Enterprises Covenant For Relief.**

1.      **The Plaintiffs Lack Standing To Enforce The Commercial Enterprises Covenant.**

Because the Plaintiffs were not direct parties to the Deed, the Plaintiffs can only enforce the Commercial Enterprises Covenant if they establish that they are intended third-party beneficiaries of that covenant or if they have alleged particularized harm stemming from the violation of that covenant.  Intended third-party beneficiary status is only appropriate where the putative beneficiary can carry its burden of showing that the language of the agreement at issue

"clearly evidences an intent to permit enforcement by the third party." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45, 485 N.E.2d 208, 212 (N.Y. 1985). "Absent clear contractual language evincing such intent, New York courts have demonstrated a reluctance to interpret circumstances to construe such an intent." *LaSalle Nat'l Bank v. Ernst & Young LLP*, 285 A.D.2d 101, 729 N.Y.S.2d 671, 676 (N.Y. App. Div. 1 Dep't 2001). Moreover, New York courts have drawn a distinction between "incidental beneficiaries" on the one hand—who are persons that may benefit from the agreement, but lack standing to enforce the terms of the agreement—and "intended beneficiaries" on the other hand—who the contracting parties clearly evinced an intent to permit enforcement of the contract. *See, e.g.*, *Fourth Ocean*, 66 N.Y.2d at 44-46, 485 N.E.2d at 211-13.

Here, as members of the public, the Plaintiffs are, at most, incidental beneficiaries of the Commercial Enterprises Covenant. The type of intent necessary for the Plaintiffs to be able to enforce the Commercial Enterprises Covenant is lacking. The covenant provides that the Property "shall be used for municipal uses and purposes and for recreational facilities for use by the People of Bayville" and that "no public amusements, concessions, vending, restaurants or other commercial enterprises shall be permitted [on the property]." The broad reference to "the People of Bayville" is in effect synonymous with a dedication for use by the public generally, and does nothing to suggest that the parties to the covenant had an "intent to permit enforcement" by each and every member of the public; an incidental benefit to members of the public is insufficient, standing alone, to vest each member of the public with a third-party right to enforce. *See, e.g., Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336, 451 N.E.2d 459, 469-70 (1983) (law firm whose business suffered as a result of a strike by transit workers was an incidental beneficiary of the workers' labor agreement with the city rather than

37

an intended beneficiary where the transit workers provided a service to the public at large rather than to the law firm in particular); *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 165, 159 N.E. 896, 897-98 (1928) (holding that a member of the public could not sue a company for breach of an agreement to provide water to the city for the benefit of the public, and commenting that "[a]n intention to assume an obligation of indefinite extension to every member of the public is seen to be the more improbable when we recall the crushing burden that the obligation would impose").  This is especially so here, where the Deed goes on to name a specific, limited class of persons "within a radius of one mile of the premises" that are intended to benefit from the subsequent ODO Covenant.

Construed together, the language of the covenants could not be clearer:  the land is to be preserved for public use, with a corresponding limitation on commercial enterprises, for the incidental benefit of the public generally.  Additionally, the land must also not be used in offensive, dangerous, or obnoxious way, for the intended benefit of the people who live within one mile of the Property.

Plaintiffs cannot attempt to bootstrap their status as intended beneficiaries of the ODO Covenant into a right to enforce the Commercial Enterprise covenant.  The one-mile limitation set out in the ODO Covenant is designed specifically to target the class of people who would be most affected by smoke, odors, fumes, and the like, which are specifically listed in the ODO Covenant, but bears no logical relationship to the preservation of the Property's recreational atmosphere for the public generally.  Thus, the one-mile limitation does not define the group for whose benefit the Commercial Enterprises Covenant is meant.

