# ATTACHMENT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

THOMAS HOY AND
ELKE HOY,

**AFFIDAVIT IN SUPPORT
OF MOTION TO DISMISS**

                                    Plaintiffs,

        -against-

                                                                10-CV-0094
                                                                (JFB) (AKT)
THE INCORPORATED
VILLAGE OF BAYVILLE,
SPRINT SPECTRUM REALTY COMPANY, L.P.,
as Successor in Interest to SPRINT SPECTRUM, L.P.,
NEXTEL OF NEW YORK d/b/a as NEXTEL
COMMUNICATIONS, OMNIPOINT FACILITIES
NETWORK 2, LLC, and NEW YORK SMSA LIMITED
PARTNERSHIP,

                                    Defendants.
-----------------------------------------------------------------------X

STATE OF NEW YORK              )
                               )ss.:
COUNTY OF WESTCHESTER          )

**MICHAEL BRENNAN,** being duly sworn, deposes and says:

1.      I am a Manager of Embedded Base, New York Metro with the defendant, New York SMSA Limited Partnership d/b/a Verizon Wireless ("Verizon Wireless"). I submit this Affidavit in Support of the Wireless Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12.

2.      As a Manager of Embedded Based with Verizon Wireless, I manage and oversee the operation and maintenance of Verizon Wireless' existing communication facilities and other infrastructure utilized by Verizon Wireless to service its wireless communications customers. Through my review of the documents and files maintained by Verizon Wireless in connection with this matter, I am fully familiar with the facts and circumstances set forth herein, except where stated upon information and belief.

## The Communication Facility

3.        Verizon Wireless currently operates a wireless communication facility (the
"Communication Facility") at the property located at 34 School Street, Bayville, New York and
identified as Section 29, Block 93, Lot 24 on the Land and Property Tax Map of Nassau County
(the "Property"). The Communication Facility consists of, *inter alia*, nine antennas mounted on
the Village of Bayville (the "Village") water tower (the "Water Tower"), which is located on the
Property, as well as related equipment located at the base of the Water Tower.

## Verizon Wireless Has Been Operating at the Property since 1992

4.        In or around March 1992, Verizon Wireless, in which New York Cellular
Geographic Services Area, Inc., a subsidiary of NYNEX Mobile Communications Company, is
the General Partner, entered into a lease (the "Lease") with the Village, which granted certain
lease space on the Water Tower and on the ground to install, operate and maintain the
Communication Facility. A copy of the Lease is annexed hereto as **Exhibit A.**

5.        Under the terms of the Lease, the Village leased Verizon Wireless, *inter alia*,
"space on the [Water Tower]…for the purpose of installing, maintaining and operating an
antenna array of up to fifteen antennas…" *See* **Exhibit A at ¶ 1.**

6.        On or around March 3, 1992, in accordance with the Lease, Verizon Wireless, on
behalf of the Village, obtained a building permit to commence construction at the Property. A
copy of the Building Permit dated March 3, 1992 is annexed hereto as **Exhibit B.**

7.        Thereafter, construction of the Communication Facility began.

8.        After construction of the Communication Facility began, on or about April 1,
1992, Verizon Wireless exercised its option under the Lease and the Lease term commenced.
The Lease is in effect until on or about April 2012 and can be renewed. *See* **Exhibit A at ¶¶ 2-3.**

2

9.    According to Verizon Wireless' records, the Communication Facility went "on air" in or around June 1992, and began to service Verizon Wireless customers within the Village area thereafter. A copy of the "on air" memorandum is annexed hereto as **Exhibit C.**

10.    After construction of the Communication Facility was completed, a Certificate of Compliance was issued to the Village on or about September 23, 1992. A copy of the Certificate of Compliance, dated September 23, 1992 is annexed hereto as **Exhibit D.**

