# ATTACHMENT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THOMAS HOY and ELKE HOY,

                             Plaintiff,

           -against-

THE INCORPORATED VILLAGE OF BAYVILLE,
SPRINT SPECTRUM REALTY COMPANY, L.P., as
Successor in Interest to SPRINT SPECTRUM, L.P.,
NEXTEL OF NEW YORK d/b/a NEXTEL
COMMUNICATIONS, OMNIPOINT FACILITIES
NETWORK 2, LLC, and NEW YORK SMSA LIMITED
PARTNERSHIP,

                           Defendants.
------------------------------------------------------------------------X

Case No.:
10-CV-0094 (JFB) (AKT)

**AFFIDAVIT IN SUPPORT**
**OF MOTION TO DISMISS**

STATE OF NEW JERSEY      )
                          ) ss.:
COUNTY OF BERGEN         )

    **MICHAEL AHL**, being duly sworn, deposes and says:

1. I am employed by Ericsson Services Inc., which is an authorized agent for Sprint/United Management Company, a company authorized to act on behalf of both Sprint Spectrum L.P. ("Sprint") and Nextel of New York, Inc. ("Nextel"), as well as the parties named in the instant complaint, Sprint Spectrum Realty Company, L.P., as successor-in-interest to Sprint Spectrum, L.P., and Nextel of New York d/b/a Nextel.

2. I have been employed by Ericsson Services Inc. since September 21, 2009. Prior thereto, from September, 2000 until September 21, 2009, I was a Real Estate Manager for Sprint/ United Management Company, a company authorized to act on behalf of both Sprint and Nextel. Based on my work duties and comprehensive review of the documents

maintained by Sprint and Nextel concerning this matter, I am fully familiar with the facts and circumstances of this case, except where stated upon information and belief.

3.  Commencing in September, 2000, I have managed the wireless telecommunications network for both Sprint and Nextel throughout much of the greater New York metropolitan area, including Nassau County.   The scope of my management duties includes oversight of the leasing, construction, and maintenance of individual wireless facilities.

4.  The property at issue in this litigation, known as the Bayville Water Tank, is located near the northwest corner of Godfrey Avenue and School Street, Bayville, New York, and identified on the Nassau County Tax Map as Section 29, Block 93, Lot 34 ("Premises").

5.  Sprint and Nextel each currently operate separate wireless telecommunications facilities at the Premises.  Each facility has antennas attached to the water tank.  These facilities were established at the Premises before the 2005 merger of Sprint and Nextel.

6.  At all times relevant to this action, both Sprint and Nextel were licensed by the Federal Communications Commission.

Sprint's Facilities:

7.  Sprint entered into a License Agreement with the Village of Bayville ("Village") to lease space for Sprint's wireless telecommunications facility on or about May 9, 2003. The License Agreement was amended by First Amendment to License Agreement, dated December 12, 2006.   Copies of the License Agreement and First Amendment to License Agreement are attached hereto as Exhibit "A."

8.  On or about July 31, 2003, Sprint obtained a Building Permit, issued by the Village, to construct its wireless telecommunications facility at the Premises.  A copy of the Building Permit is attached hereto as Exhibit "B."

9.  Construction of Sprint's facility at the Premises began soon after the Building Permit was issued and according to Sprint's records went "on air" on December 20, 2003.

10. On information and belief, Sprint's wireless telecommunications facility at the Premises has been in continuous operation since it went on air.

Nextel's facilities:

11. Nextel entered into a License Agreement with the Village to lease space for Nextel's wireless telecommunications facility on or about May 6, 2004.   A copy of the License Agreement is attached hereto as Exhibit "C."

12. On or about October 21, 2004, Nextel obtained a Building Permit, issued by the Village, to construct its wireless telecommunications facility at the Premises.  A copy of the Building Permit is attached hereto as Exhibit "D."

13. Construction of Nextel's facility at the Premises began soon after the Building Permit was issued and according to Nextel's records went "on air" on January 3, 2005.

14. On information and belief, Nextel's wireless telecommunications facility at the Premises has been in continuous operation since it went on air.

15. Prior to entering into the License Agreement with the Village, both Sprint and Nextel investigated alternative properties in the vicinity and determined that the water tank was the optimal location to construct its facility based on the water tank's location, significant height and other zoning considerations.

16. On information and belief, alternative properties with existing structures of such height were not available in the vicinity. Loss of this site would disrupt communications in the vicinity and would adversely affect neighboring sites in the network that work in concert with the facility at the Premises.

**WHEREFORE**, based on the foregoing, on behalf of Sprint and Nextel, I respectfully request that this Court grant the Defendants' Motion to Dismiss, together with such other and further relief as this Court deems fair and proper.

_____
**MICHAEL AHL**

Sworn before me this 28 TH
Day of ____APRIL____, 2010

_____
Notary Public

SUSAN SAHAGIAN MALZ
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 6/4/2014

# EXHIBIT A

# LICENSE AGREEMENT

THIS LICENSE, made the     day of April     , 2003, by and between the VILLAGE OF BAYVILLE, a municipal corporation having an office at 34 School Street, Bayville, New York, hereinafter referred to as "Licensor", and,  SPRINT SPECTRUM, L.P. a limited partnership, having an office at 1 International Boulevard, Suite 800, Mahwah, New Jersey 07495, hereinafter referred to as "Licensee" or "SPRINT SPECTRUM, L.P.".

WHEREAS, Licensor is the owner of certain real property described in Exhibit "1" annexed hereto; and

WHEREAS, SPRINT SPECTRUM, L.P. desires to use a portion of said property and the elevated water tank (hereafter referred to as the "Licensed Property") for installation, maintenance and operation of a wireless communications facility and other associated equipment in connection with its providing of communications services;

NOW, THEREFORE, in consideration of all the foregoing, and in further consideration of the premises, obligations, terms and conditions hereinafter set forth and recited, both parties do hereby agree as follows:

1. PREMISES: Licensor grants to Licensee, the non- exclusive License to use that portion of the Property located at the north west corner of School House Road and Godfrey Avenue, Bayville, New York, also known as Section 29, Block 93, Lot 34, as specifically set forth and described in Exhibits LE-1, LE-2, and LE-3 attached hereto and referred to as the "Licensed Property".

1

2. <u>ACCESS TO PREMISES:</u> Licensor grants the right of access to the Licensed Property. It is expressly understood and agreed, and Licensor acknowledges, that is entering into this License in reliance on the representation that Licensee, its officers, employees, agents, invitee, licensees, and representatives shall have the right of access to the licensed premises through the real property of which the Licensed Property forms a part as specified below, during regular business hours. Any access to the Licensed Property other than during regular business hours of the Licensor shall be for emergency repair purposes only, unless prior agreement in writing from the Licensor is obtained by Licensee. Licensee agrees to mitigate noise during all repair operations performed at the Licensed Property.

3. <u>USE OF PREMISES:</u> (a) The Licensed Property is to be used for the installation, operation and maintenance of a wireless communications facility along with associated other electronic equipment which may be passive and/or active and no other purpose. Licensee shall have the right to install up to nine (9) antennas, fencing, equipment shelter as shown in a site plan attached hereto as Exhibit 3. The Initialing of Exhibit "LE-3" shall be deemed as Licensor's approval of antenna configuration and equipment placement. *Other similar equipment shall be permitted by Licensor, providing such equipment placed by other licensees does not interfere with Licensee's transmissions.*

All Licensee's equipment or other property attached to or otherwise brought onto the Licensed Property by Licensee shall at all times be personal property of Licensee and, at Licensee's option, may be removed by Licensee at any time during the term or within a reasonable time after expiration of this License. Any damage caused by the Licensee as a result of the removal by of its equipment shall be repaired by the Licensee to the satisfaction of the Licensor. *Licensee agrees to cooperate with the Licensor during water tank repainting by Licensor. Said cooperation shall include the repositioning of Licensee's equipment on Licensor's Property or temporary installation of a COW*

2

at a location mutually agreeable by the parties to accommodate the repainting process. Licensor shall give Licensee 30 days written notice if Licensee's equipment requires repositioning. Upon the completion

of the repair or repainting process, the Licensee shall return to its previous position on the Licensed Property.

