# ATTACHMENT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

THOMAS HOY AND
ELKE HOY,

                                   Plaintiffs,

      -against-

THE INCORPORATED
VILLAGE OF BAYVILLE,
SPRINT SPECTRUM REALTY COMPANY, L.P.,
as Successor in Interest to SPRINT SPECTRUM, L.P.,
NEXTEL OF NEW YORK d/b/a as NEXTEL
COMMUNICATIONS, OMNIPOINT FACILITIES
NETWORK 2, LLC, and NEW YORK SMSA LIMITED
PARTNERSHIP,

                                   Defendants.

---------------------------------------------------------------------X

STATE OF NEW YORK         )
                           )ss.:
COUNTY OF WESTCHESTER    )

**AFFIDAVIT IN SUPPORT**
**OF MOTION TO DISMISS**

10-CV-0094
(JFB) (AKT)

**ROBERT CIAGLIA,** being duly sworn, deposes and says:

      1.      I am the New York Real Estate/Zoning Manager for Omnipoint Communications, Inc. ("Omnipoint"). I submit this Affidavit in Support of the Wireless Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12.

      2.      As Real Estate/Zoning Manager for Omnipoint, I manage Omnipoint's wireless telecommunications network throughout much of the greater New York metropolitan area, including Nassau County. The scope of my management duties includes oversight of the leasing, construction, and maintenance of individual wireless facilities. Through my review of the documents and files maintained by Omnipoint in connection with this matter, I am fully familiar with the facts and circumstances set forth herein, except where stated upon information and belief.

## The Communication Facility

3.      Omnipoint currently operates a wireless telecommunications facility (the "Communication Facility") at the property known as the Bayville Water Tank, located near the northwest corner of Godfrey Avenue and School Street, Bayville, New York, and identified on the Nassau County Tax Map as Section 29, Block 93, Lot 34 (the "Property"). Improvements at the Property include a water tower (the "Water Tower") owned by the Village of Bayville (the "Village"), on which Omnipoint's wireless telecommunications antennas have been affixed.

## Omnipoint's Antennas Have Been On The Property Since 2003

4.      In or around June 25, 2003, Omnipoint entered into a License Agreement (the "License Agreement") with the Village, which granted Omnipoint certain lease space on the Water Tower and on the ground to install, operate and maintain the Communication Facility. A copy of the Lease is annexed hereto as **Exhibit A.**

5.      Under the terms of the License Agreement, Omnipoint was authorized to attach up to twelve antennas to the Water Tower and locate related equipment on the ground below. *See* **Exhibit A at ¶ 3.**

6.      On or around July 31, 2003 (the "Commencement Date"), in accordance with the License Agreement, Omnipoint, on behalf of the Village, obtained a building permit to commence construction at the Property. A copy of the building permit is annexed hereto as **Exhibit B.**

7.      Construction on the Property began on September 24, 2003 and the construction of the antennas on the Water Tower was completed on December 9, 2003. However, due to maintenance issues at the Water Tower, the antennas were not used to provide services until several months later.

8.      Omnipoint's License Agreement with the Village is in effect for ten years from the Commencement Date and may thereafter be renewed in Omnipoint's sole discretion for two successive five-year periods. *See* **Exhibit A at ¶¶ 5-7.**

9.      As shown in the exhibits to the License Agreement, the antennas were attached to an existing catwalk that encircles the water tank at a height of about 75 feet above ground level. *See* **Exhibit A, attachments LE 1-3.**

**WHEREFORE,** based on the foregoing, it is respectfully requested that this Court grant the Wireless Defendants' Motion to Dismiss this action.

Robert Ciaglia

Sworn before me this 24th
day of May 2010

_____
Notary Public

PATRICIA D. HENNELLY
ATTORNEY AT LAW
STATE OF NEW JERSEY

# EXHIBIT A

## LICENSE AGREEMENT

THIS LICENSE, made the 2) day of June, 2003, by and between the VILLAGE OF BAYVILLE, a municipal corporation, having an office at 34 School Street, Bayville, New York, hereinafter referred to as "Licensor", and,   OMNIPOINT FACILITIES NETWORK 2, LLC, a Limited Liability Company, having an office at c/o 4 Sylvan Way, Parsippany, New Jersey 07054, hereinafter referred to as "Licensee" or "OFN2".

