# ATTACHMENT 5

SHORT FORM ORDER
SUPREME COURT - STATE OF NEW YORK
Present:
HON. F. DANA WINSLOW,
                                    Justice
                                    TRIAL/IAS, PART 6

MADELEINE PERRIN, ANGELO COTRONEO,  NASSAU COUNTY
JOSEPH DiGENNARO, and JO-TINA
DiGENNARO,
                     Petitioners,

   - against -

                                    RETURN DATE: 10/17/08
BAYVILLE VILLAGE BOARD, VICTORIA         SEQUENCE NO.: 008
SIEGEL, as MAYOR and in her individual
capacity; TIMOTHY J. HORGAN, CAROL        INDEX NO.: 9468-07
KENNEDY, JOHN LAURINE, and DOUGLAS G.
WATSON, as TRUSTEES OF BAYVILLE
VILLAGE and in their individual capacities; and
JAMES A. REILLY, ESQ., as VILLAGE
ATTORNEY OF BAYVILLE VILLAGE and in
hisindividual capacity,
                   Respondents,

THE COUNTY OF NASSAU; NEW YORK
SMSA LIMITED PARTNERSHIP D/B/A
VERIZON WIRELESS; OMNIPOINT
COMMUNICATIONS, INC.; SPRINT
SPECTRUM L.P.; and NEXTEL OF
NEW YORK, INC.,
                   Intervenor-Respondents.

The following papers read on the motions (numbered 1-4):

Notice of Motion..............................................................................................................1
Affirmation in Opposition [County].................................................................................2
Affirmation in Response to Motion to Reargue [Omnipoint, Sprint, Nextel]...........3
Affirmation in Opposition to Motion to Reargue [Bayville respondents].................4

Petitioners move pursuant to CPLR §2221 to reargue the motions resulting in the prior decision and order of this Court dated August 10, 2008 and entered on August 13, 2008 (the "Prior Order"). The Court refers to the Prior Order for a complete recitation of the underlying facts and the definition of all terms used herein.

This is a proceeding pursuant to **CPLR Article 78** in which petitioners challenge two resolutions of respondent BAYVILLE VILLAGE BOARD adopted on April 23, 2007 and filed on May 1, 2007. The Resolutions authorized the VILLAGE BOARD to enter into a License Agreement with the COUNTY permitting the installation of additional cell phone antennae on the Bayville Village Water Tower for use by the Nassau County Police Department in its upgraded public emergency response system. Petitioners argued that, insofar as the approved installation would increase their exposure to harmful Radio Frequency Radiation, the Resolutions violated a Restrictive Covenant in the Deed of the property to the Village, which prohibited uses that are "offensive, dangerous or obnoxious" to neighboring homeowners. In the Prior Order, this Court granted the motions of the COUNTY and the BAYVILLE respondents to dismiss the Petition. The Court determined that, insofar as the health and safety of the approved installation was governed by FCC standards, the State's enforcement of the Restrictive Covenant on the basis of the perceived threat of RFR emissions was barred by principles of federal preemption.

Petitioners now seek leave to reargue the prior motions and upon reargument, to vacate and set aside the Prior Order. Petitioners contend that: (i) the Court erred in acceding to federal preemption; and (ii) the Court failed to address the Deed's prohibition against commercial use. The Court grants leave to reargue pursuant to **CPLR §2221**, and turns to the merits.

As a procedural matter, petitioners argue that the Court improperly entertained and relied upon the *amicus curie* filing submitted by the FCC regarding the matter of federal preemption. The Court notes that, to the Court's knowledge, no appeal or other application for relief was filed from the Order of May 21, 2008 which elicited the FCC opinion. Further, petitioners had ample opportunity to object and/or respond to the FCC filing before final submission of the prior motions. Plaintiffs raised this issue only after the prior motions had been determined against them. [*See* Affirmation in Opposition of Nassau County, ¶ 6; Affirmation in Response of Omnipoint, Sprint and Nextel, ¶¶ 14-16;] The Court stands by its decision to accept, and afford substantial deference to, the views of the FCC regarding the preemptive force of its own regulations. *See* **Geier v. American Honda Motor Co., Inc.**, 529 U.S. 861, 883; **Medtronic, Inc. v. Lohr**, 518 U.S. 470, 496; **Cellular Phone Taskforce,** 205 F.3d at 96. It should be noted, however, that the Court did not reach its determination solely on the basis of the FCC opinion, but also undertook an independent review and consideration of the relevant law and its application to the circumstances presented here.

