UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THOMAS HOY AND
ELKE HOY,

                                  Plaintiffs,

                                                            10-CV-0094
          -against-                                         (JFB) (AKT)

THE INCORPORATED
VILLAGE OF BAYVILLE,                                **REPLY IN SUPPORT OF**
SPRINT SPECTRUM REALTY COMPANY, L.P.,               **MOTION TO DISMISS**
as Successor in Interest to SPRINT SPECTRUM, L.P.,
NEXTEL OF NEW YORK d/b/a as NEXTEL
COMMUNICATIONS, OMNIPOINT FACILITIES
NETWORK 2, LLC, and NEW YORK SMSA LIMITED
PARTNERSHIP,

                                  Defendants.
------------------------------------------------------------------------X

**REPLY IN SUPPORT OF
THE WIRELESS DEFENDANTS' MOTION TO DISMISS**

Alfred L. Amato (AA 2354)                     Joshua S. Turner (*pro hac vice* JT 5778)
Richard S. Keenan (RK 2182)                   Brendan T. Carr (*pro hac vice* BC 3689)
Amato Law Group, PLLC                         Brendan J. Morrissey (*pro hac vice* BM 8800)
666 Old Country Road, Suite 901               Wiley Rein LLP
Garden City, New York 11530                   1776 K Street, N.W.
(516) 227-6363                                Washington, DC 20006
*Attorneys for Defendant New York SMSA Limited*   (202) 719-4807
*Partnership d/b/a Verizon Wireless*          *Attorneys for Defendant New York SMSA*
                                              *Limited Partnership d/b/a Verizon Wireless*


John J. Coughlin (JC 2700)                    A. Ross Pearlson (ARP 1277)
Ré, Nielsen, Huber & Coughlin, LLP            Sills Cummis Epstein & Gross, PC
36 North New York Avenue                      One Riverfront Plaza
Huntington, NY 11743                          Newark, NJ 07102
(631) 425-4100                                (973) 643-7000
*Attorney for Defendant Sprint Spectrum Realty*   *Attorney for T-Mobile Northeast LLC, the*
*Company, L.P. as successor-in-interest to Sprint*   *successor-in-interest to Omnipoint Facilities*
*Spectrum, L.P., and for Nextel of New York d/b/a*   *Network 2, LLC*
*Nextel Communications*

August 20, 2010

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

ARGUMENT ...................................................................................................................... 2

I.   PLAINTIFFS' CLAIMS UNDER THE ODO COVENANT FAIL AS A
     MATTER OF LAW ..................................................................................................... 2

     A.   Plaintiffs Offer No Response To The Wireless Defendants' Argument
          That *Perrin II* Was Correctly Decided And Should Be Followed Here ............... 2

     B.   Plaintiffs Are Barred From Re-Litigating The Issues Decided In *Perrin* ............. 4

     C.   Plaintiffs' Contention That Federal Preemption Does Not Apply Is Based
          On An Erroneous Reading Of *Mills* ................................................................. 6

II.  PLAINTIFFS' CLAIMS UNDER THE COMMERCIAL ENTERPRISES
     COVENANT ALSO FAIL AS A MATTER OF LAW .................................................. 9

III. PLAINTIFFS' SECTION 1983 DUE PROCESS CLAIM FAILS AS A MATTER
     OF LAW .................................................................................................................. 11

IV.  PLAINTIFFS ERR IN CONTENDING THAT COUNT I IS TIMELY ........................ 13

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anti-Monopoly, Inc., v. Hasbro, Inc.,*
  958 F. Supp. 895 (S.D.N.Y. 1997)................................................................7

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ...............................................................................12

*Scotto v. Almenas,*
  143 F.3d 105 (2d Cir. 1998).........................................................................20

*Southwick Clothing LLC v. GFT (USA) Corp.,*
  No. 99cv10452, 2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004)......................9

*Sprint Spectrum L.P. v. Mills,*
  283 F.3d 404 (2d Cir. 2002) .....................................................................6, 7

*Tinker v. Abrams,*
  640 F. Supp. 229 (S.D.N.Y. 1986) ..............................................................13

*Ward v. Caulk,*
  650 F.2d 1144 (9th Cir. 1981) ....................................................................15

*Wright v. Ernst & Young LLP,*
  152 F.3d 169 (2d Cir. 1998)..........................................................................9

## STATE CASES

*9394 LLP v. Farris,*
  10 A.D.3d 708, 782 N.Y.S.2d 281 (2d Dep't 2005)......................................3, 10, 11

*Bodouva v. Ross,*
  246 A.D.2d 617, 667 N.Y.S.2d 306 (2d Dep't 1998) ...................................15

*Buechel v. Bain,*
  97 N.Y.2d 295, 766 N.E.2d 914 (2001)........................................................5

*Cellular Telephone Co. v. Rosenberg,*
  82 N.Y.2d 364, 624 N.E.2d 990 (1993).......................................................10

*City of New York v. Delafield 246 Corp.,*
  236 A.D.2d 11, 662 N.Y.S.2d 286 (1st Dep't 1997) ....................................15

*Concerned Port Residents Committee v. Incorporated Village of Sands Point*,
  291 A.D.2d 494, 739 N.Y.S.2d 162 (2d Dep't 2002) ............................................................18

*Genesee Brewing Co. v. Village of Sodus Point*,
  482 N.Y.S.2d 693 (N.Y. Sup. Ct. 1984) ..............................................................................16

*Gignoux v. Village of Kings Point*,
  85 N.Y.S.2d 675 (N.Y. Sup. Ct. 1948) ................................................................................16

*Greco v. Incorporated Village of Freeport*,
  223 A.D.2d 674, 637 N.Y.S.2d 191 (2d Dep't 1996) ......................................13, 14, 15, 17

*Herald Square South Civic Ass'n v. Consolidated Edison Co. of New York, Inc.*,
  307 A.D.2d 213, 764 N.Y.S.2d 240 (1st Dep't 2003) .........................................................3, 4

*Herald Square South Civic Ass'n v. Consolidated Edison Co. of New York, Inc.*,
  803 N.Y.S.2d 18, 2003 WL 24132999 (N.Y. Sup. Ct. 2003) ..................................................3

*J.B. Realty Enterprise Corp. v. City of Saratoga Springs*,
  270 A.D.2d 771, 704 N.Y.S.2d 742 (3d Dep't 2000) ...........................................................19

*Jensen v. General Electric Co.*,
  82 N.Y.2d 77, 603 N.Y.S.2d 420 (1993) ..............................................................................15

*Kaufman v. Village of Mamaroneck*,
  286 A.D.2d 666, 729 N.Y.S.2d 778 (2d Dep't 2001) .....................................................14, 18