The Second Circuit, applying New York law, has found that where an agreement, like the Deed, includes multiple promises, a party may be an intended third-party beneficiary with

respect to some, but not all, of the promises made.  *See, e.g.*, *Consol. Edison, Inc. v. Ne. Utils.*, 426 F.3d 524, 529-30 (2d Cir. 2005) (holding that shareholders were intended beneficiaries of a failed merger agreement as to some of the promises made in that agreement, but not the promises on which they brought the action).  Therefore, the fact that the Plaintiffs might be intended third-party beneficiaries with respect to the ODO Covenant does not mean they are intended third-party beneficiaries of the Commercial Enterprises Covenant.  *See Nationwide Auction Co. v. Lynn*, No. 90 Civ. 7643 (AGS) (THK), 1996 WL 148489, at *11 (S.D.N.Y. April 1, 1996) ("The relevant inquiry focuses on the position of the third party with respect to a specific promise, not the contract as a whole.") (applying New York law).  And in this case, the Commercial Enterprises Covenant provides them with no special rights.

Because they cannot claim the status of third-party beneficiaries of the Commercial Enterprises Covenant, Plaintiffs must be able to show that they have suffered a particularized injury in fact that stems from the violation of that covenant.  However, the Plaintiffs' interest as members of the public is no different than that of any other member of the public.  *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[W]hen the asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.") (internal quotations omitted).  Notably, while it is not clear that even park-goers could allege a particularized harm, the Plaintiffs here have not even alleged harm as park-goers – only their interest as neighboring landowners.  In either case, they cannot claim any special protection by the Commercial Enterprises Covenant and have no standing to enforce its terms.

2.    **The Commercial Enterprises Covenant Does Not Prohibit The Wireless Defendants' Use Of The Property.**

As with the ODO Covenant, Plaintiffs' claim that the Wireless Defendants' transmission of RF violates the Commercial Enterprises Covenant fails as a matter of law.  That covenant provides that the property:

> shall be used for municipal uses and purposes and for recreational facilities for use by the People of Bayville, but no public amusements, concessions, vending, restaurants or other commercial enterprises shall be permitted thereon[.]

Plaintiffs contend that the Wireless Defendants are using the property to operate a "commercial enterprise" because the antennas on the Water Tower are used in the course of the Wireless Defendants' business of providing communication services to the public.  This is an impermissibly broad reading of the covenant.

Once again, the general principles regarding interpretation of restrictive covenants apply: the intention of the parties must be clear, the restriction must be reasonable and cannot offend public policy, and any ambiguity must be strictly construed against the party seeking to enforce the covenant.  *See Perrin II*, 70 A.D.3d at 836-38, 894 N.Y.S.2d at 133-34; *Farris*, 10 A.D.3d at 709.  As with the ODO Covenant, it is clear that the Commercial Enterprises Covenant does not specifically prohibit the Wireless Defendants' activities.  Thus, with respect to the transmission of RF, the covenant is ambiguous and must be interpreted according to the ordinary canons of construction, as well as strictly construed against the Plaintiffs.  A broad reading of the covenant, by contrast, "would impermissibly serve to extend, rather than limit, [the] restriction," and "would not constitute a 'reasonable' limitation on the free use of land."  *Perrin II*, 70 A.D.3d at 837-38, 894 N.Y.S.2d at 134.

In interpreting the provisions of the Commercial Enterprises Covenant, the doctrine of *ejusdem generis* applies with full force:  the prohibition on "commercial enterprises" follows a