11.    The Communication Facility has been in continuous operation ever since.

12.    In or around December 2009, Verizon Wireless performed routine general maintenance to the Communication Facility. In connection therewith, on or about December 11, 2009, Verizon Wireless, on behalf of the Village, obtained a building permit to replace the nine existing antennas (the "Original Antennas") with nine new antennas (the "New Antennas") at the same location on the Water Tower on the same antenna mounting structures.  A copy of the Building Permit dated December 11, 2009 is annexed hereto as **Exhibit E.**

13.    The Original Antennas and the New Antennas are substantially similar in size. The Original Antennas consisted of nine of the same type of antenna and measured approximately 47.2" x 5.1" x 9.6."  The New Antennas consist of three different types of antennas, which measure approximately: (i) 47.4" x 11.2" x 5.0;" (ii) 47.4 x 11.2" x 5.0;" and (iii) 48.8" x 6.1" x 3.2."  The total number of antennas (nine) has not changed.

14.    The routine general maintenance work has been completed; however a certificate of compliance has not been issued.

**WHEREFORE,** based on the foregoing, it is respectfully requested that this Court grant the Wireless Defendants' Motion to Dismiss this action.

Michael Brennan

Sworn before me this _21_
day of May 2010

Notary Public

Diana Marie Ruhe
Qualified In Suffolk County
No. 01RU6154197
My Commission Expires 10/23/20 _10_

# EXHIBIT A

NY- Bayville 2212

COPY

## OPTION AND LEASE AGREEMENT

This Agreement, made this 10th day of March , 1992, between the Village of Bayville, a municipal corporation having offices at 34 School Street, Bayville, New York 11709 (hereinafter referred to as Lessor), and New York SMSA Limited Partnership, a Delaware limited partnership in which New York Cellular Geographic Service Area, Inc., a subsidiary of NYNEX Mobile Communications Company, is the General Partner, having its principal offices at 2000 Corporate Drive, Orangeburg, New York 10962 (hereinafter referred to as Tenant).

### OPTION AGREEMENT

WHEREAS Lessor is the owner of certain real property and a water tank (hereinafter referred to as the Tower) constructed thereon and located at 34 School Street, Bayville, New York; and

WHEREAS Tenant desires to obtain an option to lease space on the Tower for the purpose of installing, maintaining and operating an antenna array of up to fifteen antennas and associated transmission lines and mounting apparatus, and to lease a portion of said real property consisting of approximately 400 square feet for the purpose of constructing, maintaining and operating a mobile communications facility, consisting of an equipment building of approximately 312 square feet to be constructed by Tenant on the premises, with a right of way for access thereto, an easement for utilities, and the right to install and maintain wires, cables and necessary connections between the equipment Tenant will install in the equipment building and the antenna array, all as substantially shown on Exhibits "A" and "B", attached hereto and made a part hereof.

NOW, THEREFORE, in consideration of the sum of Five Hundred Dollars ($500.00), hereinafter referred to as the Option Money, paid by Tenant to Lessor

upon execution of this Agreement by both parties, Lessor grants to Tenant the option to lease said Tower space and property, including a right of way for access thereto, seven days a week, twenty-four hours a day, for the installation and maintenance of its facility as herein described, for the term and in accordance with the Lease Agreement and its covenants and conditions set forth therein.

This option may be exercised at any time on or prior to September 30, 1992. The time during which the option may be exercised may be extended by Tenant for six months through March 31, 1993, by Tenant giving Lessor written notice of said extension not later than September 30, 1992, and the payment by Tenant to Lessor of an additional Five Hundred Dollars ($500.00) Option Money. If during the option period Lessor decides to sell the subject premises or the Tower or make alterations thereto, Lessor shall immediately notify Tenant in writing so that Tenant may take steps necessary to protect Tenant's interest in the property. Any sale or alteration, however, shall be subject and subordinate to the terms of this Agreement.

This Agreement may be sold, assigned or transferred at any time without the consent of Lessor to a partnership or corporation having a general partner or a controlling shareholder, respectively, which is a subsidiary or affiliate of NYNEX Mobile Communications Company. As to other parties, this Agreement may not be sold, assigned or transferred without the written consent of Lessor, such consent not to be unreasonably withheld or delayed.