        (b)    Licensee shall have the right to use whatever appropriate means it deems appropriate to install its equipment, subject to the prior approval in writing of the engineer of the Licensor and consistent with the operation of the business of the Licensor. Licensor acknowledges that in order for Licensee to install and operate its equipment, it will require the right to install and maintain transmission lines from the equipment shelter to the antenna location, install and maintain power from the main feed to the equipment shelter, and install and maintain telephone lines from the main telephone entry point to the equipment shelter. Licensee shall have the right, subject to the approval of the Licensor, at any time during the term hereof, at its own expense, to erect, construct or make any improvements, alterations or additions upon or to the Licensed Property required by Licensee's use, including, but not limited to, the right of Licensee to enclose its equipment with fencing. Except as provided elsewhere in this agreement, any such construction shall be subject to the building Code of the Village of Bayville and the approval of the engineer of the Licensor. The Licensee agrees that the reasonable cost of the review of the site plan and construction plans, as well as construction supervision of Licensee's construction by the Village engineer, shall be paid for by the Licensee prior to plan approval and construction. The Licensor agrees to act upon any construction request for approval within sixty days from the receipt of said request sent by certified mail, return receipt requested, to the office of the Licensor as provided in paragraph 16 of this agreement. The Licensor shall have the right to select the exterior finish and color of Licensee's equipment structure. Licensee shall provide asphalt pavement to its equipment shelter at 's expense.

3

The provisions of this subparagraph (b) shall not be construed to permit more than nine (9) antennas or more than one equipment shelter.

      (c)  Licensee shall have the right at any time following the full execution of this License, at reasonable times during business hours, to enter upon the premises for the purpose of making appropriate engineering and boundary surveys, inspections and test borings and other tests to determine the appropriateness of the Premises for the installation of Licensee's equipment.  Due to increased security concerns, all entry onto the Licensor's Property and the conduct of any of the above mentioned tests or construction shall be required to receive the express prior permission of the Licensor.

      Upon Licensee's request, at the expense of the Licensee, Licensor shall provide to the Licensee, to the extent available, copies of all structural drawings, surveys, of equipment and/or other information reasonably required in connection with Licensee's proposed installation of its equipment at the Licensed Property.  Licensor shall cooperate with Licensee and will join in any applications for governmental licenses, permits and approvals required of or deemed necessary by Licensee for its use of the Licensed Property, including, without limitation, applications for business licenses and permits and applications for zoning variances, zoning ordinances amendments and special use permits, provided that Licensee shall reimburse and hold Licensor harmless for any costs, fees or liability actually incurred by Licensor in connection with such applications and approvals.  Licensor agrees to assist the Licensee in any application for zoning approvals that may be made to the Licensor pertaining to the Licensed Property.

      4.  INTERFERENCE: (a) Licensor agrees to eliminate, without cost to the Licensee, any interference to Licensee's operation caused by Licensor or anyone holding under Licensor in a timely manner after oral and written notice thereof.  If such interference cannot be eliminated within a reasonable length of time, Licensee's sole remedy shall be the right to terminate this License,

4

remove its equipment, and restore the Premises to its original condition.

(b)   Licensee agrees not to interfere with radio transmission or reception of other communications equipment properly located, prior to Licensee's installation, on the premises owned by Licensor or other licensees of which the Licensed Property forms a part. If Licensee should cause such measurable interference, Licensee shall eliminate it in a timely manner.

(c) Licensor agrees not to erect any structure within or on the Property owned by the Licensor of which the Licensed Property forms a part, or permit the future installation of equipment which will result in technical interference problems with Licensee's then existing equipment.

(d) The Licensee shall have the obligation to take all necessary steps to protect Licensee's equipment during tank maintenance activities of the Licensor.

5. TERM: The initial term of this License shall be for ten (10) years commencing on the Commencement Date as defined in paragraph 6 below. As used herein, "term" refers to the initial term and any renewal term as herein provided. If, at any time during this License, the Licensed Property becomes unsuitable for a wireless communication facility due to: (a) governmental regulations, or (b) interference with Licensee's operation that cannot be resolved; then in either event, Licensee may terminate this License by giving notice to Licensor which shall be effective ninety (90) days after it is mailed by Licensee. None of the above items of suitably shall be construed to permit termination of this License on account of a less expensive site than the Licensed Property becomes available to the Licensee. If this License is terminated by Licensee pursuant to (b) above, the Licensee shall not be required to pay the License fee during the 90 cancellation period.

6. LICENSE FEE: (a)  For the first year of this License, Licensee shall pay Licensor an annual fee of $45,600.00, payable in equal monthly installments of the sum of $3,800.00, in advance on the first day of each month, commencing on the start of construction on the Licensed Property, but no later than 30 days after the issuance of a building permit for the construction of the

5

licensed facilities (hereinafter referred to as the "Commencement Date"). If the term commences on any day other than the first day of a calendar month, a pro rata fraction of a full month's fee shall be paid for the partial month at the commencement of said term. If the term commences on any day other than the first day of a calendar month, a pro rata fraction of a full month's fee shall be paid for the partial month at the commencement of said term.

(b) ESCALATION: On the annual anniversary date of each successive year of this License and any option to extend, the annual license fee shall increase at the rate of three percent (3%) per annum.

(c) TAX ADJUSTMENT: The Licensee agrees that in the event a tax of any kind is imposed by any governmental entity as a direct result of a) the income received by the Licensor under this License, b) the use of the Licensed Property by the Licensee, or c) the installation of Licensee's equipment and structure, the Licensee shall pay such tax upon presentation of the appropriate documentation of said tax. Licensee shall have the right to contest the imposition of tax payable by the Licensor as a result of this License. The Licensor will cooperate with the Licensee in the event the Licensee elects to contest any such tax. The Licensor shall provide notice of such property tax assessment to the Licensee in a timely manner.

7. RIGHT TO RENEW: Licensee shall have the option of renewing this License for three (3) successive periods of five (5) years each, upon the same terms and conditions which were in effect during the initial term. Licensee, in its sole discretion, may elect to exercise said renewal option(s) and the Licensor may not terminate this license should Licensee elect to exercise said renewal option(s). Licencee shall exercise its option by giving Licensor written notice of its intention to exercise its option to renew at least sixty (60) days prior to the expiration of the initial term hereof, and if said renewal is for the successive period, Licensee shall give to Licensor a like written notice at least sixty (60) days prior to the expiration of the then current period, of its intention to renew this

6

License for and during the next succeeding period.

8. <u>LIABILITY INSURANCE:</u> Licensee, and any agent or subcontractor entering the Premises on behalf of Licensee, shall provide, during the term of this License, the following insurance with the customary coverage and exclusions:

Bodily Injury - $2,000,000 for all any one injury sustained by any one person in any one occurrence.

$5,000,000 for damages as a result of any one accident.

Licensee shall name the Village of Bayville as an additional insured on Licensees Insurance policy. The Licensee shall provide Licensor with an <u>endorsement</u> to said effect and provide Licensor with a copy of the coverage page of said policy. The Licensor and Licensee release each other and their respective principals, officials, employees, representatives and agents, from any claims for damage to any person or the premises or to Licensee Facilities thereon caused by, or that result from, risks insured against under any insurance policies carried by the parties and in force at the time of any such damage. The Licensor shall provide proof of insurance to the Licensee at the Commencement Date of this License.

Licensor and Licensee each indemnifies and agrees to defend the other against, and hold the other harmless from any and all costs, including reasonable attorney's fees and claim of liability or loss which may arise out of the ownership, use and occupancy of the Licenced Property by the indemnifying party. This indemnity does not apply to any claims arising from the negligence or intentional misconduct of the indemnified party. The indemnity obligations under this section shall survive the termination of this License.

9. <u>CONDITION OF LICENSED PROPERTY:</u> Upon termination or expiration of this License, Licensee shall surrender the Licensed Property to Licensor in good condition except for reasonable wear and tear.

10. <u>WARRANTY OF TITLE AND RIGHT TO LICENSE:</u>

(a) Licensee represents that it has examined the Licensed Property and any zoning requirements covering the Licensee's use of the Licensed Property. Licensor makes no representations with respect to same, other than it knows of no reason why the Licensee's activities or structures would be prohibited.