WHEREAS, Licensor is the owner of certain real property described in Exhibit "1" annexed hereto; and

WHEREAS, OFN2 desires to use a portion of said property and the elevated water tank (hereafter referred to as the "Licensed Property") for installation, maintenance and operation of a wireless communications facility and other associated equipment in connection with its providing of communications services;

NOW, THEREFORE, in consideration of all the foregoing, and in further consideration of the premises, obligations, terms and conditions hereinafter set forth and recited, both parties do hereby agree as follows:

1. PREMISES: Licensor grants to OFN2 the exclusive License to use that portion of the Property located at the north west corner of School Street and Godfrey Avenue, Bayville, New York, also known as Section 29, Block 93, Lot 34 as specifically set forth and described in Exhibit "2" attached hereto and referred to as the "Licensed Property".

2. ACCESS TO PREMISES: Licensor grants OFN2 the right of access to the Licensed Property. It is expressly understood and agreed, and Licensor acknowledges, that OFN2 is entering into this License in reliance on the representation that OFN2, its officers, employees, agents,

1

invitees, licensees, and representatives shall have the right of access to the licensed premises through the real property of which the Licensed Property forms a part as specified below, during regular business hours. Any access to the Licensed Property other than during regular business hours of the Licensor shall be for emergency repair purposes only, unless prior agreement in writing from the Licensor is obtained by OFN2. OFN2 agrees to mitigate noise during all repair operations performed at the Licensed Property.

　　　　3. USE OF PREMISES: (a) The Licensed Property is to be used for the installation, operation and maintenance of a wireless communications facility along with associated other electronic equipment which may be passive and/or active and for no other purpose. OFN2 shall have the right to install up to twelve (12) antennas, fencing, and equipment cabinet as shown on a site plan attached hereto as Exhibit 3. The Initialing of Exhibit "3" shall be deemed as Licensor's approval of antenna configuration and equipment placement. Other similar equipment shall be permitted by Licensor, providing such equipment placed by other licensees does not interfere with Licensee's transmissions.

　　　　All Licensee's equipment or other property attached to or otherwise brought onto the Licensed Property by OFN2 shall at all times be personal property of OFN2 and, at OFN2's option, may be removed by OFN2 at any time during the term or within a reasonable time after expiration of this License. Any damage caused by the Licensee to the property of the Licensor as a result of the removal by OFN2 of its equipment shall be repaired by the Licensee to the condition prior to the damage.

　　　　OFN2 agrees to cooperate with the Licensor during water tank repainting by Licensor. Said cooperation shall include the repositioning of OFN2's equipment on Licensor's Property or the temporary installation of a COW at a location mutually agreeable to the parties to accommodate the

2

repainting process. Licensor shall give Licensee 30 days written notice if Licensee's equipment requires repositioning. Upon the completion of the repair or repainting process, the Licensee shall return to its previous position on the Licensed Property. Any interruption in service shall result in an License fee abatement during the repair and repainting process unless the Licensee elects to place a cell on wheels (COW) on the premises at a location mutually acceptable to the Licensor and Licensee.

      (b) OFN2 shall have the right to use whatever appropriate means it deems appropriate to install its equipment, subject to the prior approval in writing of the engineer of the Licensor and consistent with the operation of the business of the Licensor. Licensor acknowledges that in order for OFN2 to install and operate its equipment, it will require the right to install and maintain transmission lines from the equipment cabinet to the antenna location, install and maintain power from the main feed to the equipment cabinets, and install and maintain telephone lines from the main telephone entry point to the equipment cabinet. OFN2 shall have the right, subject to the approval of the Licensor, at any time during the term hereof, at its own expense, to erect, construct or make any improvements, alterations or additions upon or to the Licensed Property required by OFN2's use, including, but not limited to, the right of OFN2 to enclose its equipment with fencing. Except as provided elsewhere in this agreement, any such construction shall be subject to the Building Code of the Village of Bayville and the approval of the engineer of the Licensor. The Licensee agrees that the cost of the review of the site plan and construction plans, as well as construction supervision of Licensee's construction by the Village engineer, shall be paid for by the Licensee prior to plan approval and construction. The Licensor agrees to act upon any construction request for approval within 15 working (15) days from the receipt of said request sent by certified mail, return receipt requested, to the office of the Licensor as provided in paragraph "16" of this agreement. The

3

Licensor shall have the right to select the exterior finish and color of OFN2's equipment structure. OFN2 shall provide asphalt pavement to its equipment cabinets at OFN2's expense. In the event other licensees use the same asphalt pavement, OFN2 shall pay only for its pro rata share of said pavement. The provisions of this subparagraph (b) shall not be construed to permit more than twelve (12) antennas or more than three equipment cabinets.

(c)  Licensee shall have the right at any time following the full execution of this License, at reasonable times during business hours, to enter upon the premises for the purpose of making appropriate engineering and boundary surveys, inspections and test borings and other tests to determine the appropriateness of the Premises for the installation of Licensee's equipment. Due to increased security concerns, all entry onto the Licensor's Property and the conduct of any of the above-mentioned tests, construction, and/or maintenance and repair shall be required to receive the express prior permission of the Licensor. The Licensor agrees to establish a reasonable procedure for access to the Licensed Property upon same day notice to the Licensor or its agents.