As a substantive matter, petitioners argue that the provision of the **Telecommunications Act of 1996 ("TCA")** at 47 USC §332(c)(7)(B)(iv), which prohibits State

2

regulation of personal wireless service facilities on the basis of the environmental effects of RFR, does not apply in the instant circumstances, because the proposed installation is not a "personal" wireless service facility. This argument was made and addressed in the prior motion. As discussed in the Prior Order, the Court did not determine that the relief sought was expressly preempted by statute. Rather, the Court found that the principle of conflict preemption, a distinct and sufficient basis for limiting State action, barred the Court from making any determination inconsistent with federal standards. Insofar as the relief sought by plaintiffs required such a determination, it could not be granted.

Citing **Sprint Spectrum L.P. v. Mills** [283 F.3d 404], Petitioners argue that preemption does not apply when the local authority owns the land in question, and acts as a proprietor as opposed to a regulator. In other words, the State or municipality acting in its proprietary capacity may restrict placement of cell phone towers or antennae on its own land, even if its decision to do so is based upon more stringent RFR standards than those of the FCC. Petitioners fail to distinguish the different positions of the VILLAGE and the State Court with respect to this rule. Whereas a municipality may be free from federal preemption in decisions regarding the use of its own land, that freedom does not extend to a State Court's review of such decisions. In that context, the State acts as a regulator, and not a proprietor. **Sprint** does not authorize this Court to bar installation of cell phone antennae on VILLAGE-owned land on the basis of RFR emissions.

Petitioners assert that the Court has overlooked the import of **Chambers v. Old Stone Hill Road Associates** [1 NY3d 424], in which a State court's power to prohibit use of a cell phone tower on property subject to a restrictive covenant was considered against the backdrop of federal preemption. **Chambers** held that preemption did not bar the Court from enforcing the restrictive covenant. In petitioner's view, **Chambers** was predicated largely on the fact that the hardship to the property owner caused by the enforcement of the restrictive covenant was self-created. That misses the point. The factor of hardship to the property owner is a matter of state law, bearing on whether or not the covenant is enforceable. It has no bearing on the issue of preemption. The salient factor underlying the **Chambers** decision was the subject matter of the restrictive covenant. There, the restrictive covenant limited the area to residential use. Enforcement of this covenant is a zoning-related power, preserved for local governments by the TCA. In **Chambers**, unlike the case at bar, the covenant could be enforced without any impermissible determination by the Court. The determination that a cell phone tower is a non-residential use is neither expressly preempted by the TCA, nor in conflict with any federal law or regulation. The determination that an FCC-compliant cell phone installation would emit dangerous levels of RFR is in direct conflict with federal testing and emissions standards.

3

Petitioners advance several arguments to the effect that the Court could enforce the Restrictive Covenant without contravening federal RFR testing and emission standards. First, petitioners challenge the assumption in the Prior Order that the proposed installation would be FCC-compliant. Ostensibly, RFR emissions that are not compliant could be deemed "dangerous" by a State Court without implicating federal preemption. The Court's assumption, however, was based upon the finding of the VILLAGE BOARD that an FCC license is required to operate the facility, and that the proposed antennas will be required to comply with all FCC regulations concerning RFR emissions. [See Resolution 2007-33 (m), attached as Exh. D to the VILLAGE's opposition.] The Resolutions anticipate that the FCC licensing and enforcement process will result in an installation that complies with FCC regulations in all respects, including the level of RFR emissions. Petitioners have not shown that this expectation is arbitrary or erroneous.