*Kress v. West Side Tennis Club*,
  293 N.Y.S.2d 666 (N.Y. Sup. Ct. 1968) ................................................................................4

*Letourneau v. Town of Berne*,
  56 A.D.3d 880, 866 N.Y.S.2d 462 (3d Dep't 2008) .............................................................14

*Mandel v. Estate of Tiffany*,
  263 A.D.2d 827, 693 N.Y.S.2d 759 (3d Dep't 1999) ...........................................................15

*Pansmith v. Village of Island Park*,
  68 N.Y.S.2d 694 (N.Y. Sup. Ct. 1947) ................................................................................16

*Perrin v. Bayville Village Bd.*,
  70 A.D.3d 835, 894 N.Y.S.2d 131 (2d Dep't 2010) ..............................................................2

*Perrin v. Bayville Village Bd.*,
  No. 9468-07, 2009 WL 599808 (N.Y. Sup. Ct. Jan 31, 2009) ...............................................6

*Perrin v. Bayville Village Bd* ,
   No. 9468-07, 2008 WL 4124110 (N.Y. Sup. Ct. Aug. 10, 2008)..............................................6

*Quinn v. County of Nassau*,
   162 A.D.2d 514, 556 N.Y.S.2d 712 (2d Dep't 1990) ...........................................................15

*Ram Island Homeowners Association v. Hathaway Realty*,
   305 A.D.2d 390, 758 N.Y.S.2d 522 (2d Dep't 2003) ...........................................................19

*Roth v. Syracuse Housing Authority*,
   No. 2001-5405, 2002 WL 31962630 (N.Y. Sup. Ct. 2002)...................................................15

*Solow v. Liebman*,
   175 A.D.2d 867, 573 N.Y.S.2d 710 (2d Dep't 1991) ...........................................................17

## FEDERAL RULES

Fed. R. Civ. P. 8 ...................................................................................................................12

## STATE STATUTES AND RULES

Bayville Village Code § 80-117 ...........................................................................................17

Bayville Village Code § 80-120 .............................................................................................5

Bayville Village Code § 80-130 ...........................................................................................17

Bayville Village Code § 80-131 ...........................................................................................17

N.Y. C.P.L.R. § 213.........................................................................................1, 13, 15, 18

N.Y. C.P.L.R. § 214.........................................................................................................1, 12

N.Y. C.P.L.R.§ 9802.........................................................................................1, 11, 12, 16

N.Y. R.P.A.P.L. § 2001 ..................................................................................1, 13, 19, 20

## INTRODUCTION AND SUMMARY OF ARGUMENT

In their Opposition [Doc. 40], Plaintiffs largely ignore the purely legal and dispositive issues raised in the Wireless Defendants' opening brief [Doc. 37, Attach. 1], focusing instead on an attempt to create a dispute about when the RF antennas were placed on the Water Tower. However, even if Plaintiffs could create a disputed issue of material fact on this point, which they cannot, the timing of the placement of the antennas is only relevant to adjudicating *one* of the four time-bar arguments raised in the motion (namely, the "deemed released" provision codified at N.Y. R.P.A.P.L. § 2001). It is irrelevant to the other three time-bar arguments (those made under N.Y. C.P.L.R. §§ 213, 214(5), and 9802) because the accrual dates under those statutes do not run from the time when the antennas were placed on the Water Tower, and the dates relevant to those statutes are undisputed.

Moreover, Plaintiffs' Opposition sidesteps the merits of a number of the arguments raised in the opening brief. Plaintiffs have not offered any substantive response to the main legal argument raised in the motion to dismiss: that *Perrin II* specifically determined that operating RF antennas on the Water Tower does not violate the ODO Covenant, and that even apart from its preclusive effect on this point, *Perrin II* teaches that this restrictive covenant, by its terms and under controlling principles of New York real property law, cannot be read to prohibit the operation of RF-emitting antennas on the Water Tower.

Plaintiffs attempt to distinguish *Perrin II* on the grounds that the action did not involve the Wireless Defendants' antennas, but that is simply false. The *Perrin* complaint expressly asked the court to order the removal of all of the antennas—including the Wireless Defendants' antennas—from the Water Tower. And, while they do not offer this point in their Opposition, Plaintiffs actually participated in the *Perrin* litigation.

Similarly, Plaintiffs provide no substantive response to the Wireless Defendants' argument that their use of the Property is not a "commercial enterprise" and therefore does not violate the Commercial Enterprises Covenant. Plaintiffs have thus left unrebutted the Wireless Defendants' purely legal argument that their use of the Property does not run afoul of the Deed.

**ARGUMENT**

I. <u>**PLAINTIFFS' CLAIMS UNDER THE ODO COVENANT FAIL AS A MATTER OF LAW**</u>

    A. <u>**Plaintiffs Offer No Response To The Wireless Defendants' Argument That *Perrin II* Was Correctly Decided And Should Be Followed Here**</u>

As noted, *see* Br. at 21-24, Plaintiffs' claims under the ODO Covenant fail as a matter of law. The Wireless Defendants' brief explained that *Perrin II* directly addresses the question, shows that Plaintiffs' claims fail as a matter of law, and controls the analysis here. Plaintiffs offer no substantive response.

Addressing the same facts as are before this Court, *Perrin II* found that the installation of RF antennas on the Water Tower "would not violate" the ODO Covenant. *Perrin v. Bayville Village Bd.*, 70 A.D.3d 835, 838, 894 N.Y.S.2d 131, 134 (2d Dep't 2010) ("*Perrin II*"). The Appellate Division's analysis was extensive, and properly relied on basic, well-established principles relating to the construction of covenants. It cited and quoted all of the applicable principles relating to the proper interpretation of restrictive covenants (including the doctrine that such covenants must be clear, cannot offend public policy, must be interpreted in light of their context, and must be construed narrowly and against the party seeking to enforce it). *Id.* at 836, 894 N.Y.S.2d at 133. In so doing, it found that the ODO Covenant cannot be read as prohibiting the operation of wireless antennas because doing so "would extend the covenant beyond the contextual meaning of its terms, and would impermissibly serve to extend, rather than limit, its

-2-

restriction." *Id.* at 838, 894 N.Y.S.2d at 134. *Perrin II*'s state-law determination is on point, and this Court must give it "proper regard" when analyzing the claims presented here. *See* Br. at 21.