list of particular activities – public amusements, concessions, vending, and restaurants – and must be interpreted in light of that list.  The common elements of those particular activities are (1) they are among the type of commercial activities that one might reasonably expect could take place in a park setting; and (2) they involve the actual transaction of business (buying and selling) on the premises.  The transmission of RF from the Wireless Defendants' antennas fits neither of those elements.  RF transmission is plainly not the kind of activity that comes to mind when one thinks of the types of commercial activities that are characteristic of a park setting – activities such as selling hot dogs and cotton candy or operating a carnival.  And the Wireless Defendants are certainly not transacting business in the park (as they would be if they operated kiosks selling phones, for example); rather, the antennas are simply a link to their physical networks, which are used to provide a service to subscribers.  Indeed, their presence in the park is much more like that of a utility—as electrical, telephone and gas lines might run through or under park land as part of a regional network to provide a particular service without being considered "commercial" activity that takes place in the park, the Wireless Defendants' antennas transmit RF signals to the Village and the surrounding area as part of their respective networks, with the actual transaction of business taking place elsewhere.  *See Cellular Tel. Co. v. Rosenberg*, 82 N.Y.2d 364, 372-73 604 N.Y.S.2d 895, 624 N.E.2d 990 (1993) (holding that a cellular telephone company is a public utility, an antenna is a public utility building, and that cellular service is a utility service provided to the public).

Given that the Commercial Enterprises Covenant does not prohibit the Wireless Defendants' activities on their face, that the Wireless Defendants are providing an important public utility service, and the fact that accepting Plaintiffs' view would require reading that covenant very broadly, which would effectively extend the restriction on land use, rather than

41

limit it, the Plaintiffs' claims fail to the extent that they rely on the Commercial Enterprises Covenant.

### C.    The Plaintiffs' Section 1983 Due Process Claim Fails As A Matter Of Law.

Plaintiffs' Section 1983 claim must be dismissed because it does not satisfy the pleading requirements of Fed. R. Civ. P. 8. *See, e.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). As the Supreme Court has held, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me allegation"—a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Plaintiffs' Section 1983 claim falls well short of these Rule 8 requirements. Their Complaint does not provide any facts about the process they allege was due, when it was supposedly denied, or how any such denial amounts to the deprivation of an interest protected by the Due Process Clause of the Fourteenth Amendment. They simply make the unadorned allegation that their due process rights were violated. Their Section 1983 claim does not contain sufficient factual allegations that, if accepted as true, would state a plausible claim for relief. *See Iqbal*, 129 S.Ct. at 1949.

In addition to this pleading deficiency, the Section 1983 claim should be dismissed for other, independent reasons. *First*, as discussed above, the Wireless Defendants' use of the Property is not prohibited by either restrictive covenant. Thus, the Plaintiffs' Section 1983 claim

fails because they have not been deprived of any interest protected from intrusion by the Due Process Clause.[37]

*Second*, assuming *arguendo* that the placement of RF antennas on the Water Tower does violate the restrictive covenants, the Plaintiffs' Section 1983 claim would still fail. While certain types of contracts can create rights protected by the Due Process Clause of the Fourteenth Amendment, federal law is clear that not every breach of a contract is actionable under Section 1983 as a violation of a constitutionally protected right.[38] The Deed is not one of those types of contracts.

The Second Circuit has determined that a claim based on the violation of a contractual right must give rise to a "legitimate claim of entitlement" before it can cross the line between an ordinary breach of contract claim and a constitutionally protected right. *See S & D Maint. Co., Inc. v. Goldin*, 844 F.2d 962, 965-66 (2d Cir. 1988); *see also Ganci v. New York City Transit Authority*, 420 F. Supp. 2d 190, 200-203 (S.D.N.Y. 2005) (discussing Second Circuit case law). While noting that "every enforceable contract right can be said to be an 'entitlement'" in some sense of the word, the Second Circuit has made clear that the concept of "entitlement" in the due process context is not so expansive, *S & D Maintenance*, 844 F.2d at 966, and this Circuit has "announced that property interests having contracts as their source are protectable by the Due

---

[37]    *See, e.g., Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").

[38]    *See, e.g., Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412 (7th Cir. 1988) ("The due process clauses . . . do not entitle a person to a federal remedy for every breach of contract[.]"); *San Bernardino Physicians' Servs. Med. Group v. County of San Bernardino*, 825 F.2d 1404, 1408 (9th Cir. 1987) ("It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim."); *Campbell v. City of Champaign*, 940 F.2d 1111, 1113 (7th Cir. 1991) ("Even if the plaintiff had a good claim for breach of contract against the City, it would not follow that she had a constitutional claim for a deprivation of property. Not every contract right is property.").