Should Tenant fail to exercise its option within the time herein limited, all rights and privileges granted hereunder shall be deemed completely surrendered, this option terminated, and Lessor shall retain all Option Money, and no additional money shall be payable by either party to the other. Should Tenant exercise its option, no part of any Option Money shall be applied toward the rent.

Lessor shall grant Tenant, during the option period and with advance

-2-

notification, ingress and egress to the premises to conduct engineering tests and other activities of similar nature as Tenant may deem necessary, at the sole cost of Tenant.

Lessor agrees to execute a Memorandum of Agreement, to be prepared by Tenant, if requested by Tenant, which Memorandum of Agreement may be recorded by Tenant at Tenant's expense.

This Agreement and the performance hereunder shall be governed, interpreted, construed and regulated by the laws of the State of New York.

If Tenant exercises the option, notice of such exercise shall be given by Tenant to Lessor in writing by certified mail, return receipt requested. Notice shall be deemed effective on the date it is posted. On the first day of the month following the giving of such notice, the following Lease Agreement shall become effective.

## LEASE AGREEMENT

This Agreement, made between the Village of Bayville, a municipal corporation having offices at 34 School Street, Bayville, New York 11709 (hereinafter referred to as Lessor), and New York SMSA Limited Partnership, a Delaware limited partnership in which New York Cellular Geographic Service Area, Inc., a subsidiary of NYNEX Mobile Communications Company, is the General Partner, having its principal offices at 2000 Corporate Drive, Orangeburg, New York 10962 (hereinafter referred to as Tenant).

### WITNESSETH:

1. Lessor hereby leases to Tenant that certain parcel of property consisting of approximately 400 square feet located at premises designated 34 School Street, Bayville, New York, with a right of way for access *with prior notification to Lessor* thereto, seven days a week, twenty-four hours a day, all as substantially shown on Exhibit "A", attached hereto and made a part hereof.

-3-

Lessor also leases to Tenant space on the water tank (hereinafter referred to as the Tower) owned by Lessor for the purpose of installing, maintaining and operating an antenna array of up to fifteen antennas and associated transmission lines and mounting apparatus, an easement for utilities, and the right to install and maintain wires, cables and necessary connections between the equipment Tenant will install in the equipment building which Tenant shall construct on the premises and the antenna array, all as shown on Exhibit "B". Tenant shall have access at all times to the antennas for the purpose of maintaining same in good operational condition.

2. This Lease Agreement shall be for an initial term of five years, beginning on the first day of the month following Tenant's giving of notice to Lessor of its exercise of the option to lease these premises (hereinafter referred to as the Commencement Date) at an annual rental of Twenty-Two Thousand Dollars ($22,000.00), to be paid in equal monthly installments of One Thousand Eight Hundred Thirty-Three Dollars and Thirty-Three Cents ($1,833.33) on the first day of the month, in advance, to Lessor or to such other person, firm or place as Lessor may, from time to time, designate in writing at least thirty days in advance of any rental payment date. Rental for years two through five of the lease term shall be calculated in the following manner: Each year's rent shall be equal to the prior year's rent, increased by the percentage increase in the total Consumer Price Index during the preceding twelve month period. The term "Consumer Price Index" shall be that index as issued by the United States Department of Labor, Bureau of Labor Statistics, for All Urban Consumers for the New York-North Eastern New Jersey Region, 1982-1984 = 100. If said index shall be discontinued, there shall be substituted therefor the most nearly comparable index published by any other governmental agency, or if no such index shall be available, then a comparable index by a major bank or by a university or recognized financial

-4-

publication then to be selected by the parties, or, if the parties cannot agree upon a selection, by arbitration.

While Tenant intends to make each payment due hereunder on or before its due date, in the event Tenant fails to make a payment within ten days after its due date Lessor will give Tenant written notice of such nonpayment and Tenant will immediately make such payment. No action may be maintained by Lessor against Tenant for such nonpayment unless Tenant has failed to make payment within ten days after receipt of such written notice from Lessor.