(b) In the event that the activities of the Licensee as permitted in this License are determined to be beyond the authority of the Licensor to permit, or are determined to be incompatible with the operation of a public water supply well site by the County of Nassau Board of Health or other agency having jurisdiction over the Licensor, then in that event, the Licensor shall be entitled to cancel this License and upon 90 days written notice, cause the Licensee to remove any equipment on the Licensed Property without any liability to the Licensor. The Licensee shall have the right to defend, on behalf of itself and the Licensor, the rights granted in this License before any forum of competent jurisdiction.

11. <u>NONEXCLUSIVE USE:</u> Licensor agrees that, from the date of execution of this License, it notify Licensee of Licensor's intent to grant any other party any rights, or further right of access to the Licensed Property. Licensee agrees that the Licensor has the right to grant similar licenses to other parties, provided they do not interfere with Licensee's use.

12. <u>LICENSEE'S RIGHT TO MAINTAIN SECURITY:</u> Licensee, at its cost and expense, agrees to construct and maintain a fence with perma-hedge and/or landscaping around any equipment structure housing Licensee's equipment, or undertake any other appropriate means to restrict access thereto. Said fence shall be of the same type and quality as existing fencing and shall be installed in a concrete mowing strip. The Licensor shall have the right to approve all plans for the installation of fencing, paving, shrubbery, and any other modification made to the Licensed Property.

13. <u>MAINTENANCE, REPAIRS, AND UTILITIES:</u> Licensee shall perform all

8

repairs necessary to keep its improvements on the Licensed Property and easements or other access to the property in good condition and repair. Licensor shall maintain the Property, other than Licensee's improvements, in good condition and repair. Licensee, at its sole expense, shall arrange for a separately metered electrical supply or other utilities and shall pay for all charges for electricity and other utilities consumed by Licensee.

Licensee agrees to paint all of its equipment attached to the water tank, and any marred surfaces created during installation or removal of Licensee's equipment, the same color as the section of the tank to which such equipment is affixed, using the same painting system presently on the Licensed Property and approved by the Licensor's engineers. To insure the accuracy of the color match, the Licensee agrees to employ a painting contractor selected by the Licensor.

14. HAZARDOUS MATERIALS: Licensee agrees that it will not use, generate, store or dispose of any Hazardous Material, fuel of any kind, or any pesticides on, under, about or within the Licensed Property in violation of any law or regulation. Licensee agrees to defend and hold harmless Licensor, Licensor's agents and employees against any and all losses, liabilities, claims and/or costs (including reasonable attorney's fees and costs) arising from any breach of any representation warranty or agreement of Licensee contained in this paragraph.

Licensor represents that no Hazardous Materials are used, or stored at or on the Licensed Property, except such materials suitable for treatment of drinking water, and further agrees that no such materials will be permitted on Licensor's property during the term of this License. Licensor agrees to defend and hold harmless Licensee, and Licensee's partners, affiliates, agents and employees against any and all losses, liabilities, claims and/or costs (including reasonable attorney's fees and costs) arising from any use, generation, storage or disposal of any Hazardous Materials on, under, about or within the Property in violation of any law or regulation, except to the extent caused, and not merely discovered by Licensee, Licensee's agents, contractors, representatives and/or

9

employees. As used in this paragraph, "Hazardous Materials" shall mean petroleum or any petroleum product, asbestos, any substance, chemical or waste that is identified as hazardous, toxic or dangerous in any federal, state or local law or regulation. This paragraph shall survive the termination of this License.

15. <u>LICENSEE'S DEFAULT AND RIGHT TO CURE:</u> Each of the following shall be deemed a default by Licensor and a breach of this License:

(a) Non-payment of fees, including any adjustments in fee amount as required hereunder, due hereunder for a period fifteen (15) days after receipt of written notice of such failure from Licensor.

(b) Failure to perform any other covenant for a period of thirty (30) days after receipt of such notice from Licensor specifying the failure. No such failure, however, shall be deemed to exist if Licensee shall have commenced good faith efforts to rectify the same within such thirty (30) day period and provided such efforts shall be prosecuted to completion with reasonable diligence. Delay in rectifying the same shall be excused if due to causes beyond the reasonable control of Licensee.

(c) Any vacating or abandonment of the Licensed Property by Licensee for more than three (3) consecutive months and the failure to pay the License Fee, unless ordered to do so by duly authorized legal authority or other cause beyond Licensee's reasonable control.

(d) Licensee may terminate this License if Licensor shall be in default hereunder and such default is not cured within sixty (60) days of receipt of written notice of such default.

16. <u>ASSIGNMENT:</u> Licensee shall have the right to assign this License to any person or business entity which is authorized pursuant to and FCC licensed to operate a wireless communications business, is a parent, subsidiary or affiliate of Licensee, is merged or consolidated with Licensee or purchases more than 50% of either an ownership interest in Licensee or the assets

10

of Licensee in the "Metropolitan Trading Area" (as such term is defined by the FCC) in which the property is located. Provided, however, the Licensee shall notify the Licensor in writing of the name and contact information of the assignee. Upon the notification to the Licensor, Licensee shall be relieved of all liabilities and obligations hereunder. Licensee may otherwise assign this License upon the written consent of the Licensor. Such consent shall not be unreasonably withheld providing Licensee is not in default of any of the terms and conditions of this License. Further, in the event the Licensee is entitled to any fee in excess of the fees provided for in this agreement, whether payable periodically or in a lump sum, the Licensor shall be entitled to 50% of such excess fee as additional compensation under this agreement. Licensor will require an assumption of this agreement at the time of any such assignment.

Notwithstanding anything to the contrary contained in this License, Licensee may assign, mortgage, pledge, hypothecate or otherwise transfer without consent its interest in this Agreement to a financing entity, or agent on behalf of any financing entity to whom Licensee (i) has obligations for borrowed money or in respect of guaranties thereof, (ii) has obligations evidenced by bonds, debentures, notes, or similar instruments, or (iii) has obligations under or with respect to letters of credit, bankers acceptances and similar facilities or in respect of guaranties thereof.

17. NOTICES: Unless otherwise provided herein, any notice of demand required or permitted to be given hereunder shall be given in writing by certified or registered mail, return receipt requested, in a sealed envelope, postage prepaid, to be effective on the second day following, mailing addressed as follows:

|  |  |
|---|---|
| If to Licensor | Village of Bayville<br>34 School Street<br>Bayville, New York 11709 |
| If to Licensee | SPRINT SPECTRUM, L.P. Law Department<br>6391 SPRINT Parkway |

11

Mail Stop: KSOPHT0101-Z2650
Overland Park, Kansas 66251-2650
Attn: Sprint PCSReal Estate Attorney

and                    National Lease Management Group
6391 Sprint Parkway
Mailstop KSOPHT0101-Z2020
Overland Park, Kansas 66251-2020

Either party hereto may change the place for the giving of notice to it by like written notice to the other.

18. SEVERABILITY: If any provision of this License shall be held to be invalid, illegal or unenforceable, the remaining provisions shall be binding upon the parties and shall be enforceable as though said invalid, illegal or unenforceable provision were not contained herein, provided, however, that if the invalid, illegal or unenforceable provision goes is material to this License, the License may be terminated, by either party on ten (10) days prior written notice to the other party hereto.

19. AMENDMENT; WAIVER: No revision of this License shall be valid unless made in writing and signed by the parties hereto. No provision may be waived except in writing signed by both parties.

20. BIND AND BENEFIT: All the conditions and covenants contained in this license shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors, and permitted assigns of the parties hereto.

21. RECORDING: The parties agree that this License shall not be recorded or filed in the County Clerk's Office or with any other governmental agency. The recording or filing of this License shall be a breach of this License by the recording or filing party.

22. ENTIRE AGREEMENT: This License and the exhibits attached hereto constitute the entire agreement of the parties hereto and shall supersede all prior offers, negotiations

12

and agreements.

IN WITNESS WHEREOF, the parties have executed this license the date and year

first above written.

VILLAGE OF BAYVILLE                    SPRINT SPECTRUM, L.P.
LICENSOR                               LICENSEE

BY: *Victoria Siegel Mayor*            BY: *Michael W. Loucy*

TITLE:    MAYOR                        TITLE: Director Sprint Spectrum
Date: April    , 2003                  Date: April 23, 2003


                                       MICHAEL W. LOUCY
                                       DIRECTOR-SITE DEVELOPMENT
                                       NORTHEAST REGION

13

Site Name: Bayville Water Tank                                      Sprint PCS Site ID #: NY33XC699

## VILLAGE OF BAYVILLE NOTARY BLOCK:

STATE OF

COUNTY OF

The foregoing instrument was *(choose one)* ☐ attested or ☐ acknowledged before me this _____ day of
_____, 20____, by *(choose one)* ☐ _____ as an individual, ☐
_____, as _____ of _____, a
_____ corporation, on behalf of the corporation, or ☐ _____, partner or agent on behalf
of _____, a _____ partnership.