Upon Licensee's request, at the expense of the Licensee, Licensor shall provide to the Licensee, to the extent available, copies of all structural drawings, surveys, of equipment and/or other information reasonably required in connection with Licensee's proposed installation of its equipment at the Licensed Property. Licensor shall cooperate with OFN2 and will join in any applications for governmental licenses, permits and approvals required of or deemed necessary by OFN2 for its use of the Licensed Property, including, without limitation, applications for business licenses and permits and applications for zoning variances, zoning ordinances amendments and special use permits, provided that OFN2 shall reimburse and hold Licensor harmless for any costs, fees or liability actually incurred by Licensor in connection with such applications and approvals. The Licensor agrees to assist the Licensee in any application for zoning approvals that may be made

4

to the Licensor pertaining to the Licensed Property.

4. <u>INTERFERENCE:</u> (a) Licensor agrees to eliminate, without cost to the Licensee, any interference to OFN2's operation caused by Licensor or anyone holding under Licensor in a timely manner after oral and written notice thereof.

(b) OFN2 agrees not to interfere with radio transmission or reception of other communications equipment properly functioning, prior to Licensee's installation, on the premises owned by Licensor or other licensees of which the Licensed Property forms a part. If OFN2 should cause such measurable interference, OFN2 shall eliminate it in a timely manner.

(c) Licensor agrees not to erect any structure or communications facility within or on the Property owned by the Licensor of which the Licensed Property forms a part, or permit the future installation of equipment which will result in technical interference problems with Licensee's then existing equipment.

(d) The Licensee shall have the obligation to take all necessary steps to protect Licensee's equipment during tank maintenance activities of the Licensor.

5. <u>TERM:</u> The initial term of this License shall be for ten (10) years commencing on the Commencement Date as defined in paragraph "6" below. As used herein, "term" refers to the initial term and any renewal term as herein provided. If, at any time during this License, the Licensed Property becomes unsuitable for a wireless communication facility due to: (a) governmental regulations, or (b) interference with OFN2's operation that cannot be resolved; then in either event, OFN2 may terminate this License by giving notice to Licensor which shall be effective one hundred twenty (120) days after it is mailed by OFN2. None of the above items of suitably shall be construed to permit termination of this License on account of a less expensive site than the Licenses Property becomes available to the Licensee.

5

6. <u>LICENSE FEE:</u> (a) OFN2 shall pay an initial license fee of $125,000.00 on the commencement date of this license. Said payment shall result in an abatement of rent for the first 33 months of this Agreement. In the event this License Agreement is canceled or otherwise terminated for any reason other than the default of the Licensee, the Licensor shall return to the Licensee any ~~unaccrued portion of the pre-paid $125,000.00 license fee.  The license fee shall be accrue at the~~ amount of $3,800.00 per month for 33 months.

(b) On the 34th month after the commencement date, for the balance of the first five years of this License, OFN2 shall pay Licensor an annual fee of $45,6000.00 per year, payable in equal monthly installments of the sum of $3,800.00, in advance on the first day of each month, commencing on the start of construction on the Licensed Property, but no later than the issuance of a building permit by the Village of Bayville Zoning Board of Appeals, (hereinafter referred to as the "Commencement Date").  If the term commences on any day other than the first day of a calendar month, a pro rata fraction of a full month's fee shall be paid for the partial month at the commencement of said term.

(c) <u>ESCALATION:</u> On the sixty first month from the commencement date, the annual license fee shall increase 15% from the last annual rental, and at the rate of 15% for each five year option period.

(d) <u>TAX ADJUSTMENT:</u> The Licensee agrees that in the event a tax of any kind is imposed by any governmental entity as a direct result of a) the income received by the Licensor under this License, b) the use of the Licensed Property by the Licensee, or c) the installation of Licensee's equipment and structure, the Licensee shall reimburse Licensor for such tax upon presentation of the appropriate documentation of Licensor's payment of said tax.  Licensee shall have the right to contest the imposition of tax payable by the Licensor as a result of this License.

6

The Licensor will cooperate with the Licensee in the event the Licensee elects to contest any such tax. The Licensor shall provide notice of such property tax assessment to the Licensee in a timely manner.

7. <u>OPTION TO RENEW:</u> OFN2 shall have the option of renewing this License for ~~two (2) successive periods of five (5) years each, upon the same terms and conditions which were in~~ effect during the initial term. OFN2, in its sole discretion, may elect to exercise said renewal option(s) and the Licensor may not terminate this license should OFN2 elect to exercise said renewal option(s).