To the Court's knowledge, there was only one study that specifically projected the level of RFR at the subject site. The study measured, at various locations and distances from the site, the RFR emissions from existing antennas, and calculated the RFR emissions expected to issue from the proposed antennas. It concluded that the existing and proposed antennas would emit RFR at a level far below the health and safety standards established by the FCC. [See "Environmental Effects of Antennas on Water Tower," dated December 18, 2006, prepared by Donald E. Cotten, PhD and Stuart Maurer, PhD; Affidavit of Joe A. Elder, attached to COUNTY's prior motion to dismiss.]

At this point, there is no evidence to the contrary. The studies and articles cited by petitioners were general, anecdotal, or otherwise inapplicable. Petitioners refer to a warning sign at the Water Tower stating that RFR emissions within the site may exceed FCC standards. Even apart from its irrelevance to any area outside of the Water Tower, the sign is devoid of probative value. It lacks all of the criteria of competent scientific evidence. Similarly, petitioners refer to the finding articulated in a local law that "wireless telecommunications facilities may pose significant concerns to the health, safety, public welfare,...of the VILLAGE and its inhabitants." [Village of Bayville Local Law 2002-8, as cited by petitioners in their Affirmation in Support, ¶20.] This is equally non-scientific and non-probative. Petitioners' general concerns and speculations are insufficient to warrant a finding, at this time, that the RFR emissions from the proposed installation will exceed the health and safety standards promulgated by the FCC.

The Resolutions reasonably contemplate FCC compliance and enforcement, and petitioners have offered no basis to contradict or void them as unfounded. It is premature for the Court to consider what recourse may be available to petitioners in the event that the expectation of compliance is not realized.

4

Alternatively, Petitioners assert that the Restrictive Covenant may be enforced without reference to the safety of RFR emissions. The Restrictive Covenant prohibits uses that are "offensive dangerous or obnoxious... whether by reason of smoke, odor, fumes or any other use whatsoever offensive to such owners or owner of land." [Exh. "F", COUNTY's Affirmation in Opposition.] It follows that the Restrictive Covenant could be enforced on the ground that the proposed installation is "offensive" or "obnoxious" to the protected class of residents, without a determination that it is "dangerous" by federal or any other standards. Petitioners, however, have offered no basis upon which the proposed installation could be deemed "offensive" other than the perceived threat of RFR upon their health. They do not claim, for example, that the proposed installation will produce an odor, smoke, fumes or other obnoxious effect, either in the nature of the preceding list or of any other objective nature whatsoever. (In the Prior Order, the Court did not reach the argument, asserted by the County, that the offensive uses covered by the Restrictive Covenant are limited to those of a similar sort and nature as smoke, odor and fumes, and that, as a matter of contract interpretation under State law, the Restrictive Covenant does not extend to RFR emissions.)

Petitioners' sole basis for finding the proposed use "offensive" is the community opposition thereto. As discussed in the Prior Order, this is a purely subjective interpretation of the term, which the Court rejects. Restrictions on land use must be narrowly construed. Adopting the subjective interpretation would give members of the protected class an unbridled power to limit land use on the basis of personal whim or collective passion. Insofar as petitioners can point to no perceptible effect caused by the added cell phone antennae, a challenge to the proposed installation on the basis of its "offensive" or "obnoxious" nature cannot be sanctioned by the Courts.

Finally, petitioners argue that the Court erred in failing to consider that portion of the Deed which prohibits commercial use of the Property. The Court has considered and rejected the proposition, urged by petitioners, that the installation of additional cell phone antennae in this context is a commercial enterprise. It is the essential purpose of the use that dictates its nature, rather than the incidental exchange of value. Here, the essential purpose of the installation is to upgrade the public emergency response system. If anything, this constitutes a "municipal" use, which is permitted by the Deed. The receipt of federal funding for that purpose, or any income earned by various participants, does not transform the fundamental nature of the project.

The Court has considered the remaining arguments of the parties and finds them without merit. Based upon the foregoing, the Court stands by its original determination, as set forth in the Prior Order. It is, therefore,

5

ORDERED, that petitioners' motion to reargue is **granted**, and upon reargument, the relief sought **is denied.**

ENTER:

Dated: 1/31/09       _James Winslow_
                          J.S.C.