The *Perrin II* court's decision was also undoubtedly correct. The ODO Covenant nowhere refers to the operation of wireless equipment as prohibited conduct, and such operations are entirely unlike the specific, tangible activities and annoyances explicitly set forth in the covenant (use of the property as an incinerator or for vending; emission of smoke, odor, fumes). New York law is clear: if there is a question as to whether the covenant covers the activity in question, the court should construe the covenant against restricting the use of the land. *9394 LLC v. Farris*, 10 A.D.3d 708, 709, 782 N.Y.S.2d 281, 283 (2d Dep't 2005). It would violate this bedrock principle of New York property law to construe the ODO Covenant as prohibiting this activity.

Plaintiffs get no further under the ODO Covenant by re-casting their Complaint as being based on the noises coming from the Property or aesthetics rather than their health concerns relating to RF emissions. Apart from the fact that this is not the theory articulated in the Complaint, *see infra* at Part I.C, the case law simply does not support extending the phrase "offensive, dangerous, or obnoxious" to cover the aural byproducts of wireless communications transmissions or aesthetics. The First Department rejected a similar claim in *Herald Square S. Civic Ass'n v. Consol. Edison Co. of N.Y., Inc.*, 307 A.D.2d 213, 214 764 N.Y.S.2d 240, 241 (1st Dep't 2003). There, the plaintiffs argued that a covenant barring a "noxious or dangerous trade or business" precluded placing an electric substation on the property because the substation would emit electromagnetic waves and noise. *See Herald Square South Civic Ass'n v. Consol. Edison Co. of N.Y., Inc.*, 803 N.Y.S.2d 18, 2003 WL 24132999, at *3, 5 (N.Y. Sup. Ct. 2003). The Supreme Court rejected the argument, finding that an electric substation was different in

kind from the types of businesses listed in the covenant despite the common characteristic of noise. *Id.* at *6. The Appellate Division affirmed that finding, noting that the determination was consistent with the general rule that covenants must be strictly construed and must be interpreted in their proper context. *Herald Square*, 307 A.D.2d at 213-14, 764 N.Y.S.2d at 241. Interpreting the emission of "noise" as barred under the ODO Covenant would be wholly inconsistent with the narrow construction of covenants under New York law. *See, e.g.*, *Kress v. West Side Tennis Club*, 293 N.Y.S.2d 666, 669 (N.Y. Sup. Ct. 1968) (covenant barring noxious, offensive, or dangerous uses of the property did not bar music festivals).

The result is no different in this case. The operation of a wireless facility is not specifically prohibited by the ODO Covenant and is unlike the activities mentioned as being offensive, dangerous, or obnoxious.[1] As a result, it is not covered by the covenant.

### B.    Plaintiffs Are Barred From Re-Litigating The Issues Decided In *Perrin*

The doctrine of collateral estoppel, also known as issue preclusion, bars Plaintiffs from relitigating two of the key issues at stake in this litigation: (1) *Perrin I*'s holding that a court was preempted from finding that RF emissions are "offensive, dangerous, or obnoxious" as a matter of New York law; and (2) *Perrin II*'s finding that the ODO covenant did not prohibit the operation of wireless communications antennas on the Water Tower. *See* Br. at 19-20.

Plaintiffs offer no cogent defense to the Wireless Defendants' showing that collateral estoppel bars re-litigation of key issues in this case. First, Plaintiffs appear to confuse collateral estoppel, which requires only an *issue* in common with a prior action (but has a relatively narrow preclusive effect), with res judicata, which requires that a *claim* have been decided in a prior

---

[1]    Indeed, it is difficult for Plaintiffs to claim that such activities are somehow out of keeping with the character of the neighborhood, as the Bayville Village Code specifically singles out the Water Tower as the preferred location for placement of wireless communications

action (but broadly precludes other claims based on the same transaction). Opp. at 39-40. Collateral estoppel applies as long as an issue in this case has been decided in a prior action, the issue is determinative of an issue here, and the issue was fully and fairly litigated in the prior action. *Buechel v. Bain*, 97 N.Y.2d 295, 304, 766 N.E.2d 914, 919 (2001). Unlike res judicata, all that is necessary to invoke collateral estoppel is for there to be any *issue* in common. Here, the issues identified above are clearly at stake in both this case and the earlier *Perrin* decisions.

Second, Plaintiffs contend that there is no identical issue in this case because they claim that *Perrin* did not involve the Wireless Defendants' commercial antennas.[2] *See* Opp. at 40. Indeed, Plaintiffs' affidavit in this action represents that "*Perrin* sought only to prevent the police antennas from being installed while asserting no claims against the carrier defendants herein, or seeking the removal of their commercial antenna's [sic]." Hoy Affid. ¶ 65. This is simply false. As the Verified Petition attached to the Plaintiffs' Opposition shows, the *Perrin* petitioners asked the Court to order the removal of the Wireless Defendants' antennas from the tower. *See* Opp. at Ex. Q, ¶ 47 ("The respondents should be ordered to remove the already existing radiofrequency radiation emitting equipment[.]"). Several of the Wireless Defendants intervened in *Perrin* to protect their interests, and the Appellate Division converted the action from an Article 78 proceeding relating only to the police antennas into a general declaratory judgment action. *See Perrin II*, 70 A.D.3d at 835, 894 N.Y.S.2d at 132. In any event, the issue is "identical" regardless of whether the same antennas were at issue, as the principles set forth in *Perrin* apply generally to any FCC-compliant RF-emitting antennas.

---

antennas and equipment in the Village. *See* Bayville Village Code § 80-120(A)(1) (the Water Tower is the preferred location), (A)(2) (Village-owned property is the second-best location).

[2]     Plaintiffs also point out that the *Perrin* case did not concern the Commercial Enterprises Covenant. Opp. at 40. The Wireless Defendants have never contended otherwise, and have never argued that collateral estoppel should extend to any arguments on that covenant.

Plaintiffs make no effort to satisfy their burden of showing that these issues were not fully and fairly litigated in *Perrin*.  *See Buechel*, 97 N.Y.2d at 304, 766 N.E.2d at 919.  Instead, Plaintiffs contend only that there is a fact issue precluding this Court from finding that they are in privity with the *Perrin* plaintiffs.  *See* Opp. at 42-43.  There is no need for fact development on this point, however, as Plaintiffs here are in an identical position to the *Perrin* plaintiffs as a matter of law.[3]  Both sets of plaintiffs asserted their rights as owners of property within one mile of the Property, which is the class of persons singled out for protection by the ODO Covenant. The rights of landowners within that class are dictated by the terms of the covenant and are indistinguishable.  The case law is clear that Plaintiffs are bound.  *See* Br. at 20-21.