43

Process Clause *only* where 'protection is sought in connection with a state's revocation of a status.'" *Ganci*, 420 F. Supp. 2d at 201 (quoting *S & D Maint.*, 844 F.2d at 966).  "Status" in this context, is "an estate within the public sphere characterized by a quality of either extreme dependence [as] in the case of welfare benefits, or permanence [as] in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits." *S & D Maint.*, 844 F.2d at 966.

Under this demanding standard, any rights the Plaintiffs have under the Deed do not rise to the level of an interest protected by the Constitution.  Plaintiffs have not alleged—nor could they establish—that the claimed violation of the restricted covenants amounted to the state's revocation of a status that is tantamount to a revocation of "the property interests afforded constitutional status by the Supreme Court in the past, which have included (i) welfare benefits; (ii) social security benefits; and (iii) tenured status in public employment." *Ganci*, 420 F. Supp. 2d at 201 (citations omitted).  As third-party beneficiaries under the Deed (as to the ODO Covenant, but not the Commercial Enterprises Covenant), the most the Plaintiffs have alleged is the breach of an ordinary contract between the Village and the donee, which is not enough to maintain a Section 1983 claim.  *See S & D Maint.*, 844 F.2d at 966 (determining that the Due Process Clause can only be invoked "to protect something more than an ordinary contractual right"); *see also Walentas v. Lipper*, 862 F.2d 414, 418 (2d Cir. 1988) ("There is a distinction between the breach of an ordinary contract right and the deprivation of a protectible property interest within the meaning of the due process clause."); *id.* ("Courts have accordingly been wary of the consequences that might arise if section 1983 were expanded to encompass substantially all public contract rights.").

*Third*, even if the Plaintiffs could establish the violation of a constitutionally protected right, their Section 1983 claim would still need to be dismissed as to the Wireless Defendants. "Section 1983 addresses only those injuries caused by state actors or those acting under color of state law." *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). Thus, to state a claim under Section 1983 against the Wireless Defendants (which are private entities), "the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act"—that is, that they conspired with a state actor to deprive the plaintiffs of a constitutional right. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quotation marks omitted)). However, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id.* Here, the Plaintiffs have not even made a conclusory allegation that the Wireless Defendants conspired with the Village to deprive the Plaintiffs of any rights. Rather, their Complaint alleges that the Village violated the Plaintiffs' procedural due process rights because the Village did not allow the Plaintiffs a meaningful opportunity to review the "Village's behavior." Compl. ¶ 118. Putting aside the question of whether the Village provided the Plaintiffs with all the process they were due (which it appears the Village did), the Complaint does not allege that the Wireless Defendants deprived them of any process or played any role in the Village's decision to provide or not provide process to the Plaintiffs. Thus, Count II fails to state a claim against the Wireless Defendants. [39]

---

[39] Moreover, to the extent the Plaintiffs' procedural due process claim is predicated on the actions or conduct of the Wireless Defendants apart from their dealings with the Village, the claim would fail because the Wireless Defendants are not state actors as a matter of law. "In order to satisfy the state action requirement where the defendant is a private entity, the allegedly unconstitutional conduct must be 'fairly attributable' to the state." *Trancredi v. Met. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). "Conduct that is ostensibly private can be fairly attributed to the state *only if* there is 'such a close nexus between the State and the challenged

*Fourth*, in their Section 1983 claim, the Plaintiffs appear to complain of an injury arising out of the New York state court's decision in *Perrin I*. As such, the Complaint "invites this Court to 'review and reject[]' a state court judgment and [thus] runs afoul of the jurisdictional limits set by the United States Supreme Court under the *Rooker-Feldman* doctrine." *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 272 (E.D.N.Y. 2009).[40] The *Rooker-Feldman* doctrine prevents federal courts from exercising jurisdiction over cases brought by "state-court losers" challenging "state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005). This is precisely what the Plaintiffs are attempting here.