3. Tenant shall have the option to extend this lease for three additional five year terms by giving the Lessor written notice of its intention to do so at least one month prior to the end of the then current lease term.

4. The annual rental for each year of each extension term shall be calculated consistent with the provision of Paragraph 2 hereof, it being the intention of the parties that the rental shall increase by the Consumer Price Index increase during the preceding lease year.

5. If at the end of the third five year extension term this Lease Agreement has not been terminated by either party by giving to the other written notice of an intention to terminate it at least one month prior to the end of such term, this Lease Agreement shall continue in force upon the same terms and conditions for a further term of one year and for annual terms thereafter until terminated by either party by giving to the other written notice of its intention to so terminate at least one month prior to the end of such term. Monthly rental for this period shall be equal to the rent paid for the last month of the third five year extension term.

6. Tenant intends to use the premises for the purpose of constructing, maintaining and operating a mobile communications facility and uses incidental thereto, consisting of a building approximately 312 square feet in size to be

constructed by Tenant and equipment to be installed by Tenant therein, up to fifteen antennas to be installed by Tenant on the Tower and all necessary connecting appurtenances, all as aforesaid. Tenant may install electrical, air conditioning, sprinkler and other systems and meters as may be necessary to maintain its equipment, and all costs of services for same shall be borne by Tenant. All improvements shall be at Tenant's expense. Tenant will maintain the property in a reasonable condition.

7.    Lessor acknowledges that Tenant's ability to use the premises is contingent upon its obtaining, either before or after the Commencement Date of this Lease Agreement, all of the certificates, permits, licenses and other approvals that may be required by any federal, state and local authorities. Lessor shall cooperate with Tenant in its efforts to obtain such approvals and shall take no action which would adversely affect the status of the premises with respect to the proposed use thereof by Tenant. In the event that Tenant determines, in its sole judgment, that it will be unable to obtain all necessary governmental approvals, or if any of such applications should be rejected or any certificate, permit, license or approval issued to Tenant is subsequently cancelled, expires, lapses or is otherwise withdrawn or terminated by governmental authority so that Tenant, in its exercise of reasonable judgment determines that it will be unable to use the premises for its intended purposes, Tenant shall have the right to terminate this Lease Agreement. Notice of Tenant's exercise of its right to terminate shall be given to Lessor in writing by certified mail, return receipt requested, and shall be effective upon mailing of such notice by Tenant (the Termination Date). All rentals paid to the Termination Date shall be retained by Lessor, but all rentals allocable on a pro rata basis to the period subsequent to the Termination Date shall be refunded to Tenant. Upon such termination this Lease Agreement shall become null and void and the parties shall

-6-

have no further obligation, including the payment of money, to each other, except for Tenant's obligation pursuant to Paragraph 11 hereof.

8. In the event Tenant's transmissions and equipment create interference with the present frequency of any other tenants now on the premises, Tenant agrees, upon notification of such interference, to promptly remedy same at its cost and expense and, if necessary, to cease operations (except for tests) until such remedy is accomplished. It is recognized that interference can arise from many sources but Tenant shall be responsible only for interference created by its transmissions and equipment. Lessor agrees to protect Tenant's operations from interference by other tenants' transmissions and equipment to the extent of including a similar interference clause in Lessor's future lease agreements. Lessor agrees that it will not rent or grant space to any other tenant which will interfere with Tenant's operations, and represents that no existing lease or other arrangement now or hereafter interferes or will interfere with Tenant's operations, except with regard to existing police or emergency transmission or reception equipment which shall take priority over Tenant's radio transmissions or reception in the event of any interference.

9. Tenant shall indemnify and hold Lessor harmless against any claim of liability or loss for personal injury or property damage resulting from or arising out of the use and occupancy of the premises by Tenant, its servants or agents, excepting, however, such claims or damages as may be due to or caused by the acts of Lessor, its employees or agents.