(AFFIX NOTARIAL SEAL)                    (OFFICIAL NOTARY SIGNATURE)
                                          NOTARY PUBLIC STATE OF

My commission expires:                    (PRINTED, TYPED OR STAMPED NAME OF NOTARY)
                                          COMMISSION NUMBER:

STATE OF

COUNTY OF

The foregoing instrument was *(choose one)* ☐ attested or ☐ acknowledged before me this _____ day of
_____, 20____, by *(choose one)* ☐ _____ as an individual, ☐
_____, as _____ of _____, a
_____ corporation, on behalf of the corporation, or ☐ _____, partner or agent on behal
of _____, a _____ partnership.

(AFFIX NOTARIAL SEAL)                    (OFFICIAL NOTARY SIGNATURE)
                                          NOTARY PUBLIC STATE OF

My commission expires:                    (PRINTED, TYPED OR STAMPED NAME OF NOTARY)
                                          COMMISSION NUMBER:

Law Dept PC Docs 77251 v2
revised 5/6/02

Site Name: Bayville Water Tank

Sprint PCS Site ID #: NY33XC699

**SPRINT SPECTRUM NOTARY BLOCK:**

STATE OF NJ

COUNTY OF Bergen

The foregoing instrument was acknowledged before me this ___23___ day of _Apnl_, 20 03, by
_Michael Loucy_ , as _Director_ _of Sprint Spectrum
L.P., a Delaware limited partnership, who executed the foregoing instrument on behalf of the partnership.

_Danielle Petti_

(AFFIX NOTARIAL SEAL)
(OFFICIAL NOTARY SIGNATURE)
NOTARY PUBLIC STATE OF

DANIELLE PETTI
Notary Public
State of New Jersey
No. 2268604

My commission expires: 11|2|05

(PRINTED, TYPED OR STAMPED NAME OF NOTARY)

STATE OF

COUNTY OF

The foregoing instrument was acknowledged before me this _____ day of _____, 20 ____, by
_____ , as _____ _of Sprint Spectrum
L.P., a Delaware limited partnership, who executed the foregoing instrument on behalf of the partnership.

(AFFIX NOTARIAL SEAL)
(OFFICIAL NOTARY SIGNATURE)
NOTARY PUBLIC STATE OF

My commission expires:

(PRINTED, TYPED OR STAMPED NAME OF NOTARY)

EXIST'G EQUIP. SHELTER

EXIST'G CHAIN LINK FENCE

EXIST'G EQUIP. SHELTER

EXIST'G WATER TANK (ABOVE)

EXIST'G WATER TANK SUPPORT (TYP.)

EXIST'G WOODED AREA

EXIST'G WATER WELL (TYP. OF 3)

PROPOSED OMNIPOINT 10x20 CONC. PAD & EQUIP. CABINETS

PROPOSED SPRINT 10x20 CONC. PAD & EQUIP. CABINETS SEE SHEET LE-2 FOR DETAILS

EXIST'G TRANSFORMER

EXIST'G WATER CONTROL BLDG.

EXISTING ASPHALT DRIVEWAY

EXIST'G POLICE EQUIP. BLDG.

EXIST'G TANK LADDER

GODFREY

AVENUE

SCHOOL        STREET

DRAWING NORTH

SITE PLAN
SCALE: 1"=40'-0"

0    20'    40'    80'

**Herbst · Musciano**
**Architects/Planners**

SPRINT PCS
CROSSROAD CORPORATE CENTER
1 INTERNATIONAL BLVD. SUITE 800
MAHWAH, NJ 07495

NY33XC699H
BAYVILLE WATER TANK
GODFREY AVE. & SCHOOL ST.
BAYVILLE, NY 11709

| NO. | DATE: | REVISIONS ▼ |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
| 2 | 03.10.03 | REVISED ANTENNA HEIGHT, FOR REVIEW |
| 1 | 03.05.03 | FOR REVIEW |
| NO. | DATE: | SUBMISSIONS ▲ |

DATE: 02.28.03

PROJECT NO.: S699

DRAWING NO.: LE-1

SHEET 1 OF 3



EXISTING WELL, TYPICAL

PROPOSED OMNIPOINT 10x20 CONC. PAD & EQUIP. CABINETS

PROPOSED SPRINT 10x20 CONC. PAD & EQUIP. CABINETS

PROPOSED OMNIPOINT UNDERGROUND COAX CABLES

EXIST'G CABLE RISER OF OTHERS

PROPOSED OMNIPOINT 250' SECTOR ANTENNAS MOUNTED 3' ABOVE EXIST'G RAILING (TYP. OF 2)

PROPOSED SPRINT 250' SECTOR ANTENNAS MOUNTED 10' ABOVE EXIST'G RAILING (TYP. OF 2)

EXIST'G POLICE ANTENNA

EXIST'G TANK OVERFLOW PIPE

56'-0"∅ EXISTING WATER TANK

EXIST'G WATER TANK VENT

EXIST'G WHIP ANTENNAS

PROPOSED OMNIPOINT 180' SECTOR ANTENNAS (TYP. OF 2)

PROPOSED SPRINT 140' SECTOR ANTENNAS (TYP. OF 2)

PROPOSED SPRINT UNDERGROUND COAX CABLES

PROPOSED SPRINT 30' SECTOR ANTENNAS (TYP. OF 2)

EXIST'G TANK LADDER TO GROUND

EXIST'G TANK LEG (TYP.)

EXIST'G TANK LADDER

EXIST'G TANK RAILING

PROPOSED OMNIPOINT 90' SECTOR ANTENNAS (TYP. OF 2)

PROPOSED SPRINT COAX CABLES TO RUN ALONG EXIST'G RAILING

EXIST'G CELLULAR ONE ANTENNAS

1 / LE-3

DRAWING NORTH

WATER TANK PLAN
SCALE: 1/16"=1'-0"

0    8'    16'    32'

**Herbst · Musciano**
**Architects/Planners**

SPRINT PCS
CROSSROAD CORPORATE CENTER
1 INTERNATIONAL BLVD. SUITE 800
MAHWAH, NJ 07495

NY33XC699H
BAYVILLE WATER TANK
GODFREY AVE. & SCHOOL ST.
BAYVILLE, NY 11709

| NO. | DATE: | REVISIONS ▼ |
|---|---|---|
| | | |
| | | |
| | | |
| 2 | 03.10.03 | REVISED ANTENNA HEIGHT, FOR REVIEW |
| 1 | 03.05.03 | FOR REVIEW |
| NO. | DATE: | SUBMISSIONS ▲ |

DATE:
02.28.03

PROJECT NO.:
S699

DRAWING NO.:

# LE-2

SHEET 2 OF 3



EXIST'G WHIP ANTENNAS

EXIST'G POLICE ANTENNA

EXIST'G WATER TANK VENT

EXIST'G TANK LADDER

PROPOSED OMNIPOINT 180' SECTOR ANTENNAS (TYP. OF 2)

PROPOSED SPRINT 30' SECTOR ANTENNAS (TYP. OF 2)

EXIST'G POLICE ANTENNA

90'-0"± A.G.L. TO CENTER OF PROPOSED SPRINT ANTENNAS

75'-0" A.G.L. TO BOTTOM OF EXIST'G RAILING

PROPOSED SPRINT 140' SECTOR ANTENNAS (TYP. OF 2)

PROPOSED OMNIPOINT 90' SECTOR ANTENNAS (TYP. OF 2)

EXISTING ANTENNAS, TYP.

EXIST'G TANK LADDER TO GROUND

EXISTING ANTENNAS, TYP.