OFN2 shall exercise its option by giving Licensor written notice of its intention to exercise its option to renew at least sixty (60) days prior to the expiration of the initial term hereof, and if said renewal is for the successive period, OFN2 shall give to Licensor a like written notice at least sixty (60) days prior to the expiration of the then current period, of its intention to renew this License for and during the next succeeding period.

8. <u>LIABILITY INSURANCE:</u> OFN2, and any agent or subcontractor entering the Premises on behalf of OFN2, shall provide, during the term of this License, the following insurance with the customary coverage and exclusions:

Bodily Injury - $2,000,000 for all any one injury sustained by any one person in any one occurrence.

$5,000,000 for damages as a result of any one accident.

Licensee shall name the Village of Bayville as an additional insured on Licensee's Insurance policy. The Licensee shall provide Licensor with an <u>endorsement</u> to said effect and provide Licensor with a copy of the coverage page of said policy. *The Licensor and Licensee release each other and their respective principals, officials, employees, representatives and agents, from any claims for damage to*

7

any person or the premises or to Licensee Facilities thereon caused by, or that result from, risks insured against under any insurance policies carried by the parties and in force at the time of any such damage. The Licensor shall provide proof of insurance to the Licensee at the Commencement Date of this License.

9. CONDITION OF LICENSED PROPERTY: Upon termination or expiration of this License, OFN2 shall surrender the Licensed Property to Licensor in good condition except for reasonable wear and tear.

10. WARRANTY OF TITLE AND RIGHT TO LICENSE:

(a) Licensee represents that it has examined the condition of the title to the Licensed Property and any zoning requirements covering the Licensee's use of the Licensed Property. Licensor makes no representations with respect to same, other than it knows of no reason why the Licensee's activities or structures would be prohibited.

(b) In the event that the activities of the Licensee as permitted in this License are determined to be beyond the authority of the Licensor to permit, or are determined to be incompatible with the operation of a public water supply well site by the County of Nassau Board of Health or other agency having jurisdiction over the Licensor, then in that event, the Licensor shall be entitled to cancel this License and upon 90 days written notice, cause the Licensee to remove any equipment on the Licensed Property without any liability to the Licensor. The Licensee shall have the right to defend, on behalf of itself and the Licensor, the rights granted in this License before any forum of competent jurisdiction.

11. NONEXCLUSIVE USE: Licensor agrees that, from the date of execution of this License, it notify OFN2 of Licensor's intent to grant any other party any rights, or further right of access to the Licensed Property. OFN2 agrees that the Licensor has the right to grant similar licenses

8

to other parties, provided they do not interfere with Licensee's use or occupation of the demised premises. .

12. <u>OFN2'S RIGHT TO MAINTAIN SECURITY</u>: OFN2, at its cost and expense, agrees to construct and maintain a fence with perma-hedge and/or landscaping around any equipment structure housing OFN2 equipment, or undertake any other appropriate means to restrict access thereto. Said fence shall be of the same type and quality as existing fencing and shall be installed in a concrete mowing strip. The Licensor shall have the right to approve all plans for the installation of fencing, paving, shrubbery, and any other modification made to the Licensed Property.

13. <u>MAINTENANCE, REPAIRS, AND UTILITIES</u>: OFN2 shall perform all repairs necessary to keep its improvements on the Licensed Property and easements or other access to the property in good condition and repair. Licensor shall maintain the Property, other than OFN2's improvements, in good condition and repair. OFN2, at its sole expense, shall arrange for a separately metered electrical supply or other utilities and shall pay for all charges for electricity and other utilities consumed by OFN2.

OFN2 agrees to paint only its equipment and area of the tank where attached to the water tank, and any marred surfaces created during installation or removal of OFN2'S equipment, the same color as the section of the tank to which such equipment is affixed, using the same painting system presently on the Licensed Property and approved by the Licensor's engineers. To insure the accuracy of the color match, the Licensee agrees to employ a painting contractor selected by the Licensor by the public bidding process.

14. <u>HAZARDOUS MATERIALS</u>: OFN2 agrees that it will not use, generate, store or dispose of any Hazardous Material, fuel of any kind, or any pesticides on, under, about or within the Licensed Property in violation of any law or regulation. OFN2 agrees to defend and hold

9

harmless Licensor, Licensor's agents and employees against any and all losses, liabilities, claims and/or costs (including reasonable attorney's fees and costs) arising from any breach of any representation warranty or agreement of Licensee contained in this paragraph.