### C.    Plaintiffs' Contention That Federal Preemption Does Not Apply Is Based On An Erroneous Reading Of *Mills*

Plaintiffs' claims under the ODO Covenant are barred by the doctrines of field, conflict, and express preemption because they would require the Court to determine that RF emissions from antennas on the Water Tower are "offensive, dangerous, and obnoxious" as a matter of New York law.  *See* Br. at 24-36.  As the trial court in *Perrin* found in two separate decisions,[4] *see* Br. at 25 n.18, the action that triggers preemption is not the Village's decision to accept the restrictions in the Deed, but rather the Court's interpretation of New York law in a way that would declare an FCC-compliant facility to be "offensive" and "dangerous."  *See id.*  In their Opposition, Plaintiffs do not address the merits of this point.  Instead, repeating an argument that

---

[3]       While the Plaintiffs state that they were never extended an invitation to join the *Perrin* action, were not aware of the action at the time it was commenced, and give the impression that they were not involved in that action, *see* Hoy Affid. at ¶ 53; Opp. at 13; Compl. ¶ 17, *the Hoys actually participated in Perrin* by submitting affidavits in support of the plaintiffs' case.  *See* Ex. A (appended hereto).

[4]       *See Perrin v. Bayville Village Bd.*, 2009 N.Y. Slip Op. 30460(U), No. 9468-07, 2009 WL 599808, at *3 (N.Y. Sup. Ct. Jan 31, 2009) (appended to the opening brief as Attachment 5); *see*

was considered and rejected in *Perrin*, *see id.*, Plaintiffs rely on *Sprint Spectrum L.P. v. Mills*, 283 F.3d 404 (2d Cir. 2002) for the proposition that federal preemption does not apply in this case. *See* Opp. at 36-39.

The question in *Mills* was whether federal preemption prevented a governmental body (the "School District") from requiring via private contract that a communications provider limit the RF emissions from antennas that were placed on the School District's property. *See Mills*, 283 F.3d at 420-21. The Second Circuit held that federal preemption did not apply to *the School District's decision* because it was acting in a proprietary capacity. *See id.* Unlike *Mills*, the government body here has not sought to impose limits on RF emissions as part of the lease agreement for its property. Instead, this case requires this Court to interpret a restrictive covenant and determine if, as a matter of New York state law, an FCC-compliant facility is an "offensive, dangerous, or obnoxious" use. Federal preemption prevents this Court from making that state law determination because, *inter alia*, such a finding would extend state law into a field occupied exclusively by federal law and would conflict with the FCC's determination that these RF emissions are safe. *See* Br. at 24-36. This is a question that was not at issue in *Mills*.

Because Plaintiffs elected to rely on *Mills* rather than address the merits of Plaintiffs' preemption arguments, they should be deemed to have conceded these points.[5] In any event, the Wireless Defendants' brief explains why federal preemption bars these claims, *see* Brief at 24-36, and why even if federal preemption did not apply, the public policies and goals embodied in

---

also *Perrin v. Bayville Vill. Bd.*, no. 09468-07, 2008 WL 4124110, (N.Y. Sup. Ct. Aug 10, 2010) ("*Perrin I*").

[5]     *See, e.g.*, *Anti-Monopoly, Inc., v. Hasbro, Inc.*, 958 F. Supp. 895, 907 & n.11 (S.D.N.Y. 1997) (stating that "the failure to provide argument on a point at issue constitutes abandonment of the issue"), *aff'd*, 130 F.3d 1101 (2d Cir. 1997).

federal telecommunications law would render Plaintiffs' reading of the ODO Covenant void as against public policy.  *See* Br. at 36.

Finally, Plaintiffs construct a straw man based on an overly broad reading of the Wireless Defendants' preemption argument, and suggest that accepting this preemption theory would divest them of any and all rights under the Deed.[6]  This is incorrect.  The Wireless Defendants do not contend that the preemption principles recognized in *Perrin I* completely divest local property owners of all rights under the Deed.  Deed restrictions unrelated to RF emissions are generally not covered by these principles.  Had Plaintiffs pled claims unrelated to RF emissions, those claims might escape preemption (though, for the reasons stated above and in *Perrin II*, they would still not state a claim for violation of the literal terms of the covenant itself and would have to be dismissed under New York law).  *See* Part I.A *supra*; *see also* Br. at 21-24.

But the only claims that Plaintiffs have pled are based on RF emissions and thus fall squarely within the preemption principles recognized in *Perrin I*.  Their Complaint leaves no doubt that the alleged health effects of RF emissions are the basis for their claims.  Among other things, Plaintiffs assert:

- "[T]here exists potentially harmful effects from the cumulative radiation emanating from" the antennas on the Water Tower, Compl. ¶ 9, which results in "the children who attend the Bayville elementary school, and their teachers and staff, [being] continuously subject to the cumulative Microwave and RF emissions" of the antennas on the Water Tower, *id.* ¶ 11.

- Statistics regarding cancer rates among students and teachers in Bayville.  *Id.* ¶¶ 12, 13.

- The Village has "caused and permitted the property to be used in a manner which is offensive, dangerous and obnoxious to the plaintiffs," *id.* ¶ 54, by allowing "an excessive

---

[6]      *See* Opp. at 19 (arguing that defendants are "tak[ing] the position that federal law preempts *any* rights, on the part of *any* owners of property, to enforce the restrictive covenants"); *id.* at 23 (contending that the Village is taking the position that it is "free to authorize the installation of any wireless equipment on the site at issue . . . irrespective of whatever effects such installations may have upon the neighbors or residential character of the residential neighborhood . . . so long as such the equipment is 'FCC compliant'"); *see also id.* at 14-15.

saturation of more than fifty (50) Cellular transmission antennas, each and every one of which emits RF radiation and/or microwave radiation in their day-to-day operation," *id.* ¶ 55. The "antenna farm" is located 50 feet from the elementary school, and cancer rates are higher among Bayville residents than New York State as a whole. *Id.* ¶¶ 58-60.

- "Each of the plaintiffs find the use of the property as an antenna farm both offensive and obnoxious, in that the saturation of more than fifty (50) antennas, and the acknowledgement by the defendant Village that the cumulative RF emissions emanating from those 50 plus antennas may exceed FCC standards for general public exposure." *Id.* ¶ 83.

Plaintiffs cannot salvage their Complaint by arguing for the first time in their Opposition that the antennas violate the ODO Covenant because of their lack of visual appeal and the noise associated with them.[7] *See* Opp. at 9, 44. This is not the theory of the case contained in their Complaint. Only one paragraph in the Complaint mentions "aesthetics" and does so only in passing, *see* Compl. ¶ 82, and neither the word "noise" nor any other like term appears *anywhere* in the Complaint. In contrast, at least 10 paragraphs of the Complaint are directed towards the supposed dangers of RF emissions. Plaintiffs cannot avoid the preemption problems created by their Complaint by raising new arguments in briefing to the Court.