The Plaintiffs allege that "[b]ased on" *Perrin I*—which the Plaintiffs attached as "Exhibit B" to their Complaint—the Village "now posits that the federal Telecommunications Act of 1996 pre-empts enforcement of the restrictive covenants in the deed." Compl. ¶ 20. Continuing, the Plaintiffs state that they "seek a declaratory judgment, *declaring that, contrary to the 2007 [Perrin I] ruling* . . . the Telecommunications Act of 1996 does not pre-empt the enforcement of the plaintiffs' rights." Compl. ¶ 21 (emphasis added). Under these and other portions of the Complaint, *see, e.g.*, Compl. ¶¶ 73, 114, it is clear that the Plaintiffs are asking this Court to review and reject the state court's decision in *Perrin I* (which was adopted by the Appellate Division in *Perrin II*). Their interest is legally indistinguishable from that of the *Perrin*

---

action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (emphasis added) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). Here, the Wireless Defendants' operation of their commercial wireless telecommunications facilities cannot be fairly attributed to the Village. The fact that the Village allowed the Wireless Defendants to use the Water Tower does not alter this conclusion. *See, e.g.*, *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) (recognizing that government supervision or authorization is not enough to convert private action into state action).

[40] To the extent the Plaintiffs are also using Count I to bring a *de facto* appeal of *Perrin I*, this count would also be barred by the *Rooker-Feldman* doctrine.

plaintiffs, are clearly complaining of an injury caused by a state court judgment (namely, *Perrin I*), and have invited this Court to review and reject *Perrin I*'s holding, *see* Compl. ¶ 21, which was rendered before the Plaintiffs commenced this action.  Thus, their effort to have this court overturn *Perrin I* is barred by the *Rooker-Feldman* doctrine.

## CONCLUSION

For the foregoing reasons, the Wireless Defendants respectfully ask the Court to grant their motion and dismiss this action in its entirety and with prejudice.

Respectfully submitted,

| | |
|---|---|
| ____/s/   Alfred Amato_____ | ____/s/ Joshua Turner_____ |
| Alfred L. Amato (AA 2354) | Joshua S. Turner (*pro hac vice* JT 5778) |
| Richard S. Keenan (RK 2182) | Brendan T. Carr (*pro hac vice* BC 3689) |
| Amato & Associates, P.C. | Brendan J. Morrissey (*pro hac vice* BM 8800) |
| 666 Old Country Road, Suite 901 | Wiley Rein LLP |
| Garden City, New York 11530 | 1776 K Street, N.W. |
| (516) 227-6363 | Washington, DC 20006 |
| *Attorneys for Defendant New York SMSA* | (202) 719-4807 |
| *Limited Partnership d/b/a Verizon Wireless* | *Attorneys for Defendant New York SMSA* |
| | *Limited Partnership d/b/a Verizon Wireless* |

| | |
|---|---|
| ____/s/   John Coughlin_____ | ____/s/ A. Ross Pearlson_____ |
| John J. Coughlin (JC 2700) | A. Ross Pearlson (ARP 1277) |
| Ré, Nielsen, Huber & Coughlin, LLP | Sills Cummis Epstein & Gross, PC |
| 36 North New York Avenue | One Riverfront Plaza |
| Huntington, NY 11743 | Newark, NJ 07102 |
| (631) 425-4100 | (973) 643-7000 |
| *Attorney for Defendant Sprint Spectrum Realty* | *Attorney for T-Mobile Northeast LLC, the* |
| *Company, L.P. as successor-in-interest to* | *successor-in-interest to Omnipoint Facilities* |
| *Sprint Spectrum, L.P., and for Nextel of New* | *Network 2, LLC* |
| *York d/b/a  Nextel Communications* | |

May 24, 2010