10. Tenant shall provide Lessor with a certificate of insurance issued by a reputable insurance company licensed to do business in the State of New York indicating comprehensive general liability insurance in the amount of $1 million for bodily injury and $1 million for property damage, and in which Lessor is named as an additional insured with respect to the leased premises. Tenant will provide

Lessor with a renewal certificate when requested by Lessor.

11.  Tenant, upon termination of this Lease Agreement, shall, within a reasonable period, remove its personal property, equipment, antennas, connections and other fixtures and restore the premises to its original condition, reasonable wear and tear excepted.

12.  Should Lessor, at any time during the term of this Lease Agreement, decide to sell the leased premises or the Tower or make alterations thereto which may adversely affect Tenant's operation of its mobile communications facility, Lessor shall immediately notify Tenant in writing.  Any sale or alteration, however, shall be subject and subordinate to the terms of this Lease Agreement and Tenant's rights hereunder, and Lessor shall do nothing which would interfere with the use of the premises, including the antennas, by Tenant in connection with its mobile communications operations.  Tenant understands that the water tank may require maintenance, whether or not pursuant to any applicable ordinance, statute, rule or governmental regulation, which would affect Tenant's use of the premises during the period of maintenance.

Tenant agrees to cooperate with Lessor, as reasonably necessary and at Tenant's cost as respects Tenant's equipment, in order to facilitate said maintenance.

13.  Lessor covenants that Tenant, on paying the rent and performing the covenants, shall peaceably and quietly have, hold and enjoy the leased premises.

14.  Lessor warrants and covenants that Lessor is seized of good and sufficient title and interest to the subject premises and the Tower and has full authority to enter into and execute this Lease Agreement, and that there are no liens, judgments or impediments of title which would adversely affect this Lease Agreement.  Any breach of these warranties and covenants which preclude Tenant's use of said premises and the Tower for its intended purpose shall entitle Tenant

-8-

to terminate this Lease Agreement and receive back all monies paid hereunder.

15.  In the event Tenant fails to comply with any of the provisions of this Lease Agreement or to perform any of its obligations hereunder, including the payment of rent, Lessor shall give Tenant written notice of such breach or non-payment of rent, and Tenant shall have ten days after receipt of such written notice from Lessor to cure such default. No action may be maintained by Lessor against Tenant for such breach unless Tenant has failed to cure same within ten days after receipt of such written notice.

16.  This Lease Agreement contains all the agreements, promises and understandings between Lessor and Tenant, and no oral agreements, promises or understandings shall be binding upon either Lessor or Tenant in any dispute, controversy or proceeding at law. Any addition, variation or modification of this Lease Agreement shall be void and ineffective unless made in a writing signed by the parties.

17.  This Lease Agreement and the performance thereunder shall be governed, interpreted, construed and regulated by the laws of the State of New York.

18.  This Lease Agreement may be sold, assigned or transferred at any time without the consent of Lessor to a partnership or corporation having a general partner or a controlling shareholder, respectively, which is a subsidiary or affiliate of NYNEX Mobile Communications Company. As to other parties, this Lease Agreement may not be sold, assigned or transferred without the written consent of Lessor, such consent not to be unreasonably withheld or delayed.

19.  All notices hereunder must be in writing and shall be deemed validly given if sent by certified mail, return receipt requested, addressed as follows (or any other address that the party to be notified may have designated to the sender by like notice):

Tenant:    New York SMSA Limited Partnership
           2000 Corporate Drive
           Orangeburg, New York 10962
           Attn:  Manager - Real Estate


Copy to:   Joseph A. Hallock, Esq.
           Hallock & Amann
           175 Fairfield Avenue, Suite 1A
           West Caldwell, New Jersey 07006


Lessor:    Village of Bayville
           34 School Street
           Bayville, New York 11709


20. This Lease Agreement shall inure to the benefit of and bind the heirs, personal representatives, successors and assigns of the parties hereto.

21. At Lessor's option, this Lease Agreement shall be subordinated to any future mortgage made by Lessor which from time to time may encumber all or part of Lessor's property of which the leased premises are a part; provided, however, every such mortgage shall recognize the validity of this Lease Agreement in the event of a foreclosure of Lessor's interest and also Tenant's right to remain in occupancy of and have access to the leased premises as long as Tenant is not in default under this Lease Agreement. Tenant shall execute whatever instruments may reasonably be required to evidence this subordination provision.