PROPOSED SPRINT PCS COAX CABLE TRAY MOUNTED TO EXISTING TANK LEG

PROPOSED SPRINT PCS UNDERGROUND COAX CABLES TO OMNIPOINT SECTOR ANTENNAS

PROPOSED SPRINT PCS 10'X20' CONCRETE PAD & EQUIPMENT

1 SOUTHEAST ELEVATION
SCALE: 1/16"=1'-0"

0    8'    16'    32'

**Herbst · Musclano**
**Architects/Planners**

SPRINT PCS
CROSSROAD CORPORATE CENTER
1 INTERNATIONAL BLVD. SUITE 800
MAHWAH, NJ 07495

NY33XC699H
BAYVILLE WATER TANK
GODFREY AVE. & SCHOOL ST.
BAYVILLE, NY 11709

| NO. | DATE: | REVISIONS ▼ | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| 2 | 03.10.03 | REVISED ANTENNA HEIGHT, FOR REVIEW | |
| 1 | 03.05.03 | FOR REVIEW | |
| NO. | DATE: | SUBMISSIONS ▲ | |

DATE: 02.28.03

PROJECT NO.: S699

DRAWING NO.: LE-3

SHEET 3 OF 3

# EXHIBIT B

## INCORPORATED VILLAGE OF BAYVILLE
### Nassau County, New York

### BUILDING PERMIT UNDER ZONING ORDINANCE AND BUILDING CODE

This permit is issued subject to the provisions of Section 57 of the

Workmen's Compensation Law.

Block 93        Lot 34        Section 29        Zone F

**Nº** 6473        Date        July 31, 2003

Permission is hereby granted to:

Incorporated Village of Bayville        , Owner
34 School Street
Bayville, New York 11709

Telecom Engineering Group Inc.        , Contractor
6 Horizon St.

**To Erect**        Fort Lee, New Jersey 07024

Sprint Spectrum L.P. will affix small panel antennas to the
existing water tower located on School Street and install
**Located at** equipment cabinets on the ground near the base of the
water tower.

School Street

pursuant to application, and plans approved by the Building Inspector.

Cost of Construction or Alteration    $80,000.00...............

Permit Fee        $1,215.00...............

### INCORPORATED VILLAGE OF BAYVILLE

.................................................
BUILDING INSPECTOR

*Any change in plans during construction of this building should be immediately
reported to the Building Inspector and his approval secured. Otherwise Certificate
of Occupancy may not be issued.
NOTE: The holder of this permit agrees to comply with all provisions of the Building
and Zoning Ordinances and with the provisions of all laws and rules relating to the
construction of said buildings, additions or alterations, whether herein described or
not. Any violation of the provisions of said Ordinances or this permit shall render
the offender liable for the penalties provided therefor, and in addition thereto may
result in the immediate revocation of the permit.

THIS PERMIT MUST BE POSTED IN A CONSPICUOUS LOCATION.

# EXHIBIT C

**ORIGINAL**

## LICENSE AGREEMENT

THIS LICENSE, made the _6_ day of ~~April~~ *May* , 2004, by and between the

VILLAGE OF BAYVILLE, a municipal corporation having an office at 34 School Street,

Bayville, New York, hereinafter referred to as "Licensor", and, NEXTEL OF NEW YORK,

INC. d/b/a/ Nextel Communications, a Delaware Corporation, having an office at 1 North

Broadway White Plains, New York 10601, hereinafter referred to as "Licensee" or "NEXTEL".

WHEREAS, Licensor is the owner of certain real property described in Exhibit

"1" annexed hereto; and

WHEREAS, NEXTEL desires to use a portion of said property and the elevated

water tank (hereafter referred to as the "Licensed Property") for installation, maintenance and

operation of a wireless communications facility and other associated equipment in connection

with its providing of communications services;

NOW, THEREFORE, in consideration of all the foregoing, and in further

consideration of the premises, obligations, terms and conditions hereinafter set forth and recited,

both parties do hereby agree as follows:

1. PREMISES: Licensor grants to , the non-exclusive License to use that portion

of the Property located at the north west corner of School House Road and Godfrey Avenue,

Bayville, New York, also known as Section 29, Block 93, Lot 34, as specifically set forth and

described in Exhibits LE-1, LE-2, and LE-3 attached hereto and referred to as the "Licensed

Property". The rights granted to NEXTEL herein are irrevocable and may not be terminated

except as provided for herein.

2. ACCESS TO PREMISES: Licensor grants the right of access to the Licensed

Property to the Licensee. It is expressly understood and agreed, and Licensor acknowledges, that

Licensee is entering into this License in reliance on the representation that , its officers,

employees, agents, invitee, licensees, and representatives shall have the right of access to the

1

licensed premises through the real property of which the Licensed Property forms a part as specified below, during regular business hours. Any access to the Licensed Property other than during regular business hours of the Licensor shall be for emergency repair purposes only, unless prior agreement in writing from the Licensor is obtained by Licensee. Licensee agrees to mitigate noise during all repair operations performed at the Licensed Property.

3. <u>USE OF PREMISES:</u> (a) The Licensed Property is to be used for the installation, operation and maintenance of a wireless communications facility along with associated other electronic equipment which may be passive and/or active and no other purpose. Licensee shall have the right to install up to nine (9) antennas, fencing, equipment shelter as shown in a site plan attached hereto as Exhibit LE-3. The Initialing of Exhibit "LE-3" shall be deemed as Licensor's approval of antenna configuration and equipment placement. Other similar equipment shall be permitted by Licensor, providing such equipment placed by other licensees does not interfere with Licensee's transmissions.

All Licensee's equipment or other property attached to or otherwise brought onto the Licensed Property by shall at all times be personal property of NEXTEL and, at 's option, may be removed by at any time during the term or within a reasonable time after expiration of this License. Any damage caused by the Licensee as a result of the removal by of its equipment shall be repaired by the Licensee to the satisfaction of the Licensor. Licensee agrees to cooperate with the Licensor during water tank repainting by Licensor. Said cooperation shall include the repositioning of Licensee's equipment on Licensor's Property or temporary installation of a COW at a location mutually agreeable by the parties to accommodate the repainting process. Licensor shall give Licensee 30 days written notice if Licensee's equipment requires repositioning. Upon the completion
of the repair or repainting process, the Licensee shall return to its previous position on the Licensed Property.

(b) Licensee shall have the right to use whatever appropriate means it deems appropriate to install its equipment, subject to the prior approval in writing of the engineer of the Licensor and consistent with the operation of the business of the Licensor. Licensor

2

acknowledges that in order for Licensee to install and operate its equipment, it will require the right to install and maintain transmission lines from the equipment shelter to the antenna location, install and maintain power from the main feed to the equipment shelter, and install and maintain telephone lines from the main telephone entry point to the equipment shelter. Licensee shall have the right, subject to the approval of the Licensor, at any time during the term hereof, at its own expense, to erect, construct or make any improvements, alterations or additions upon or to the Licensed Property required by Licensee's use, including, but not limited to, the right of Licensee to enclose its equipment with fencing. Except as provided elsewhere in this agreement, any such construction shall be subject to the building Code of the Village of Bayville and the approval of the engineer of the Licensor. The Licensee agrees that the reasonable cost of the review of the site plan and construction plans, as well as construction supervision of Licensee's construction by the Village engineer, shall be paid for by the Licensee prior to plan approval and construction. The Licensor agrees to act upon any construction request for approval within sixty days from the receipt of said request sent by certified mail, return receipt requested, to the office of the Licensor as provided in paragraph 16 of this agreement. The Licensor shall have the right to select the exterior finish and color of Licensee's equipment structure. Licensee shall provide asphalt pavement to its equipment shelter at 's expense. The provisions of this subparagraph (b) shall not be construed to permit more than nine (9) antennas or more than one equipment shelter.

(c) Licensee shall have the right at any time following the full execution of this License, at reasonable times during business hours, to enter upon the premises for the purpose of making appropriate engineering and boundary surveys, inspections and test borings and other tests to determine the appropriateness of the Premises for the installation of Licensee's equipment. Due to security concerns, all entry onto the Licensor's Property and the conduct of any of the above mentioned tests or construction shall be required to receive the express prior permission of the Licensor.