Licensor represents that no Hazardous Materials are used, or stored at or on the Licensed Property, except such materials suitable for treatment of drinking water, and further agrees that no such materials will be permitted on Licensor's property during the term of this License. Licensor agrees to defend and hold harmless Licensee, and Licensee's partners, affiliates, agents and employees against any and all losses, liabilities, claims and/or costs (including reasonable attorney's fees and costs) arising from any use, generation, storage or disposal of any Hazardous Materials on, under, about or within the Property in violation of any law or regulation, except to the extent caused, and not merely discovered by Licensee, Licensee's agents, contractors, representatives and/or employees. As used in this paragraph, "Hazardous Materials" shall mean petroleum or any petroleum product, asbestos, any substance, chemical or waste that is identified as hazardous, toxic or dangerous in any federal, state or local law or regulation. This paragraph shall survive the termination of this License.

15. LICENSEE'S DEFAULT AND RIGHT TO CURE: Each of the following shall be deemed a default by OFN2 and a breach of this License:

(a) Non-payment of fees, including any adjustments in fee amount as required hereunder, due hereunder for a period fifteen (15) days after receipt of written notice of such failure from Licensor.

(b) Failure to perform any other covenant for a period of thirty (30) days after receipt of such notice from Licensor specifying the failure. No such failure, however, shall be deemed to exist if OFN2 shall have commenced good faith efforts to rectify the same within such thirty (30) day

10

period and provided such efforts shall be prosecuted to completion with reasonable diligence. Delay in rectifying the same shall be excused if due to causes beyond the reasonable control of OFN2.

(c) Any vacating or abandonment of the Licensed Property by OFN2 for more than three (3) consecutive months and the failure to pay the License Fee, unless ordered to do so by duly authorized legal authority or other cause beyond OFN2's reasonable control.

(d) Licensee may terminate this License if Licensor shall be in default hereunder and such default is not cured within sixty (60) days of receipt of written notice of such default.

16. <u>ASSIGNMENT</u>: *Licensee shall have the right to assign this License to any person or business entity which is authorized pursuant to and FCC licensed to operate a wireless communications business, is a parent, subsidiary or affiliate of Licensee, is merged or consolidated with Licensee or purchases more than 50% of either an ownership interest in Licensee or the assets of Licensee in the "Metropolitan Trading Area" (as such term is defined by the FCC) in which the property is located. Provided, however, the Licensee shall notify the Licensor in writing of the name and contact information of the assignee. Upon the notification to the Licensor, Licensee shall be relieved of all liabilities and obligations hereunder.* Licensee may otherwise assign this License upon the written consent of the Licensor. Such consent shall not be unreasonably withheld providing Licensee is not in default of any of the terms and conditions of this License. Further, in the event the Licensee is entitled to any fee in excess of the fees provided for in this agreement, whether payable periodically or in a lump sum, the Licensor shall be entitled to 50% of such excess fee as additional compensation under this agreement. Licensor will require an assumption of this agreement at the time of any such assignment.

*Notwithstanding anything to the contrary contained in this License, Licensee may* assign, mortgage, pledge, hypothecate or otherwise transfer without consent its interest in this

11

Agreement to a financing entity, or agent on behalf of any financing entity to whom Licensee (I) has

obligations for borrowed money or in respect of guaranties thereof, (ii) has obligations evidenced by

bonds, debentures, notes, or similar instruments, or (iii) has obligations under or with respect to

letters of credit, bankers acceptances and similar facilities or in respect of guaranties thereof.

17. NOTICES: ~~Unless otherwise provided herein, any notice of demand required or~~
permitted to be given hereunder shall be given in writing by certified or registered mail, return
receipt requested, in a sealed envelope, postage prepaid, to be effective on the second day following,
mailing addressed as follows:

|  |  |
|---|---|
| If to Licensor | Village of Bayville<br>34 School Street<br>Bayville, New York 11709 |
| If to Licensee | Omnipoint Facilities Network 2, LLC<br>4 Sylvan Way<br>Parsippany, NJ 07054 |
|  | Omnipoint Facilities Network 2, LLC<br>12920 SE 38th Street<br>Bellavue, WA 98006 |

Either party hereto may change the place for the giving of notice to it by like written notice to the

other.

18. WAIVER OF LANDLORD'S LIEN: Landlord hereby waives any and all lien

rights it may have statutory or otherwise concerning the Antenna Facilities or any portion thereof

which shall be deemed personal property for the purpose of this License, whether or not the same is

deemed real or personal property under the applicable laws, and Landlord gives Tenant and

Mortgagees the right to remove all or any portion of the same from time to time, whether before or

after a default under this Lease, in Tenant's and/or Mortgagee's sole discretion and without

Licensor's consent.