## II.    PLAINTIFFS' CLAIMS UNDER THE COMMERCIAL ENTERPRISES COVENANT ALSO FAIL AS A MATTER OF LAW

As with the merits of the ODO Covenant, Plaintiffs offer no substantial response to the Wireless Defendants' showing that the Commercial Enterprises Covenant, by its terms, does not prohibit the Wireless Defendants' use of the Property. That covenant prohibits certain specified commercial activities, including "amusements, concessions, vending, restaurants or other commercial activities" from taking place on the park grounds. It does not by its terms prohibit

---

[7]    *See, e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding that plaintiff could not amend her complaint through a legal memorandum filed in opposition to a motion to dismiss); *see also Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99cv10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion.").

wireless communications equipment, and the type of "commercial activities" prohibited by the covenant are entirely unlike the transmission of RF; they involve the affirmative transaction of business (buying and selling) on the premises. The Wireless Defendants conduct no such business on park grounds and merely make use of a portion of the property for equipment that provides a public utility service—a use that is not prohibited by the covenant. *See Cellular Tel. Co. v. Rosenberg*, 82 N.Y.2d 364, 372-73, 624 N.E.2d 990, 994 (1993). Principles of covenant construction, *see* Br. at 21-24, 40-42, dictate that this covenant cannot be read expansively, must be strictly construed against Plaintiffs, *Farris*, 10 A.D.3d at 709, 782 N.Y.S.2d at 283, and that the phrase "commercial activities" must be interpreted in light of the specific examples given in the covenant.

Instead of addressing the merits of the claim, Plaintiffs address only the preliminary issue of their standing to assert claims under the Commercial Enterprises Covenant. *See* Opp. at 43-45. This point is legally irrelevant because Plaintiffs claims cannot succeed on the merits. In any event, Plaintiffs' standing argument cannot be squared with the language of the covenants. The Commercial Enterprises Covenant names no specific group of intended beneficiaries and only proscribes certain activities incompatible with the grantor's vision of land put to "municipal uses and purposes and for recreational facilities." In direct contrast is the ODO Covenant, which specifically prohibits activities that would be offensive, dangerous, or obnoxious "to the owners or any owner (now or hereafter) of land within a radius of one mile of the premises[.]" The Commercial Enterprises Covenant may incidentally benefit all members of the public, but only the ODO Covenant is intended to benefit a specific group of neighbors and thus only the ODO Covenant affords Plaintiffs the standing to sue. Plaintiffs cannot bootstrap their status as intended beneficiaries of the latter covenant into a right to enforce the former. *See* Br. at 38-39.

Plaintiffs have not shown how they are harmed by the Wireless Defendants' supposed "commercial" use of the Property any more than any other member of the public.[8]   They therefore lack standing to enforce the terms of that covenant.

### III.   PLAINTIFFS' SECTION 1983 DUE PROCESS CLAIM FAILS AS A MATTER OF LAW

Plaintiffs' Section 1983 claim fails as a matter of law because, *inter alia*, their Complaint does not sufficiently allege what process they are claiming was due or how that process was denied.  *See* Br. at 42-47.  While their Opposition could not cure these pleading deficiencies, *see* n.7 *supra*, the Opposition serves to confirm that Plaintiffs have not stated a Section 1983 claim.  Plaintiffs state that their constitutional rights were allegedly violated "[s]ubsequent to, and by reason of, the State trial Court[']s determination in *Perrin*" because, since that 2008 decision, the Village has allegedly adopted a "new policy" under which the Village is "free to authorize the installation of any" FCC-compliant equipment even if it violates a restriction in the Deed.[9]  Plaintiffs contend that the existence of this "new policy" is confirmed by the preemption arguments being made in this case.  *See* Opp. at 23.

---

[8]    Plaintiffs' attempt to retroactively insert a noise violation claim into the Complaint gets them no further vis-à-vis the Commercial Enterprises Covenant.  Once again, New York law requires that covenant be read narrowly.  *See Farris*, 10 A.D.3d at 709, 782 N.Y.S.2d at 283.  Nothing in the Commercial Enterprises Covenant signals an intent to give neighboring landowners any particular rights; rather, that Covenant is directed solely at preserving a park atmosphere for the benefit of the Village generally (and park-goers specifically).  Plaintiffs here have not pled any interest whatsoever as park-goers, but only as neighbors of the park, and their complaints about noise as neighbors therefore do not fit within the Commercial Enterprise Covenant's protections.

[9]    *See* Opp. at 23.  In response to the Wireless Defendants' argument that Plaintiffs' claims are time-barred because they failed to comply with the notice of claim provisions codified at N.Y. C.P.L.R. § 9802, Plaintiffs' Opposition contends that the Village should be estopped from insisting on compliance with this provision because the Village allegedly failed to provide Plaintiffs with proper notice prior to granting the Wireless Defendants' permits.  *See* Opp. at 34-36.  While this argument fails for the reasons set forth in Part IV *infra*, it is important to distinguish this estoppel argument from Plaintiffs' Section 1983 claim.

First, the Deed does not prohibit the Wireless' Defendants' use of the property for the reasons previously discussed. *See* Parts I.A & II *supra*; *see also* Br. at Part II.A.2 & II.B.2. Therefore, Plaintiffs have not been deprived of any right protected by Section 1983.

Second, there is no plausible basis for Plaintiffs' argument that the Village has adopted a "new policy" under which the Village has determined that, post-*Perrin I*, federal preemption principles require the Village to permit the installation of any FCC-compliant equipment on the Property. As discussed in Part I.C *supra*, the Wireless Defendants have not taken the position that federal preemption bars enforcement of any and all violations of the Deed. Rather, preemption bars the *claims presented in this action* because they seek to have a court determine as a matter of New York law that RF emissions are offensive, dangerous, or obnoxious. In short, Plaintiffs' Section 1983 claim does not cross the threshold plausibility requirement set forth in Fed. R. Civ. P. 8 and applicable case law. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); Br. at 42.

Third, Plaintiffs' argument shows conclusively that they are simply attempting to use Section 1983 as a vehicle for asking this Court to overturn the New York state courts' decisions in *Perrin*, which they contend are in conflict with *Mills*. *See* Opp. at 23-24. However, this is a form of relief that is barred by the *Rooker-Feldman* doctrine. *See* Br. at 46. A federal district court cannot review the propriety *vel non* of *Perrin*.[10]

---

[10] The Wireless Defendants previously showed that Plaintiffs' Section 1983 claim is barred by the 3-year limitation period codified at N.Y. C.P.L.R. § 214(5). *See* Br. at 16. In their Opposition, Plaintiffs argue only that the 1-year or 18-month limitation period codified at N.Y. C.P.L.R. § 9802 does not apply to their Section 1983 claim, s*ee* Opp. at 32-33, which offers no response to the Wireless Defendants' argument. Any of Plaintiffs' claims that rely on a supposed lack of notice or lack of process in granting rights to erect the antennas are thus barred. The Plaintiffs' novel claim that *Perrin I* somehow deprived them of their civil rights would not be time-barred, though it fails for numerous other reasons.