In the event the leased premises are presently encumbered by a mortgage, Lessor will obtain and furnish to Tenant a non-disturbance instrument for each such mortgage in recordable form.

22. Lessor agrees to execute a Memorandum of Agreement to be prepared by Tenant, if requested by Tenant, which Memorandum of Agreement may be recorded by Tenant at Tenant's expense.

IN WITNESS WHEREOF, the parties hereto have set their hands and affixed

-10-

their respective seals the day and year first above written.

Witness:

_Jeanne Burd_

Lessor:  Village of Bayville

By: _Edward Esposito_
    Edward Esposito, Mayor

Date: _March 10_ , 1992


Witness:

_Kathleen Foster_

Tenant:  New York SMSA Limited Partnership

By: _Noreen A. Conlon_
    Noreen A. Conlon, Vice President
    New York Cellular Geographic
    Service Area, Inc.,
    General Partner

Date: _3/12_ , 1992

## ACKNOWLEDGEMENT

STATE OF NEW YORK     :
                      : SS
COUNTY OF *NASSAU*    :


On the *10th* day of *MARCH* , 1992, before me came Edward Esposito, to me known, whom being duly sworn, did acknowledge that he is Mayor of the Village of Bayville, described in and which executed the foregoing Instrument; that the seal of the corporation is affixed hereto; and that this document was signed and made by the corporation as its voluntary act and deed by virtue of authority from its Board of Directors.

*Joseph C.R. Del Giacco*

JOSEPH C. R. DEL GIACCO
Notary Public, State of New York
No. 4612402
Qualified in Nassau County
Commission Expires March-30, 19..*93*
*June*


STATE OF NEW YORK     :
                      : SS
COUNTY OF ROCKLAND    :


On the *13th* day of *March* , 1992, before me came Noreen A. Conlon, to me known, whom being duly sworn, did acknowledge that she is Vice President of New York Cellular Geographic Service Area, Inc., General Partner, described in and which executed the foregoing Instrument; that the seal of the corporation is affixed hereto; and that this document was signed and made by the corporation as its voluntary act and deed by virtue of authority from its Board of Directors.

*Ruth O'Brien*

RUTH O'BRIEN
Notary Public, State of New York
No. 4981554
Qualified in Rockland County
Commission Expires May 13, 19 *93*

-12-





1 DB 809SR
2 BCD 8007
Setup Antennas

Four LPD 7905/4-N
per sector

approx. 90 feet

| Site Location | NYNEX Mobile Communications Co. | Engineer: L. Kessler |
|---|---|---|
| Bayville Water Tank School Street | *EXHIBIT "B"* | Revision:  1 |
| | | Date:  1/14/92 |



14 feet minimum horizontal
separation between antennas
(typical)

Directional Antennas
342° East of True North

← BCD 8007 omni RX

BCD 8007 omni RX →

DB 809SR Transmit
Due South

14' typical

Directional Antennas
222° East of True North

Directional Antennas
102° East of True North

| Site Location | NYNEX Mobile Communications Co. | Engineer: L. Kessler |
|---|---|---|
| Bayville Water Tank School Street | | Revision: 1 |
| | *EXHIBIT "B"* | Date: 1/14/92 |

# EXHIBIT B

# INCORPORATED VILLAGE OF BAYVILLE

### Nassau County, New York

## BUILDING PERMIT UNDER ZONING ORDINANCE AND BUILDING CODE

This permit is issued subject to the provisions of Section 57 of the Workmen's Compensation Law.

Block  93    Lot   34    Section   29    Zone   F

**No.** # 5121       **Date**       March 3, 1992

Permission is hereby granted to:

Inc. Village of Bayville
34 School Street                            , Owner
Bayville, New York   11709

                     NYNEX Mobil Communication  , Contractor
                     60 Herricks Road
**To Erect**         Mineola, New York   11501

     Place telephone equipment in pre-fab building at base of
     Bayville Water Tower and place antenna on water tower.
**Located at**

           Bayville Water Tower

pursuant to application, and plans approved by the Building Inspector.