Upon Licensee's request, at the expense of the Licensee, Licensor shall provide to the Licensee, to the extent available, copies of all structural drawings, surveys, of equipment and/or other information reasonably required in connection with Licensee's proposed installation

3

of its equipment at the Licensed Property. Licensor shall cooperate with Licensee and will join in any applications for governmental licenses, permits and approvals required of or deemed necessary by Licensee for its use of the Licensed Property, including, without limitation, applications for business licenses and permits and applications for zoning variances, zoning ordinances amendments and special use permits, provided that Licensee shall reimburse and hold Licensor harmless for any costs, fees or liability actually incurred by Licensor in connection with such applications and approvals. Licensor agrees to assist the Licensee in any application for zoning approvals that may be made to the Licensor pertaining to the Licensed Property.

  4. <u>INTERFERENCE</u>: (a) Licensor agrees to eliminate, without cost to the Licensee, any interference to Licensee's operation caused by Licensor or anyone holding under Licensor in a timely manner after written notice thereof. If such interference cannot be eliminated within a reasonable length of time, Licensee's sole remedy shall be the right to terminate this License, remove its equipment, and restore the Premises to its original condition. Licensor grants to the Licensee the right and authority to enforce the obligations of other licensees under similar paragraphs contained in license agreements with said licensees.

  (b) Licensee agrees not to interfere with radio transmission or reception of other communications equipment located prior to Licensee's installation, on the premises owned by Licensor or other licensees of which the Licensed Property forms a part. If Licensee should cause such measurable interference, Licensee shall eliminate it in a timely manner.

  (c) Licensor agrees not to erect any structure within or on the Property owned by the Licensor of which the Licensed Property forms a part, or permit the future installation of equipment which will result in technical interference problems with Licensee's then existing equipment.

  (d) The Licensee shall have the obligation to take all necessary steps to protect Licensee's equipment during tank maintenance activities of the Licensor.

  5. <u>TERM</u>: The initial term of this License shall be for ten (10) years commencing on the Commencement Date as defined in paragraph 6 below. As used herein, "term" refers to the initial term and any renewal term as herein provided. If, at any time during

4

this License, the Licensed Property becomes unsuitable for a wireless communication facility due to: (a) governmental regulations, (b) interference with Licensee's operation that cannot be resolved, or (c) the discovery of the presence or imminent release of Hazardous Materials on the premises in violation of any law; then in the event of any of the above, Licensee may terminate this License by giving notice to Licensor which shall be effective ninety (90) days after it is mailed by Licensee. None of the above items of suitably shall be construed to permit termination of this License on account of a less expensive site than the Licensed Property becomes available to the Licensee.

      6. <u>LICENSE FEE:</u> (a) For the first year of this License, Licensee shall pay Licensor an annual fee of $45,600.00, payable in equal monthly installments of the sum of $3,800.00, in advance on the first day of each month, commencing on the start of construction on the Licensed Property, but no later than 30 days after the issuance of a building permit for the construction of the licensed facilities (hereinafter referred to as the "Commencement Date"). If the term commences on any day other than the first day of a calendar month, a pro rata fraction of a full month's fee shall be paid for the partial month at the commencement of said term. If the term commences on any day other than the first day of a calendar month, a pro rata fraction of a full month's fee shall be paid for the partial month at the commencement of said term.

      (b) <u>ESCALATION:</u> On the annual anniversary date of each successive year of this License and any option to extend, the annual license fee shall increase at the rate of three percent (3%) per annum.

      (c) <u>TAX ADJUSTMENT:</u> The Licensee agrees that in the event real estate a taxes are imposed by any governmental entity as a direct result of a) the income received by the Licensor under this License, b) the use of the Licensed Property by the Licensee, or c) the installation of Licensee's equipment and structure, the Licensee shall pay such real estate tax upon presentation of the appropriate documentation of said tax. Licensee shall have the right to contest the imposition of tax payable by the Licensor as a result of this License. The Licensor will cooperate with the Licensee in the event the Licensee elects to contest any such tax. The Licensor shall provide notice of such property tax assessment to the Licensee in a timely manner.

5

7. <u>RIGHT TO RENEW:</u>   Licensee shall have the option of renewing this License for three (3) successive periods of five (5) years each, upon the same terms and conditions which were in effect during the initial term.  Licensee, in its sole discretion, may elect to exercise said renewal option(s) and the Licensor may not terminate this license should Licensee elect to exercise said renewal option(s). Licencee shall exercise its option by giving Licensor written notice of its intention to exercise its option to renew at least sixty (60) days prior to the expiration of the initial term hereof, and if said renewal is for the successive period, Licensee shall give to Licensor a like written notice at least sixty (60) days prior to the expiration of the then current period, of its intention to renew this License for and during the next succeeding period.

8. <u>LIABILITY INSURANCE:</u> Licensee, and any agent or subcontractor entering the Premises on behalf of Licensee, shall provide, during the term of this License, the following insurance with the customary coverage and exclusions:

Bodily Injury - $2,000,000 for all any one injury sustained by any one person in any one occurrence.

$5,000,000 for damages as a result of any one accident.

Licensee shall name the Village of Bayville as an additional insured on Licensee's Insurance policy.  The Licensee shall provide Licensor with an <u>endorsement</u> to said effect and provide Licensor with a copy of the coverage page of said policy.   The Licensor shall provide proof of insurance to the Licensee at the Commencement Date of this License.

Licensor and Licensee each indemnifies and agrees to defend the other against, and hold the other harmless from any and all costs, including reasonable attorney's fees and claim of liability or loss which may arise out of the ownership, use and occupancy of the Property by the indemnifying party.  This indemnity does not apply to any claims arising from the negligence  or intentional misconduct of the indemnified party.  The indemnity obligations under this section shall survive the termination of this License.

9. <u>CONDITION OF LICENSED PROPERTY:</u> Upon termination or expiration of this License, Licensee shall surrender the Licensed Property to Licensor in good condition

6

except for reasonable wear and tear.

### 10. WARRANTY OF TITLE AND RIGHT TO LICENSE:

(a) Licensee represents that it has examined the Licensed Property and any zoning requirements covering the Licensee's use of the Licensed Property. Licensor makes no representations with respect to same, other than it knows of no reason why the Licensee's activities or structures would be prohibited.

(b) In the event that the activities of the Licensee as permitted in this License are determined to be beyond the authority of the Licensor to permit, or are determined to be incompatible with the operation of a public water supply well site by the County of Nassau Board of Health or other agency having jurisdiction over the Licensor, then in that event, the Licensor shall be entitled to cancel this License and upon 90 days written notice, cause the Licensee to remove any equipment on the Licensed Property without any liability to the Licensor. The Licensee shall have the right to defend, on behalf of itself and the Licensor, the rights granted in this License before any forum of competent jurisdiction.

11. NONEXCLUSIVE USE: Licensor agrees that, from the date of execution of this License that Licensor may grant any to other parties any rights, or further right of access to the Licensed Property. Licensee agrees that the Licensor has the right to grant similar licenses to other parties, provided they do not interfere with Licensee's use.

12. LICENSEE'S RIGHT TO MAINTAIN SECURITY: Licensee, at its cost and expense, agrees to construct and maintain a fence with perma-hedge and/or landscaping around any equipment structure housing Licensee's equipment, or undertake any other appropriate means to restrict access thereto. Said fence shall be of the same type and quality as existing fencing and shall be installed in a concrete mowing strip. The Licensor shall have the right to approve all plans for the installation of fencing, paving, shrubbery, and any other modification made to the Licensed Property.

13. MAINTENANCE, REPAIRS, AND UTILITIES: Licensee shall perform all repairs necessary to keep its improvements on the Licensed Property and easements or other access to the property in good condition and repair. Licensor shall maintain the Property, other

7

than Licensee's improvements, in good condition and repair. Licensee, at its sole expense, shall arrange for a separately metered electrical supply or other utilities and shall pay for all charges for electricity and other utilities consumed by Licensee.

Licensee agrees to paint all of its equipment attached to the water tank, and any marred surfaces created during installation or removal of Licensee's equipment, the same color as the section of the tank to which such equipment is affixed, using the same painting system presently on the Licensed Property and approved by the Licensor's engineers. To insure the accuracy of the color match, the Licensee agrees to employ a painting contractor selected by the Licensor.

14. <u>HAZARDOUS MATERIALS:</u>  Licensee agrees that it will not use, generate, store or dispose of any Hazardous Material, fuel of any kind, or any pesticides on, under, about or within the Licensed Property in violation of any law or regulation. Licensee agrees to defend and hold harmless Licensor, Licensor's agents and employees against any and all losses, liabilities, claims and/or costs (including reasonable attorney's fees and costs) arising from any breach of any representation warranty or agreement of Licensee contained in this paragraph.