19. INDEMNIFICATION: Landlord and Tenant hereby mutually release each other

12

(and their successors or assigns) from liability and waive all right of recovery against the other for any loss or damage covered by their respective first party property insurance policies for all perils insured thereunder. In the event of such insured loss, neither party's insurance company shall have a subrogated claim against the other. To the extent loss or damage is not covered by their first party ~~property insurance policies, Licensor and Licensee each agree to indemnify and hold harmless the~~ other party from and against any and all claims, damages, cost and expenses, including reasonable attorney fees, to the extent caused by or arising out of (a) the negligent acts or omissions or willful misconduct in the operations or activities on the Property by the indemnifying party or the employees, agents, contractors, licensees, tenants and/or subtenants of the indemnifying party, or (b) a breach of any obligation of the indemnifying party under this License. Notwithstanding the foregoing, this indemnification shall not extend to indirect, special, incidental, or consequential damages, including without limitation, loss of profit, income or business opportunities to the indemnified party or anyone claiming through the indemnified party. The indemnifying party's obligation under this section are contingent upon (I) its receiving prompt written notice of any event giving rise to an obligation to indemnifying the other party and (ii) the indemnified party's granting it the right to control the defense and settlement of same. Notwithstanding anything to the contrary in this License, the parties hereby confirm that the provisions of this section shall survive the expiration or termination of this License. Licensee shall not be responsible to Licensor, or any third party, for any claims, costs or damages (including, fines and penalties) attributable to any pre-existing violations of applicable codes, statutes or other regulations governing the Property, including the Premises.

20. TERMINATION: Except as otherwise provided therein, this License may be terminated, without any penalty or further liability as follows:

(a)    upon thirty (30) days written notice by Licensor if Licensee fails to cure a default for payment of amounts due under this License within the thirty (30) day period;

(b)    immediately if Licensee notifies Licensor of unacceptable results of any title report, *environmental or soil tests prior to Tenant's installation of the Antenna Facilities on the Premises, or if Licensee is unable to obtain or maintain any license (including,* without limitation, an FCC licensee), permit or Governmental Approval necessary to the installation and/or operation of the Antenna Facilities or the Licensee's business;

(©)    upon ninety (90) days written notice by Licensee if the Property, or the Antenna Facilities are or become unacceptable under the Licensee's design or engineering specifications for its Antenna Facilities or the communications system to which the Antenna Facilities belong;

(d)    immediately upon written notice by Licensee if the Building or the Antenna Facilities are destroyed or damaged so as in the Licensee's reasonable judgment to substantially and adversely affect the effective use of the Antenna Facilities. In such event, all rights and obligations of the parties shall cease as of the date of the damage or destruction, and Licensee shall be entitled to the reimbursement of any License fee prepaid by Licensee. If Licensee elects to continue this License, then all License *fee's shall abate until the Premises and/or Antenna Facilities are restored to the* condition existing immediately prior to such damage or destruction; or

(e)    at the time title to the Property transfers to a condemning authority pursuant to a taking of all or a portion of the Property sufficient in the Licensee's determination to render the Premises unsuitable for Licensee's use. Licensor and Licensee shall each be entitled to pursue their own separate awards with respect to such taking. Sale of

14

all or part of the property to a purchaser with the power of eminent domain in the fact of the exercise of the power shall be treated as a taking by condemnation.

21.  <u>SEVERABILITY:</u>  If any provision of this License shall be held to be invalid, illegal or unenforceable, the remaining provisions shall be binding upon the parties and shall be ~~enforceable as though said invalid, illegal or unenforceable provision were not contained herein,~~ provided, however, that if the invalid, illegal or unenforceable provision goes is material to this License, the License may be terminated, by either party on ten (10) days prior written notice to the other party hereto.

22.  <u>AMENDMENT; WAIVER:</u>  No revision of this License shall be valid unless made in writing and signed by the parties hereto.  No provision may be waived except in writing signed by both parties.

23.  <u>BIND AND BENEFIT:</u>  All the conditions and covenants contained in this license shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors, and permitted assigns of the parties hereto.

24.  <u>RECORDING:</u>  The parties agree that this License shall <u>not</u> be recorded or filed in the County Clerk's Office or with any other governmental agency.  The recording or filing of this License shall be a breach of this License by the recording or filing party.

25.  <u>ENTIRE AGREEMENT:</u>  This License and the exhibits attached hereto constitute the entire agreement of the parties hereto and shall supersede all prior offers, negotiations and agreements.