## IV.    PLAINTIFFS ERR IN CONTENDING THAT COUNT I IS TIMELY

Under Count I, Plaintiffs allege that the "Village exceeded its authority by granting the . . . defendants licenses to use the property." Compl. ¶ 112. Plaintiffs' Complaint shows that this claim is untimely because the Village entered into agreements and granted the Wireless Defendants permits to use the Property many years ago. *See* Br. at 8-15.

Plaintiffs now raise a threshold argument in response to two of three time-bar arguments the Wireless Defendants raised regarding Count I—namely, N.Y. R.P.A.P.L. § 2001 and N.Y. C.P.L.R. § 213. Plaintiffs contend that these two provisions do not bar their claims because this case involves a "continuing wrong" for which the limitations period commences anew each day. *See* Opp. at 29-30, 32. While New York courts have applied the continuing wrong doctrine in certain limited circumstances, such as the landlord–tenant and trespass cases that Plaintiffs primarily rely on, *see id.* at 30, Plaintiffs err in claiming that the doctrine applies here.[11] Indeed, R.P.A.P.L. § 2001 is specifically designed to eliminate any possibility that the continuing wrong doctrine could be applied in cases like this.

Plaintiffs' continuing harms argument would require this Court to conclude that violations of restrictive covenants involving structures are never subject to time-bar limits, as such structures obviously continue to exist indefinitely. New York cases have already rejected this application of the "continuing wrong" argument. *See, e.g.*, *Greco v. Inc. Vill. of Freeport*, 223 A.D.2d 674, 637 N.Y.S.2d 191 (2d Dep't 1996). In *Greco*, a landowner built certain

---

[11]    One of the main cases Plaintiffs cite for their continuing wrong argument, *see id.* at 29 (citing *Tinker v. Abrams*, 640 F. Supp. 229 (S.D.N.Y. 1986), held that the doctrine did not apply in that action because "New York has not extended the continuing" wrong doctrine to the particular type of claims at issue there. *Tinker*, 640 F.Supp. at 231. Even "[t]hough plaintiff cites examples of the application of the continuing wrong theory by New York courts in trespass actions, the Court has been directed to no authority for the proposition that conduct of the type complained of here would be so treated." *Id.* at 232. So too here. Plaintiffs have not shown that

structures on property pursuant to an authorization granted by a village. Like Plaintiffs here, the *Greco* plaintiffs responded to the defendant's time-bar argument by "alleging that the claims asserted in the complaint against the Village arise from the wrongful issuance of building permits . . . and that the wrongful issuance of building permits constitutes a 'continuing wrong.'" *Id.* at 674, 637 N.Y.S.2d at 192. However, the Second Department rejected this argument, holding that "[a] cause of action involving the wrongful issuance of a building permit accrues when the permit is issued and does not constitute a continuing wrong." *Id.* (citations omitted). The *Greco* court's rejection of the type of "continuing wrong" argument offered by Plaintiffs is consistent with numerous other New York authorities.[12]

Moreover, *Greco* rejects the argument that the construction and operation of facilities pursuant to and subsequent to a village's authorization are themselves continuing wrongs or otherwise re-start the accrual date. Indeed, Plaintiffs' "continuing harm" theory ignores the line New York courts have drawn between an allegedly wrongful originating act (which, in this case, would allegedly be the Village's decision to authorize the Wireless Defendants' facilities) and the continuing, perhaps daily, effects of that act. *Greco* held that the argument that the "erection of stop signs, construction of additional boat slips, and valet parking constitute continuing wrongs is not persuasive as a distinction must be drawn 'between the originating wrongful act and the continuing, perhaps perpetual, adverse consequences of the wrongful act.'" *Id.* at 674-

New York courts would apply the continuing harm doctrine to cases where a village permits the construction and use of facilities allegedly in violation of a restrictive covenant.

[12]    *See, e.g.*, *Kaufman v. Village of Mamaroneck*, 286 A.D.2d 666, 667, 729 N.Y.S.2d 778, 779 (2 Dep't 2001) ("a cause of action involving the issuance of a building permit accrues when the permit is issued and <u>does not constitute a continuing wrong</u>" (emphasis added)); *see also Letourneau v. Town of Berne*, 56 A.D.3d 880, 881, 866 N.Y.S.2d 462, 463 (3d Dep't 2008); *Mandel v. Estate of Tiffany*, 263 A.D.2d 827, 829, 693 N.Y.S.2d 759, 761 (3d Dep't 1999) (cutting of trees, triggering erosion, which resulted in landslide six years later, held not to be a continuous trespass).

75, 637 N.Y.S.2d at 192 (quoting *Jensen v. Gen. Elec. Co.*, 82 N.Y.2d 77, 89, 603 N.Y.S.2d 420 (1993)).  Thus, as *Greco*'s holding makes clear, the fact that the Wireless Defendants' facilities remain on the Property certainly has continuing effects, but this does not mean that a new cause of action accrues every day as Plaintiffs contend.[13]  Although the issue is not discussed explicitly, the New York cases cited in the Wireless Defendants' brief show that a continuing wrong theory cannot apply to Plaintiffs' claims because these cases apply time limits to alleged violations of restrictive covenants.[14]

Indeed, as the legislative history relied on by Plaintiffs shows, R.P.A.P.L. § 2001 was specifically drafted to eliminate the possibility that a continuing harms theory could be applied in cases like this.[15]  Such a theory is foreclosed by R.P.A.P.L. § 2001 as it specifically imposes a time limit on seeking the removal of existing structures.

---

[13]     *Accord Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) ("A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation."); *see also Roth v. Syracuse Hous. Auth.*, No 2001-5404, 2002 WL 31962630, at *10 (N.Y. Sup. Ct. July 17, 2002) ("When a governmental entity either allegedly wrongfully refuses to issue a permit or certificate or allegedly improperly revokes a permit or certificate, there is no continuing tort even though damages continue to accrue due to the governmental entity's decision."); *Quinn v. County of Nassau*, 162 A.D.2d 514, 514 556 N.Y.S.2d 712, 713 (2d Dep't 1990) ("[C]ontrary to the plaintiff's contentions, the alleged tortious conduct of which he complains cannot be construed as a 'continuing' series of wrongs. The relevant claim accrual date does not change merely because continuing consequential damages are alleged." (citation omitted)).