   Cost of Construction or Alteration  $ 1,000.00

                  Permit Fee       $  45.00

        INCORPORATED VILLAGE OF BAYVILLE

                              BUILDING INSPECTOR

*Any change in plans during construction of this building should be immediately
reported to the Building Inspector and his approval secured. Otherwise Certificate
of Occupancy may not be issued.
NOTE: The holder of this permit agrees to comply with all provisions of the Building
and Zoning Ordinances and with the provisions of all laws and rules relating to the
construction of said buildings, additions or alterations, whether herein described or
not. Any violation of the provisions of said Ordinances or this permit shall render
the offender liable for the penalties provided therefor, and in addition thereto may
result in the immediate revocation of the permit.

THIS PERMIT MUST BE POSTED IN A CONSPICUOUS LOCATION.

# EXHIBIT C

Messages for A T T VINCENT RABBENE                                    Page 1
Tuesday, June 23, 1992 9:40 AM

Date: Mon, Jun 22, 1992 at 2:53 PM
From: TERRY SKULA
Re:   Bayville N.Y.

*   *   *

the Bayville cell site (#207)
went on the air at 15:24.

# EXHIBIT D

**CERTIFICATE OF COMPLIANCE**
**Building Department**
**Incorporated Village of Bayville**
**Bayville, New York 11709**

SEC. 29 BLK. 93 LOT(S) 34 ZONE "F"

CERTIFICATE NO. 5154 DATE Sept. 23, 1992

CERTIFICATE ISSUED TO Inc. Village of Bayville

Bayville Water Tower

USE Pre-fab building with telephone equipment

at base of Water tower and antenna on top of

tower for mobile communication.

LOCATION School Street & Godfrey Ave.

Bayville, New York 11709

UNDERWRITERS NO. N238229 June 10, 1992

PERMIT NO. 5121 DATE March 3, 1992

_____
~~MAYOR~~ BUILDING INSPECTOR

*Prime Contractor listed as: NYNEX Mobile Communication*
*on Building Permit # 5121.    60 Herricks Road*
*Mineola, New York 11501*

# EXHIBIT E

# INCORPORATED VILLAGE OF BAYVILLE

### Nassau County, New York

## BUILDING PERMIT UNDER ZONING ORDINANCE AND BUILDING CODE

This permit is issued subject to the provisions of Section 57 of the Workmen's Compensation Law.

**Block** 93    **Lot** 34    **Section** 29    **Zone**

**№** 7295    **Date** December 11 2009

Permission is hereby granted to:

Inc. Village of Bayville
34 School Street                          , **Owner**
Bayville, New York 11709

N.W. Management Inc.                      , **Contractor**
4050 Austin Blvd.
**To Erect** Island Park New York 11558

Replace nine existing antennas with new antennas at the existing utility wireless communication site /water tower facility.
**Located at** (Verizon Wireless)

Water Tower School Street

pursuant to application, and plans approved by the Building Inspector.

**Cost of Construction or Alteration** $ 10,500.00 ..............

**Permit Fee** $ 180.00 ................

## INCORPORATED VILLAGE OF BAYVILLE

.............................................................
BUILDING INSPECTOR

*Any change in plans during construction of this building should be immediately reported to the Building Inspector and his approval secured. Otherwise Certificate of Occupancy may not be issued.
NOTE: The holder of this permit agrees to comply with all provisions of the Building and Zoning Ordinances and with the provisions of all laws and rules relating to the construction of said buildings, additions or alterations, whether herein described or not. Any violation of the provisions of said Ordinances or this permit shall render the offender liable for the penalties provided therefor, and in addition thereto may result in the immediate revocation of the permit.

THIS PERMIT MUST BE POSTED IN A CONSPICUOUS LOCATION.