Licensor represents that no Hazardous Materials are used, or stored at or on the Licensed Property, except such materials suitable for treatment of drinking water, and further agrees that no such materials will be permitted on Licensor's property during the term of this License. Licensor agrees to defend and hold harmless Licensee, and Licensee's partners, affiliates, agents and employees against any and all losses, liabilities, claims and/or costs (including reasonable attorney's fees and costs) arising from any use, generation, storage or disposal of any Hazardous Materials on, under, about or within the Property in violation of any law or regulation, except to the extent caused, and not merely discovered by Licensee, Licensee's agents, contractors, representatives and/or employees. As used in this paragraph, "Hazardous Materials" shall mean petroleum or any petroleum product, asbestos, any substance, chemical or waste that is identified as hazardous, toxic or dangerous in any federal, state or local law or regulation. This paragraph shall survive the termination of this License.

15. <u>LICENSEE'S DEFAULT AND RIGHT TO CURE:</u> Each of the following

8

shall be deemed a default by Licensor and a breach of this License:

(a) Non-payment of fees, including any adjustments in fee amount as required hereunder, due hereunder for a period fifteen (15) days after receipt of written notice of such failure from Licensor.

(b) Failure to perform any other covenant for a period of thirty (30) days after receipt of such notice from Licensor specifying the failure. No such failure, however, shall be deemed to exist if Licensee shall have commenced good faith efforts to rectify the same within such thirty (30) day period and provided such efforts shall be prosecuted to completion with reasonable diligence. Delay in rectifying the same shall be excused if due to causes beyond the reasonable control of Licensee.

(c) Any vacating or abandonment of the Licensed Property by Licensee for more than three (3) consecutive months and the failure to pay the License Fee, unless ordered to do so by duly authorized legal authority or other cause beyond Licensee's reasonable control.

(d) Licensee may terminate this License if Licensor shall be in default hereunder and such default is not cured within sixty (60) days of receipt of written notice of such default.

16. <u>ASSIGNMENT:</u> Licensee shall have the right to assign this License to any person or business entity which is authorized pursuant to and FCC licensed to operate a wireless communications business, is a parent, subsidiary or affiliate of Licensee, is merged or consolidated with Licensee or purchases more than 50% of either an ownership interest in Licensee or the assets of Licensee in the "Metropolitan Trading Area" (as such term is defined by the FCC) in which the property is located. Provided, however, the Licensee shall notify the Licensor in writing of the name and contact information of the assignee. Upon the notification to the Licensor, Licensee shall be relieved of all liabilities and obligations hereunder. Licensee may otherwise assign this License upon the written consent of the Licensor. Such consent shall not be unreasonably withheld providing Licensee is not in default of any of the terms and conditions of this License. Further, in the event the Licensee assignor is entitled to any fee paid by the assignor in excess of the fees provided for in this agreement, whether payable periodically or in a lump sum, the Licensor shall be entitled to 50% of such excess fee as additional

9

compensation under this agreement. Licensor will require an assumption of this agreement at the time of any such assignment.

Notwithstanding anything to the contrary contained in this License, Licensee may assign, mortgage, pledge, hypothecate or otherwise transfer without consent its interest in this Agreement to a financing entity, or agent on behalf of any financing entity to whom Licensee (i) has obligations for borrowed money or in respect of guaranties thereof, (ii) has obligations evidenced by bonds, debentures, notes, or similar instruments, or (iii) has obligations under or with respect to letters of credit, bankers acceptances and similar facilities or in respect of guaranties thereof.

17. <u>NOTICES:</u> Unless otherwise provided herein, any notice of demand required or permitted to be given hereunder shall be given in writing by certified or registered mail, return receipt requested, in a sealed envelope, postage prepaid, to be effective on the second day following, mailing addressed as follows:

|  |  |
|---|---|
| If to Licensor | Village of Bayville<br>34 School Street<br>Bayville, New York 11709 |
| If to Licensee | Nextel Communications, Inc.<br>1 North Broadway<br>White Plains, NY 10601 |
| and | Nextel Communications, Inc.<br>2001 Edmund Halley Drive<br>Reston, VA 20191-3436<br>Second Floor Mail Stop 2E225<br>Attn: Site Leasing Services, Contracts |

Either party hereto may change the place for the giving of notice to it by like written notice to the other.

18. <u>WAIVER OF LIEN:</u>

(a)    Licensor waives any lien rights it may have concerning the Licensee Facilities, all of which are deemed Licensee's personal property and not fixtures, and Licensee has the right to remove the same at any time without Licensor's consent in accordance with the terms of this License.

(b)    Licensor acknowledges that Licensee has entered into a financing

10

arrangement including promissory notes and financial and security agreements for the financing of the Licensee Facilities ("Collateral") with a third party financing entity (and may in the future enter into additional financing arrangements with other financing entities). In connection therewith, Licensor (i) consents to the installation of the Collateral; (ii) disclaims any interest in the Collateral, as fixtures or otherwise; and (iii) agrees that the Collateral shall be exempt from execution, foreclosure, sale, levy, attachment, or distress for any fees due or to become due and that such Collateral may be removed at any time without recourse to legal proceedings.

19. SEVERABILITY: If any provision of this License shall be held to be invalid, illegal or unenforceable, the remaining provisions shall be binding upon the parties and shall be enforceable as though said invalid, illegal or unenforceable provision were not contained herein, provided, however, that if the invalid, illegal or unenforceable provision goes is material to this License, the License may be terminated, by either party on ten (10) days prior written notice to the other party hereto.

20. AMENDMENT; WAIVER: No revision of this License shall be valid unless made in writing and signed by the parties hereto. No provision may be waived except in writing signed by both parties.

21. BIND AND BENEFIT: All the conditions and covenants contained in this license shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors, and permitted assigns of the parties hereto.

22. RECORDING: The parties agree that this License shall not be recorded or filed in the County Clerk's Office or with any other governmental agency. The recording or filing of this License shall be a breach of this License by the recording or filing party.

23. ENTIRE AGREEMENT: This License and the exhibits attached hereto constitute the entire agreement of the parties hereto and shall supersede all prior offers, negotiations
and agreements.

IN WITNESS WHEREOF, the parties have executed this license the date and year first above written.

11

VILLAGE OF BAYVILLE
LICENSOR

NEXTEL COMMUNICATIONS, INC.
LICENSEE

BY: _Victoria Siegel_

BY: _____

TITLE: _Mayor_

TITLE: _V. P. Site Development, Northeast Region_

Date: May 6, 2004

Date: April 20, 2004



SITE PLAN

DETAILED SITE PLAN

NEXTEL 110° SECTOR
(2) PANEL ANTENNAS
MOUNTED TO STEEL FRAME
ATTACHED TO EXISTING RAILING
& TANK

NEXTEL 170° SECTOR
(2) PANEL ANTENNAS
MOUNTED TO STEEL FRAME
ATTACHED TO EXISTING RAILING
& TANK

NEXTEL 230° SECTOR
(2) PANEL ANTENNAS
MOUNTED TO EXISTING RAILING
ATTACHED TO EXISTING RAILING
& TANK

Existing Sprint
Antennas

(3) NEXTEL GPS
DEVICES ATTACHED
TO SHELTER

Existing Water
Tank

Police Antenna

ROUTE COAX CABLES
UP TANK LEG TO ANTENNAS
(PAINT TO MATCH)

COAX CABLES ROUTED
UNDERGROUND FROM SHELTER
TO TANK LEG.