26.  <u>RESTRICTIVE COVENANT:</u>  Licensor acknowledges that the Licensor's property is encumbered by a restrictive covenant recorded in Liber 4388 Page 543 which prohibits

15

the location of commercial enterprises among other prohibitions on the premises. Licensor believes that the premises are used for permitted municipal purposes. Licensor further believes that Licensee's presence does not change the character of the existing municipal use. In the event any legal proceeding are commenced to enforce the restrictive covenant referred to above, the Licensor agrees to defend the Licensees rights established pursuant to this Agreement. In the event the Licensee is required to remove its facilities by judicial decree or order, and the Licensor can not provide an alternate location acceptable to the Licensee, the Licencee shall have the right to cancel this Agreement and receive the return of any unaccrued prepaid license fee paid pursuant to paragraph 6 (a) herein. Licensee shall be entitled to a rent abatement for any period that Licensee is reasonably unable to provide service.

        IN WITNESS WHEREOF, the parties have executed this license the date and year first above written.

VILLAGE OF BAYVILLE
LICENSOR

BY: _Victoria Siegel_

TITLE:_____
Date: June   , 2003

OMNIPOINT FACILITIES NETWORK 2, LLC
LICENSEE

BY:_____

TITLE:_____
Date: June 2?, 2003

16

EXHIBIT A
*Legal Description*

The Property is legally described as follows:

BEGINNING at a point on the southerly line of Bayville Avenue where the same is intersected by the westerly line of a certain private street known as School House Road, which point is the northeast corner of property now or formerly of Cheshire; running thence along the southerly line of Bayville Avenue South 88° 31' East 49.60 feet to a point; thence South 2° 55' West 197.57 feet along property now or formerly of Holmes; thence continuing along said Holmes property South 81° 52' East 509.90 feet and North 2° 39' East 196.95 feet to a point in the southerly line of Bayville Avenue; thence South 76° 07' East 420.57 feet along the southerly line of Bayville Avenue to a point in the westerly line of property now or formerly of Jelke; thence along land of Jelke South 4° 41' 40" West 1573.45 feet more or less to the northerly side of Godfrey Avenue; thence along the northerly side of Godfrey Avenue as it bends and turns to a point in the eastline of land now or formerly of Clarkson; thence North 36° 55' East 775.41 feet along land now or formerly of Clarkson to a stone monument and land now or formerly of Rouss; thence along said land of Rouss South 79° 18' East 534 feet to another stone monument; thence continuing along said land of Rouss and later along land now or formerly of Cheshire North 11° 53' East 967.14 feet to the southerly side of Bayville Avenue and the point or place of beginning, the said courses and distances more or less.



EXIST'G WATER WELL (TYP. OF 3)

PROPOSED OMNIPOINT 10x20 CONC. PAD & EQUIP. CABINETS SEE SHEET LE-2 FOR DETAILS

PROPOSED SPRINT 10x20 CONC. PAD & EQUIP. CABINETS

EXIST'G TRANSFORMER

EXIST'G EQUIP. SHELTER

EXIST'G CHAIN LINK FENCE

EXIST'G EQUIP. SHELTER

EXIST'G WOODED AREA

EXIST'G WATER TANK (ABOVE)

EXIST'G WATER TANK SUPPORT (TYP.)

EXISTING LIPA POLE#13

EXIST'G WATER CONTROL BLDG.

EXIST'G POLICE EQUIP. BLDG.

EXIST'G TANK LADDER

EXISTING LIPA POLE# 14

PROPOSED OMNIPOINT UNDERGROUND POWER AND TELCO RUN TO OMNIPOINT COMPOUND

EXISTING SIREN POLE

SCHOOL                    STREET

GODFREY                AVENUE

EXISTING LIPA POLE# 15

PROPOSED MULTI CARRIER METER RACK AND CSC TELCO CABINET

EXISTING ASPHALT DRIVEWAY

DRAWING NORTH

## SITE PLAN
SCALE: 1"≈40'-0"

0    20'    40'    80'

**Herbst · Musciano**
**Architects/Planners**

≋**OMNIPOINT**
4 SYLVAN WAY
PARSIPPANY, NJ 07054

LI-12-065
BAYVILLE WATER TANK
GODFREY AVE. & SCHOOL ST.
BAYVILLE, NY  11709

| NO.: | DATE: | REVISIONS ▼ |
|---|---|---|
| | | |
| | | |
| | | |
| 3 | 05.19.03 | FENCE AND PLANT SCREENING |
| 2 | 03.18.03 | FOR REVIEW |
| 1 | 03.05.03 | FOR REVIEW |
| NO.: | DATE: | SUBMISSIONS ▲ |

DATE: 02.28.03

PROJECT NO.: 5279

DRAWING NO.: **LE-1**

SHEET 1 OF 3



WATER TANK PLAN
SCALE: 1/16"=1'-0"