[14]     *See, e.g.*, *Bodouva v. Ross*, 246 A.D.2d 617, 667 N.Y.S.2d 306 (2d Dep't 1998) (applying R.P.A.P.L. § 2001 in an action to enforce a restrictive covenant); *see also, e.g.*, *City of New York v. Delafield 246 Corp.*, 236 A.D.2d 11, 27, 662 N.Y.S.2d 286, 296 (1st Dep't 1997) (applying C.P.L.R. § 213 in an action seeking to enforce an affirmative covenant).  Moreover, the *Greco* case rejected the continuing harms argument in the context of applying R.P.A.P.L. § 9802, which is the third time-bar arguments raised regarding Count I.

[15]     *See* Opp. at Ex. R, at 345-46 (stating that equitable doctrines generally limit the enforcement of restrictions for the purpose of removing structures after they have been erected, but noting that the "continuing wrong" theory creates some uncertainty about this, so the Law Review Commission considered R.P.A.P.L. § 2001's deemed release provision necessary to provide assurance that the structures could not be removed after two years).

Plaintiffs present a number of other arguments that are specific to particular time-bar provisions. Each of those arguments is erroneous, for the reasons discussed below.

**N.Y. C.P.L.R. § 9802**. Plaintiffs' claims must be dismissed because they failed to plead compliance with the one-year or eighteen-month notice of claim provision codified at C.P.L.R. § 9802. *See* Br. at 12-14. Plaintiffs' attempt to justify their non-compliance with this mandatory requirement is unavailing. First, Plaintiffs' argument that this provision does not apply because they are bringing a Section 1983 action, *see* Opp. at 32-33, is irrelevant. C.P.L.R. § 9802 bars their state law claims under Count I—not their Section 1983 claim. *See* Br. at 12-14

Second, while Plaintiffs argue that C.P.L.R. § 9802 is not applicable to declaratory judgment actions or to "claims for injunctive relief with no claim for monetary damages, such as the matter at bar," *see* Opp. at 33 (citing *Gignoux v. Village of Kings Point*, 85 N.Y.S.2d 675 (N.Y. Sup. Ct. 1948) and *Pansmith v. Village of Island Park*, 188 Misc. 1052, 68 N.Y.S.2d 694 (N.Y. Sup. Ct. 1947)), Plaintiffs' argument is based on two 1940s trial court decisions that have been limited by subsequent decisions. *See Genesee Brewing Co., Inc. v. Village of Sodus Point*, 482 N.Y.S.2d 693, 699 (N.Y. Sup. Ct. 1984) (limiting *Pansmith* based on "appellate authority which suggests that exceptions from the notice of claim requirements should be limited only to those instances in which compliance would prevent obtaining the relief required because of the immediacy the relief warranted"), *aff'd*, 115 A.D.2d 313, N.Y.S.2d 720 (4th Dep't 1985). More recent cases analyzing C.P.L.R. § 9802 have held that the statute *does* apply to actions seeking equitable relief (including declaratory and injunctive relief), because "[t]he 'no other action'

language contained in CPLR 9802 permits no exceptions."[16]  In sum, because Plaintiffs failed to plead compliance with C.P.L.R. § 9802, their claims must be dismissed.

Third, Plaintiffs argue that the defendants should be estopped from raising C.P.L.R. § 9802 because the Village allegedly failed to ensure compliance with the notice requirement of Bayville Village Code § 80-131.  *See* Opp. at 34-36.  But the notice provision Plaintiffs cite does not apply to the facilities at issue.   These notice provisions do not apply when telecommunications equipment is being collocated on an existing structure.  *See* Bayville Village Code § 80-131 ("There shall be no public hearing required for an application to collocate on an existing wireless telecommunications facility or other structure[.]").  Under Village law, the Water Tower is an existing structure for collocation purposes.[17]

Indeed, even if collocating were defined more narrowly as the placement of an antenna on a structure with pre-existing antennas, the facilities at issue here would still be covered.  Bayville Village Code § 80-131 was enacted in 2002 and does not apply to pre-existing communications facilities.  *See id.* § 80-130(B).  Here, Plaintiffs do no dispute that antennas were in place on the Water Tower prior to 2002.[18]  Any antennas placed on the Water Tower

---

[16]     *Solow v. Liebman*, 175 A.D.2d 867, 868, 573 N.Y.S.2d 710, 711 (2d Dep't 1991) (applying C.P.L.R. § 9802 to plaintiff's claim for "monetary damages and an injunction" and rejecting the plaintiff's argument that "since he requested only equitable relief, no notice of claim was required").  *Greco*, 223 A.D.2d at 674, 637 N.Y.S.2d at 192 (holding "[t]he plaintiffs' claim that no notice is required when equitable relief is sought is not tenable.").

[17]     *See* Bayville Village Code § 80-117 (defining "collocation" as "[t]he use of a wireless telecommunications facility or other structure to support Antennas for the provision of wireless services without increasing the height of such facility or other structure"); *see also id.* (defining "wireless telecommunications facilities" as, in relevant part, "a structure, facility or location . . . used to support, antennas or other transmitting or receiving devices").

[18]     *See* Opp. at 5 (discussing the existence of one or more pre-2000 antennas); *see also id.* at Exh. D (discussing multiple antennas on the Water Tower in 1998).

-17-

after the Village enacted the notice provision would also be exempt because they would be collocated with those existing antennas.

Plaintiffs' argument is also contrary to the general rule that "estoppel is not applicable to municipalities acting in a governmental capacity." *Concerned Port Residents Comm. v. Inc. Vill. of Sands Point*, 291 A.D.2d 494, 495, 739 N.Y.S.2d 162, 163 (2d Dep't 2002). While the Village's decision to enter into the *agreements* with the Wireless Defendants was made in its proprietary capacity as owner of the Property, any decision by the Village regarding the issuance of *permits* would have been a governmental decision, and neither Plaintiffs' Complaint nor their Opposition have shown that the exceptional circumstances necessary to apply estoppel against a governmental action have been met.[19]

**N.Y. C.P.L.R. § 213.** Plaintiffs contend that their claims are not barred by C.P.L.R. § 213's six-year statute of limitation because "the equipment at issue was installed between 2007 and 2009." Opp. at 32. As discussed, Plaintiffs err as a matter of law. C.P.L.R. § 213's limitation period—unlike R.P.A.P.L. § 2001—runs from the date the agreements were executed and the Village permitted the Wireless Defendants to use the property; not from the date the antennas went up. *See* Br. at 14-15; *see also Kaufman*, 286 A.D.2d at 667, 729 N.Y.S.2d at 779. Since the agreements were attached to the Complaint, they can be relied on by the Court. There is thus no dispute that claims relating to the agreements entered into more than six years prior to the Complaint are barred. *See* Br. at 14-15 & nn.13-14.