NEXTEL HVAC UNIT
(TYP FOR 2)

NEXTEL 12' X 20'
EQUIPMENT SHELTER
ATTACHED TO CONCRETE
PIERS

Existing Chainlink
Fence

CONCRETE STEP

Utility Pole

Approximate Property Line

Existing One Story
Water Control Building

Existing Chainlink
Fence

T-Mobile Equipment

Sprint Equipment

School Street

Existing
Shelter

Existing Shelter

Existing Shelter

REMOVE EXISTING CONFLICTING
SHRUBS AS REQUIRED FOR
EQUIPMENT SHELTER INSTALLATION

Telco Demarc/
Meter Center

NOTE:
ELECTRIC/TELCO/
GROUND CONDUITS
WILL BE ROUTED
FROM THE SOURCE
TO THE EQUIPMENT
SHELTER

Approximate Property Line

Godfrey Avenue

6' HIGH ABORVITE
(TYP FOR 4) IN A TOPSOILED
AND MULCHED LANDSCAPE AREA

0        40'        80'

| | |
|---|---|
| TOTAL NUMBER OF SECTORS: | 3 |
| NUMBER OF ANTENNAS PER SECTOR: | 2 |
| TOTAL NUMBER OF ANTENNAS: | 6 |
| TOTAL NUMBER OF GPS DEVICES: | 3 |
| TOTAL SF OF LEASE EQUIPMENT SPACE: | 240 |

NEXTEL
Communications
One North Broadway, 2nd Floor
White Plains, NY 10601

Site No.: NY-1189
Site Name: Bayville Water Tank
Site Address: Godfrey Ave & School
Bayville, NY 11709

Prepared By:
Malick & Scherer, P.C.
Consulting Engineers
Construction Inspectors
Land Surveyors
One Salem Sq. 295 Rt 22 East
Whitehouse Station, NJ 08889

| | |
|---|---|
| Drawn By: MVS | Date: 02/03/04 |
| Checked By: RT | M&S Work #: 03882.00 |

LE-1
Approx. Scale as Shown

FEB-05-2004  03:43

P. 01



NEXTEL 170° SECTOR
(2) PANEL ANTENNAS
MOUNTED TO STEEL FRAME
ATTACHED TO EXISTING RAILING
& TANK

102'+/- Agl

Existing Whip Antennas

NEXTEL 110° SECTOR
(2) PANEL ANTENNAS
MOUNTED TO STEEL FRAME
ATTACHED TO EXISTING RAILING
& TANK

94'+/- AGL (TYP)

Existing Sprint Antenna (Typ)

92'+/- AGL RAD CENTER(TYP)

90'+/- Agl

Existing Water Tank

Existing Police Antenna

78'+/- Agl

ROUTE COAX CABLES
UP TANK LEG TO ANTENNAS
(PAINT TO MATCH)

Tank Railing and Cat Walk

Existing Antennas

NEXTEL GPS
DEVICE ATTACHED
TO EQUIPMENT SHELTER

NEXTEL 12' X 20'
EQUIPMENT SHELTER
ATTACHED TO CONCRETE
PIERS

NEXTEL HVAC UNIT
(TYP FOR 2)

(2) NEXTEL GPS
DEVICES ATTACHED
TO EQUIPMENT SHELTER

Water Tank
Access Ladder

13'+/- AGL

11'+/- AGL

Existing Chainlink
Fence

Grade

NOTE:

1.) ELECTRIC/TELCO/ CONDUITS
WILL BE ROUTED FROM THE
SOURCE TO THE EQUIPMENT
SHELTER

2.) NEXTEL 230° SECTOR
(2) PANEL ANTENNAS
MOUNTED TO STEEL FRAME
ATTACHED TO EXISTING RAILING
& TANK (NOT SHOWN FOR CLARITY)

RF:                2/5/04
GPS  A. Balado  2/9/04
PM   Scott Green 2-5-04
CPS              2/5/04
                 2/6/04

## SCHOOL STREET EXTENDED ELEVATION

0      20'      40'

| TOTAL NUMBER OF SECTORS: | 3 |
| NUMBER OF ANTENNAS PER SECTOR: | 2 |
| TOTAL NUMBER OF ANTENNAS: | 6 |
| TOTAL NUMBER OF GPS DEVICES: | 3 |
| TOTAL SF OF LEASE EQUIPMENT SPACE: | 240 |

**NEXTEL**
Communications

One North Broadway, 2nd Floor
White Plains, NY 10601

Site No.: NY-1189
Site Name: Bayville Water Tank
Site Address: Godfrey Ave & School
Bayville, NY 11709

Prepared By:
*Malick & Scherer, P.C.*
Consulting Engineers
Construction Inspectors
Land Surveyors
One Salem Sq. 295 Rt 22 East
Whitehouse Station, NJ 08889

| Drawn By: MVS | Date: 02/03/04 |
| Checked By: AT | M&S Work #: 03882.00 |
| LE-2 | |
| Approx. Scale as Shown | |

FEB-05-2004   03:43

P.02

FEB-05-2004 03:43

P.03



NEXTEL
Communications
One North Broadway, 2nd Floor
White Plains, NY 10601

PARTIAL SOUTH-WEST ELEVATION

Site No.: NY-1189
Site Name: Bayville Water Tank
Site Address: Godfrey Ave & School
Bayville, NY 11709

Prepared By:
Malick & Scheren, P.C.
Consulting Engineers
Construction Inspectors
Land Surveyors
One Salem Sq., 295 Rt 22 East
Whitehouse Station, NJ 08889

| | | |
|---|---|---|
| Drawn By: NWS | Date: 02/03/04 | |
| Checked By: RT | MAS Work #: 03882.00 | |

LE-3

Approx. Scale as Shown

NEXTEL 230° SECTOR
(2) PANEL ANTENNAS
MOUNTED TO STEEL FRAME
ATTACHED TO EXISTING RAILING
& TANK

94'+/- AGL (TYP.)

92'+/- AGL
(RAD CENTER)(TYP)

ROUTE COAX CABLES
UP TANK LEG TO
ANTENNAS (PAINT TO MATCH)

102'+/- Agl

Existing Whip
Antennas

Existing Police
Antenna

NEXTEL 170° SECTOR
(2) PANEL ANTENNAS
MOUNTED TO STEEL FRAME
ATTACHED TO EXISTING RAILING
& TANK

NEXTEL 110° SECTOR
(2) PANEL ANTENNAS
MOUNTED TO STEEL FRAME
ATTACHED TO EXISTING RAILING
& TANK (1 ANTENNA BEYOND)

94'+/- AGL (TYP.)

92'+/- AGL
(RAD CENTER)(TYP)

Tank Railing
and Cat Walk

Existing Water
Tank

78'+/- Agl

NOTE:
1.) ELECTRIC/TELCO/ CONDUITS
WILL BE ROUTED FROM THE
SOURCE TO THE EQUIPMENT
SHELTER

| | |
|---|---|
| TOTAL NUMBER OF SECTORS: | 3 |
| TOTAL NUMBER OF ANTENNAS PER SECTOR: | 2 |
| TOTAL NUMBER OF ANTENNAS: | 6 |
| TOTAL NUMBER OF GPS DEVICES: | 3 |
| TOTAL SF OF LEASE EQUIPMENT SPACE: | 240 |

TOTAL P.03

# EXHIBIT D

# INCORPORATED VILLAGE OF BAYVILLE

### Nassau County, New York

## BUILDING PERMIT UNDER ZONING ORDINANCE AND BUILDING CODE

This permit is issued subject to the provisions of Section 57 of the

Workmen's Compensation Law.

Block 93        Lot 34        Section 29        Zone F

Special Use Z.B.A. Approved Case Z-05-04

№ 6641        Date October 21, 2004

Permission is hereby granted to:

Inc. Village Of Bayville
34 School Street                                    , Owner
Bayville, New York 11709

    Charles M. Dwyer Inc.
    1430 Church Street, Unit C        , Contractor
    Bohemia, N.Y. 11716

To Erect

    Nextel Communication will affix antennas to the existing
water tower and install related equipment as depicted in
the attached building plans.

Located at

        Village of Bayville Water Tower

pursuant to application, and plans approved by the Building Inspector.

Cost of Construction or Alteration    $...120,000.00...

Permit Fee    $...1815.00.........

INCORPORATED VILLAGE OF BAYVILLE

...................................................
BUILDING INSPECTOR

*Any change in plans during construction of this building should be immediately
reported to the Building Inspector and his approval secured. Otherwise Certificate
of Occupancy may not be issued.

NOTE: The holder of this permit agrees to comply with all provisions of the Building
and Zoning Ordinances and with the provisions of all laws and rules relating to the
construction of said buildings, additions or alterations, whether herein described or
not. Any violation of the provisions of said Ordinances or this permit shall render
the offender liable for the penalties provided therefor, and in addition thereto may
result in the immediate revocation of the permit.

THIS PERMIT MUST BE POSTED IN A CONSPICUOUS LOCATION.