0    8'    16'    32'

DRAWING NORTH

Herbst · Musciano
Architects/Planners

OMNIPOINT

4 SYLVAN WAY
PARSIPPANY, NJ 07054

LI-12-065
BAYVILLE WATER TANK
GODFREY AVE. & SCHOOL ST.
BAYVILLE, NY  11709

| NO. | DATE: | REVISIONS |
|---|---|---|
| 3 | 05.19.03 | FENCE AND PLANT SCREENING |
| 2 | 03.18.03 | FOR REVIEW |
| 1 | 03.05.03 | FOR REVIEW |
| NO. | DATE: | SUBMISSIONS |

DATE: 02.28.03

PROJECT NO.: 5279

DRAWING NO.:

LE-2

SHEET 2 OF 3

EXIST'G WHIP ANTENNAS

EXIST'G POLICE ANTENNA

EXIST'G WATER TANK VENT

EXIST'G TANK LADDER

PROPOSED OMNIPOINT 150° SECTOR ANTENNAS (TYP. OF 2)

EXIST'G POLICE ANTENNA

PROPOSED SPRINT 30° SECTOR ANTENNAS (TYP. OF 2)

75'-0" A.G.L. TO BOTTOM OF EXIST'G RAILING

81'-0"± A.G.L. TO BOTTOM OF PROPOSED OMNIPOINT ANTENNAS

PROPOSED SPRINT 140° SECTOR ANTENNAS (TYP. OF 2)

PROPOSED OMNIPOINT 60° SECTOR ANTENNAS (TYP. OF 2)

EXIST'G CELLULAR ONE ANTENNAS

EXIST'G TANK LADDER TO GROUND

PROPOSED OMNIPOINT COAX CABLE TRAY MOUNTED TO EXISTING TANK LEG

PROPOSED 6' HIGH BLACK CHAINLINK FENCE AND ARBORVITAES TIGHT AROUND OMNIPOINT AND SPRINT PCS COMPOUND

PROPOSED OMNIPOINT 10'X20' CONCRETE & EQUIPMENT PAD

PROPOSED OMNIPOINT UNDERGROUND COAX CABLES TO SPRINT PCS SECTOR ANTENNAS

**1 SOUTHEAST ELEVATION**
SCALE: 1/16"=1'-0"

0    8'    16'    32'

**Herbst · Musciano**
**Architects/Planners**

**✺OMNIPOINT**
4 SYLVAN WAY
PARSIPPANY, NJ 07054

LI-12-065
BAYVILLE WATER TANK
GODFREY AVE. & SCHOOL ST.
BAYVILLE, NY 11709

| NO. | DATE: | REVISIONS | DATE: 02.28.03 |
| --- | --- | --- | --- |
| | | | PROJECT NO.: 5279 |
| | | | DRAWING NO.: |
| 3 | 05.19.03 | FENCE AND PLANT SCREENING | **LE-3** |
| 2 | 03.18.03 | FOR REVIEW | |
| 1 | 03.05.03 | FOR REVIEW | |
| NO. | DATE: | SUBMISSIONS | SHEET 3 OF 3 |

# EXHIBIT B

## INCORPORATED VILLAGE OF BAYVILLE

### Nassau County, New York

### BUILDING PERMIT UNDER ZONING ORDINANCE AND BUILDING CODE

This permit is issued subject to the provisions of Section 57 of the

Workmen's Compensation Law.

Block 93    Lot 34    Section 29    Zone F

№ 6472    Date July 31, 2003

Permission is hereby granted to:

```
Incorporated Village of Bayville                , Owner
34 School Street
Bayville, New York 11709

        Omnipoint Communications, Inc.        , Contractor
```

**To Erect**    Omnipoint Communications will be affixing small panel antennas to the existing water tower on School Street and install equipment cabinets on the ground near the base of the **Located at**    tower.

School Street

pursuant to application, and plans approved by the Building Inspector.

Cost of Construction or Alteration  $.70,000.00...............

Permit Fee    $.1,065.00...............

INCORPORATED VILLAGE OF BAYVILLE

BUILDING INSPECTOR

*Any change in plans during construction of this building should be immediately reported to the Building Inspector and his approval secured. Otherwise Certificate of Occupancy may not be issued.
NOTE: The holder of this permit agrees to comply with all provisions of the Building and Zoning Ordinances and with the provisions of all laws and rules relating to the construction of said buildings, additions or alterations, whether herein described or not. Any violation of the provisions of said Ordinances or this permit shall render the offender liable for the penalties provided therefor, and in addition thereto may result in the immediate revocation of the permit.

THIS PERMIT MUST BE POSTED IN A CONSPICUOUS LOCATION.