---

[19]    *See Concerned Port Residents*, 291 A.D.2d at 495, 739 N.Y.S.2d at 163 ("Only a showing of fraud, misrepresentation, deception, or similar affirmative misconduct, along with reasonable reliance thereon, will justify the imposition of estoppel." (quotation marks omitted)). Moreover, Plaintiffs' suggestion that estoppel should apply because of the statements of a former mayor of Bayville in a 1998 newspaper article, *see* Opp. at 34; *id.* at Ex. D, at 5, is without merit. The statement in this article are neither an authoritative nor accurate interpretation of the Deed.

-18-

**N.Y. R.P.A.P.L. § 2001.**  Plaintiffs' claim that R.P.A.P.L § 2001 does not apply in this case is based on an erroneous distinction between covenants that restrict how a property can be used and covenants that restrict the physical attributes of the structures that may be built on property.  *See* Opp. at 25-29.  Plaintiffs' suggested reading of R.P.A.P.L. § 2001 is foreclosed by the New York authorities cited in the Wireless Defendants' opening brief, including *J.B. Realty* and *Ram Island*.[20]  Plaintiffs make no effort to reconcile their proposed reading with these authorities.  Nor could they.  *J.B. Realty* dealt with the same type of "use" restriction that, under Plaintiffs' theory, would render R.P.A.P.L. § 2001 inapplicable.  *J.B. Realty*, 270 A.D.2d at 774, 704 N.Y.S.2d at 745-46.  However, *J.B. Realty* held that R.P.A.P.L. § 2001 applied because the plaintiffs were seeking to have structures removed pursuant to the use restriction.  *See id.* at 774, 704 N.Y.S.2d at 746.  Thus, the proper reading of R.P.A.P.L. § 2001 is that the statute applies whenever plaintiffs are seeking the removal of a structure based on an alleged violation of a covenant.  *See* Br. at 9-12 & n.9.[21]

Finally, the accrual date for R.P.A.P.L. § 2001's two-year limitation is different from the accrual dates for the other time-bar provisions discussed above because it runs from the date the antennas were completed.  *See* Br. at 11 n.10.[22]  The Wireless Defendants included affidavits with their motion describing in detail the replacement of certain antennas in 2009, which

---

[20]    *J.B. Realty Enter. Corp. v. City of Saratoga Springs*, 270 A.D.2d 771, 704 N.Y.S.2d 742 (3d Dep't 2000); *Ram Island Homeowners Ass'n v. Hathaway Realty*, 305 A.D.2d 390, 758 N.Y.S.2d 522 (2d Dep't 2003).

[21]    Moreover, Plaintiffs characterization of the Deed as only imposing a "use" restriction is erroneous.  The portion of the Deed covering the Property at issue here states that "no buildings shall be erected thereon" and then goes on to include the ODO and Commercial Enterprises Covenants as additional restrictions.  *See* Deed (appended to Opposition as Ex. C).

[22]    Thus, the Wireless Defendants noted that the Court's adjudication of this one time-bar argument may require it to consider facts or documents that go beyond the scope of the Complaint even though there are 12(b)(6) grounds for granting our motion.  Br. at 11 n.10.

demonstrate that this replacement did not restart the accrual date because the substitution did not "'creat[e] a different or more extension violation.'"  Br. at 12 n.11 (quoting R.P.A.P.L. § 2001). For all of the reasons set forth above, the Court need not reach this issue to grant Wireless Defendants' motion; there are multiple independent bases for dismissing this Complaint as a matter of law without ever reaching any factual issues.  However, to the extent that the Court wishes to convert the instant motion into one for summary judgment, it is clear that Plaintiffs' conclusory allegations about the replacement antennas being "larger" and thus restarting the accrual period would be insufficient to raise a genuine question of fact.  *See, e.g.*, *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (to survive summary judgment, "[t]he non-moving party may not rely on conclusory allegations or unsubstantiated speculation.").[23]

## CONCLUSION

For the foregoing reasons, the Wireless Defendants respectfully ask the Court to grant their motion and dismiss this action in its entirety and with prejudice.


Respectfully submitted,

---

[23]    Plaintiffs also contend in passing that R.P.A.P.L. § 2001 does not apply to the structures at issue here because Plaintiffs characterize the antennas as "temporary equipment" and contend that R.P.A.P.L. § 2001 only applies to "permanent structures."  Opp. at 27-28.  The distinction Plaintiffs attempt to draw finds no support in the law.  R.P.A.P.L. § 2001 applies to all "structures" and there is no basis for concluding that the Wireless Defendants' antennas and associated equipment located on the Property are not structures.  Moreover, Plaintiffs' theory would require courts to engage in a novel and unworkable exercise of discerning the "permanency" of structures which no Court applying R.P.A.P.L. § 2001 has found to be required or authorized by that provision.

_____/s/   Alfred Amato_____
Alfred L. Amato (AA 2354)
Richard S. Keenan (RK 2182)
Amato Law Group, PLLC
666 Old Country Road, Suite 901
Garden City, New York 11530
(516) 227-6363
*Attorneys for Defendant New York SMSA*
*Limited Partnership d/b/a Verizon Wireless*

_____/s/ Joshua Turner_____
Joshua S. Turner (*pro hac vice* JT 5778)
Brendan T. Carr (*pro hac vice* BC 3689)
Brendan J. Morrissey (*pro hac vice* BM 8800)
Wiley Rein LLP
1776 K Street, N.W.
Washington, DC 20006
(202) 719-4807
*Attorneys for Defendant New York SMSA*
*Limited Partnership d/b/a Verizon Wireless*

_____/s/   John Coughlin_____
John J. Coughlin (JC 2700)
Ré, Nielsen, Huber & Coughlin, LLP
36 North New York Avenue
Huntington, NY 11743
(631) 425-4100
*Attorney for Defendant Sprint Spectrum Realty*
*Company, L.P. as successor-in-interest to*
*Sprint Spectrum, L.P., and for Nextel of New*
*York d/b/a  Nextel Communications*

_____/s/ A. Ross Pearlson_____
A. Ross Pearlson (ARP 1277)
Sills Cummis Epstein & Gross, PC
One Riverfront Plaza
Newark, NJ 07102
(973) 643-7000
*Attorney for T-Mobile Northeast LLC, the*
*successor-in-interest to Omnipoint Facilities*
*Network 2, LLC*

August 20, 2010