# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

№ 10-CV-0094 (JFB)(ETB)

---

THOMAS HOY AND ELKE HOY,

Plaintiffs,

VERSUS

THE INCORPORATED VILLAGE OF BAYVILLE, ET AL.,

Defendants.

---

**MEMORANDUM AND ORDER**
February 25, 2011

---

JOSEPH F. BIANCO, District Judge:

On January 11, 2010, plaintiffs Thomas Hoy and Elke Hoy (hereinafter "plaintiffs" or the "Hoys") brought this action against defendants New York SMSA Limited Partnership doing business as ("d/b/a") Verizon Wireless, Nextel of New York d/b/a Nextel Communications, T-Mobile Northeast LLC, as successor in interest to Omnipoint Facilities Network 2, LLC d/b/a T-Mobile, Sprint Spectrum Realty Company, L.P., as successor in interest to Sprint Spectrum, L.P. (collectively the "Wireless Defendants"), and the Incorporated Village of Bayville (hereinafter "Village" or "Village Defendant") (collectively "defendants") to enforce restrictive covenants in a deed that ran with the property—located on Schoolhouse Road in Bayville, New York—that was conveyed to the Village in 1950. In particular, the lawsuit alleges that an "Antenna Farm" consisting of more than fifty antennas on the water tower located on that property—which are owned, operated, and maintained by the Wireless Defendants, pursuant to a lease with the Village—violates the restrictive covenants in the deed conveyed to the Village.

In this lawsuit, plaintiffs (1) seek a declaratory judgment that the restrictive covenants, prohibiting the conveyed property from being put to commercial uses or uses found to be "offensive, dangerous or obnoxious" to property owners within one mile of the property, were violated based upon Wireless Defendants' use of the property and the Village Defendant granting licenses to the Wireless Defendants to install and maintain antenna structures on the property, and (2) claim that they were deprived of procedural due process in violation of the Fourteenth

Amendment and 42 U.S.C. § 1983 in connection with the Village's decision to allow the use of the property in this manner. In connection with these claims, plaintiffs seek, *inter alia*, an injunction ordering the removal of the Wireless Defendants' antenna structures.

Presently before the Court is the defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Court grants in part and denies in part defendants' motion. As a threshold matter, plaintiffs have abandoned any claim based upon alleged radiofrequency ("RF") emissions from the antennas. Specifically, with respect to Count I, the Court concludes that (1) plaintiffs have provided sufficient allegations in the complaint to state a plausible claim against the defendants that the alleged problems with noise associated with antennas (which plaintiffs describe in their opposition papers as "power-plant like sounds") violates the covenant in the deed regarding "offensive, dangerous or obnoxious" uses of the property, and (2) plaintiffs lack standing to assert a claim based upon the "commercial enterprises" covenant in the deed. With respect to Count II, in which the plaintiffs assert that they have been deprived of their Fourteenth Amendment due process rights, the Court finds that plaintiffs' conclusory due process allegations cannot survive a motion to dismiss. However, the Court will grant plaintiffs leave to replead this claim to attempt to correct these pleading defects.

I. BACKGROUND

A. Facts

The following facts are taken from the complaint ("Compl.") and are not findings of fact by the Court. Instead, the Court will assume the facts in the complaint to be true and, for purposes of the pending 12(b)(6) motion to dismiss, will construe them in a light most favorable to plaintiff, the non-moving party.

Plaintiffs reside at, and are the fee owners of the real property at, 24 Cat Hollow Road, Bayville, New York. (Compl. ¶¶ 35-36, 71.) The Village Defendant is a municipal corporation duly organized and existing under the laws of the State of New York. (*Id*. ¶ 38.) The Wireless Defendants own, operate and maintain cellular and/or RF antennas[2] within the State of New York. (*Id*. ¶¶ 40, 43, 46.)

In 1950, the owner of real property situated on Schoolhouse Road (the "Property"), Ms. Mona Williams (the "Grantor"), granted and conveyed title to the Property to the Village Defendant. (*Id*. ¶¶ 47-48.) The Village Defendant covenanted and agreed, for itself, its successors and assigns, that the Property be held subject to the conditions set forth within the deed that:

---

[1] The Wireless Defendants filed their motion to dismiss on May 24, 2010. The Village Defendant's motion was filed the same day and contained only one argument, concerning plaintiffs' Section 1983 procedural due process claim, and otherwise adopted and incorporated by reference the Wireless Defendants' motion in its entirety. Thus, unless otherwise indicated, all references and citations to defendants' motion to dismiss refer to the Wireless Defendants' motion.

[2] Although the plural for the word "antenna" can be either "antennas" or "antennae," the Court will use the term "antennas" throughout this Memorandum and Order for purposes of consistency.

2

[The Property] shall be used for municipal uses and purposes and for recreational facilities for use by the People of Bayville, but no public amusements, concessions, vending, restaurants or other commercial enterprises shall be permitted thereon, and, in addition, no use of the premises shall be made or permitted which would be offensive, dangerous or obnoxious to the owners or any owner (now or hereafter) of land within a radius of one mile of the premises whether by reason of smoke, odor, fumes or any other use whatsoever offensive to such owners or owner of land.

(*Id.* ¶¶ 49, 75, Ex. A, ¶ 2.)

According to the complaint, the conditions set forth within the deed became covenants running with the land, which vested property rights to the owners of properties within one mile radius of the Property. (*Id.* ¶¶ 50, 76.) At all relevant times, plaintiffs have lived within one-quarter mile of the Property. (*Id.* ¶ 37.) After the Property was deeded to the Village Defendant by the Grantor, as expressly provided within the deed, the Village Defendant caused a public water tower to be constructed on the Property. (*Id.* ¶ 52.)

According to the complaint, the Village Defendant breached the restrictive covenants by granting licenses to the Wireless Defendants to install and maintain more than fifty antennas (the "Antenna Farm") on the water tower and, thus, permitted the Property to be used for commercial purposes. (*Id.* ¶¶ 7, 54-55, 62-70.) Each antenna within the Antenna Farm is owned, operated and maintained by the Wireless Defendants as part of a commercial enterprise. (*Id.* ¶¶ 56-57.) Plaintiffs allege that the use of the Property as an Antenna Farm is both offensive and obnoxious, including that the more than fifty antennas are visually and aesthetically offensive, obnoxious and contrary to the character and appearance of the neighborhood. (*Id.* ¶ 8, 77, 82, 84, 105.) The defendants were aware of the restrictive covenants at the time they entered into the respective licensing agreements, and the Village Defendant has a contractual right to terminate each agreement in the event "it is determined to be beyond the authority of the [Village]" to grant such license. (*Id.* ¶ 86-87, 90-99.)

The Antenna Farm is situated fifty feet from an elementary school (the "Bayville School") and the complaint asserts that (1) according to a licensed health practitioner located in Bayville, the rate of cancer and/or leukemia is allegedly almost four-hundred percent higher in the Village of Bayville than in the rest of the New York State, (2) "[u]pon information and belief, as many as 30% of the teachers and staff in the Bayville elementary school have been diagnosed with cancer or leukemia." (*Id.* ¶¶ 12, 13, 53, 58-60.)

In 2007, four residents, referencing the restrictive covenants within the deed, brought an Article 78 proceeding in New York State Supreme Court, *Perrin v. Bayville Village Board et al.*, No. 9468-07/a, 2008 WL 4124110 (N.Y. Sup. Aug. 10, 2008), to challenge the decision by the Village to install police antennas on the water tower. (*Id.* ¶¶ 16, 19.) Plaintiffs were not parties to that action but learned of it after it was filed. (*Id.* ¶ 17.)

B. Procedural History

On January 11, 2010, plaintiffs filed the instant action. On May 24, 2010, defendants

3

moved to dismiss as to all claims. Plaintiffs filed their opposition on July 23, 2010. Defendants filed their reply on August 20, 2010. Oral argument was held on September 14, 2010. This matter is fully submitted and the Court has considered all the submissions of the parties.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. --- U.S. ----, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

III. DISCUSSION

As an initial matter, the Court cannot consider defendants' or plaintiffs' evidentiary submissions in deciding the instant motion to dismiss.[3] In adjudicating a motion under Rule 12(b)(6), the Court may consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and vacated in part on other*

---

[3] As discussed *infra*, affidavits were submitted on behalf of the defendants and plaintiffs concerning, *inter alia*, the nature of the replacement of certain antennas allegedly installed through the end of 2009.

4

*grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71 (2006); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (in deciding a motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint."); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim"); *Brodeur v. City of N.Y.*, 04-CV-1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (stating court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss). Here, defendants' affidavits are not referred to in the complaint, nor are they integral to the complaint. *See Coggins v. County of Nassau*, No. 07-CV-3624(JFB)(AKT), 2008 WL 2522501, at *6-7 (E.D.N.Y. June 20, 2008). The Court, in its discretion, also declines to convert the instant motion into a motion for summary judgment. "Federal courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment." *Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (citations omitted). Given the nature of the claims and allegations in this particular lawsuit, the Court concludes that plaintiffs in this action are entitled to discovery before having to oppose a motion for summary judgment, and thus conversion of the motion is unwarranted.

Plaintiffs seek, *inter alia*, a declaratory judgment that the restrictive covenants—namely, (1) the covenant that prohibits the conveyed property from being used for "public amusements, concessions, vending, restaurants or other commercial enterprises" (hereinafter the "CE Covenant"), and (2) the covenant that prohibits uses found to be "offensive, dangerous or obnoxious to the owners or any owner (now or hereafter) of land within a radius of one mile of the premises whether by reason of smoke, odor, fumes or any other use whatsoever offensive to such owners or owner of land (hereinafter the "ODO Covenant")—were violated by the Wireless Defendants' use of the Property, and the Village Defendant granting licenses to the Wireless Defendants to install and maintain antenna structures on the Property. Plaintiffs also assert that they have been deprived of their procedural due process rights under the Fourteenth Amendment. In connection with this claim, plaintiffs seek, *inter alia*, an injunction ordering the removal of the Wireless Defendants' antenna structures.

Defendants contend that plaintiffs have failed to state a claim because: (1) the claims under the ODO Covenant are barred by the doctrine of collateral estoppel and are preempted under federal law; (2) the claims are barred by applicable limitations periods; (3) the Wireless Defendants' conduct cannot violate the ODO Covenant as a matter of law; (4) the Plaintiffs' lack standing to enforce the CE Covenant; and (5) the Section 1983 due process claim fails as a matter of law. As set forth below, the Court grants the motion in part and denies it in part. The Court addresses each issue in turn.

5

### A. The Collateral Estoppel Issue[4]

Defendants argue that the doctrine of collateral estoppel prevents the plaintiffs from relitigating issues decided in the *Perrin* actions. (Defs.' Mem. of Law at 17-21.) Specifically, defendants assert that plaintiffs' ODO claim is based upon the assertion that the ODO Covenant was violated by the placement of the RF-emitting antennas on the Water Tower, and that federal law does not preempt state law on this question—even though both issues were litigated and decided in a prior state court action involving the same Village Property.

In *Perrin v. Bayville Village Board*, No. 9468-07/a, 2008 WL 4124110 (N.Y. Sup. Ct. August 10, 2008) ("*Perrin I*"), petitioners, who like the Hoys lived within one mile radius of the Property, brought an Article 78 action in Nassau Supreme Court challenging two resolutions of the Bayville Village Board that authorized the Board to enter into license agreements with Nassau County permitting, *inter alia*, the installation of antennae on the water tower for use by the Nassau County Police Department. Petitioners contended that the RF emissions from the antennas violated the same deed and the same ODO covenant at issue here. In particular, petitioners argued that the RF emissions from the antennas would pose substantial health risks, and thus the installation of the antennas would be "offensive, dangerous or obnoxious" to them. *Perrin I*, 2008 WL 4124110, at *3. The court gave the FCC an opportunity to be heard on the matter and the court found that plaintiffs' claim failed because, in order to find that the ODO covenant was breached, the court would have to find that the RF emissions were harmful to residents within a one-mile radius, and this would conflict with federal law. *Perrin I*, 2008 WL 4124110, at *5 ("Giving appropriate weight to the opinion of the FCC, this Court cannot properly sustain petitioners' claim. In order to find that the Restrictive Covenant was breached . . . this Court would have to find that the incremental or cumulative RFR emissions resulting from the installation . . . would be harmful to residents within a one-mile radius of the Water Tower. . . . a finding that [] would directly conflict with federal RFR testing and emission standards.")

On appeal, in *Perrin v. Bayville Village Board*, 70 A.D.3d 835 (N.Y. App. Div. 2d Dep't. 2010) ("*Perrin II*"), the Second Department affirmed *Perrin I* and held that the Nassau County Supreme Court "should have included a provision declaring that the proposed installation of the antennae would not violate the restrictive covenant." *Perrin II*, 70 A.D.3d at 838. For the reasons that follow, the Court concludes that the doctrine of collateral estoppel does not bar plaintiffs' claim that the defendants violated the ODO Covenant.

### 1. Applicable Standard

A court may dismiss a claim on *res judicata* or collateral estoppel grounds on a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment. *See Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (affirming dismissal of claims under Rule 12(b) on grounds of *res judicata*); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.1992); *see also Wilson v. Ltd. Brands*, No. 08 CV 3431(LAP), 2009 WL 1069165, at *4 (S.D.N.Y. Apr. 17, 2009) (granting

---

[4] At oral argument and in papers, the defendants argue that the *Perrin* actions and the doctrine of collateral estoppel should only apply to plaintiffs' claim that the defendants violated the ODO Covenant. (Wireless Defs.' Reply at 5 n.2.) ("Defendants . . . have never argued that collateral estoppel should extend to any arguments on [the Commercial Enterprises] covenant.")

6

judgment on the pleadings based on collateral estoppel); *Jacobs v. Law Offices of Leonard N. Flamm*, No. 04 Civ. 7607, 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005) ("In cases where some of those factual allegations have been decided otherwise in previous litigation, however, a court may take judicial notice of those proceedings and find that plaintiffs are estopped from re-alleging those facts."); *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 372-73 (S.D.N.Y. 1999) ("A defense of res judicata may be tested by a motion pursuant to Rule 12(c)."); *Sassower v. Abrams*, 833 F. Supp. 253, 264 n. 18 (S.D.N.Y. 1993) ("[T]he defense of *res judicata* or collateral estoppel may be brought, under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment").

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state-court judgments the same preclusive effect as the judgment would have in the state from which it originated. *See* 28 U.S.C. § 1738 ("[J]udicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."); *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("We apply federal law in determining the preclusive effect of a federal judgment and New York law in determining the preclusive effect of a New York State court judgment ." (internal citations omitted)). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted); *accord Hoblock v. Albany Cty Bd. of Elections*, 422 F.3d 77, 94 (2d Cir. 2005).

"The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449 (1985)). Collateral estoppel generally does not include a requirement that the parties against whom plaintiffs litigated in the prior proceeding be the same parties they litigate against in the current proceeding. *See United States v. Mendoza*, 464 U.S. 154, 158, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984); *see also Amadasu v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450(LAK)(AJP), 2005 WL 121746, at *8 (S.D.N.Y. 2005) ("[T]he doctrine of collateral estoppel does not require that the same parties are named in the earlier action in order to apply to the instant action."). Additionally, a district court may raise the issue of collateral estoppel *sua sponte*. *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998).

2. Analysis

The requirements for collateral estoppel are not met here. First, the issue of plaintiffs' claim to the violation of the ODO Covenant was not necessarily decided in the *Perrin* actions. Specifically, as discussed *supra*, the *Perrin* actions determined that federal law preempts state law from holding that *RF emissions* are "offensive, dangerous or obnoxious" under the terms of the ODO Covenant and that RF emissions do not fall within the terms of the ODO Covenant as a matter of law. Here, although plaintiffs' complaint is peppered with references to health and safety regarding RF emissions, plaintiffs

7

made clear in their opposition papers and at oral argument that they are not asserting that the ODO Covenant was violated based upon RF emissions or their potential adverse health impact; rather, plaintiffs' claim is based upon the noise emanating from the antennas on the Property, and that the antennas are aesthetically offensive.[5] (*See* Pls.' Mem. in Opp. at 30, 40-41, 44; Compl. ¶ 82.) Issues of noise and/or aesthetics were not addressed or decided in the *Perrin* actions; rather, those decisions focused on RF emissions.

Furthermore, an additional requirement of collateral estoppel under New York law is that the issue be "decisive of the present action." *In re Hyman*, 502 F.3d at 65. The Second Circuit has defined this as meaning that the issue "would prove or disprove, without more, an essential element of any of the claims set forth in the complaint." *Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003). Here, the state courts' findings—regarding federal preemption and that RF emissions do not fall within the terms of the ODO Covenant—are not decisive to the challenges in the present action which are based upon the noise emanating from the Property and the aesthetically offensive nature of the antennas. In other words, in order to grant the plaintiffs relief, this Court is not required to make a judgment regarding the safety of RF emissions or that the emissions are "offensive, dangerous or obnoxious" in accordance with the ODO Covenant (a finding that would directly conflict with the federal law and the state court's decision). Thus, the requirements for collateral estoppel are not met because the identical issue was not necessarily decided in the *Perrin* actions and it is not decisive to the present action.[6]

In sum, plaintiffs have abandoned any claim regarding RF emissions, and the claims related to noise and aesthetics under the ODO Covenant are not collaterally estopped by the *Perrin* decisions. Accordingly, the motion to dismiss the claims on this ground is denied.[7]

---

[5] Plaintiffs broadly plead that the Property is being used in an obnoxious and offensive manner without explicitly referencing noise. (Compl. ¶¶ 8, 54, 77, 82, 84, 105.) However, the allegations specifically included aesthetics. (*See* Compl. ¶ 82 ("Each of the plaintiffs find that the use of the property as an antenna farm both offensive and obnoxious, in that the saturation of more than fifty (50) antennas upon the property is visually and aesthetically offensive, obnoxious and contrary to the character and appearance of their residence and is inconsistent with the general appearance of the residential neighborhood within which the plaintiffs' home is situated.").) Moreover, although the complaint did not explicitly reference noise, plaintiffs assert that noise issues are obviously within their general claim of offensive, dangerous, and obnoxious use, and the Court has liberally construed the claim in the complaint to include noise. However, as noted *supra*, plaintiffs are being granted leave to replead their Section 1983 claim, and may also add more specific allegations regarding noise in the amended complaint. In other words, in the first amended complaint, which shall be filed within thirty (30) days of this Memorandum and Order, plaintiffs may also supplement their allegations under the ODO Covenant to make clear that their allegations include noise issues.

[6] Accordingly, the Court need not address whether plaintiffs had a full and fair opportunity to litigate the issue in the *Perrin* action.

[7] Given that plaintiffs have abandoned any claim based upon RF emissions, defendants' preemption claim also must fail. More specifically, defendants argued that plaintiffs' claim that the defendants violated the ODO Covenant must be dismissed under the doctrines of field, conflict and express preemption because the claim was based on RF emissions. (Defs.' Mem. of Law at 24-36.) However, as discussed *supra*, plaintiffs narrowed their complaint and conceded that they are not

B.  Issue of Timeliness of Plaintiffs' Claims

Defendants contend that plaintiffs' claims are governed by various statutes of limitations. Specifically, defendants contend that Count I, which seeks a declaratory judgment that the Wireless Defendants' use of the Property violates the restrictive covenants, is time-barred by: (1) the two-year statutory provision under N.Y. Real Property Actions and Proceedings Law (hereinafter "R.P.A.P.L.") § 2001; (2) the one-year or eighteen-month provision under N.Y. C.P.L.R. § 9802; and (3) the six-year statute of limitations under N.Y. C.P.L.R. § 213. Defendants also argue that the Section 1983 claim is time-barred.  As set forth below, accepting the allegations in the complaint that the installation and maintenance of the antennas continued to the filing of the complaint in January 2010, the claims survive a motion to dismiss on timeliness grounds. Although defendants argue that all of the Wireless Defendants' antennas were completed far more than two years before plaintiffs brought this action, this argument is based upon factual information outside the pleadings which the Court cannot consider at the motion to dismiss stage, and the Court declines to convert this motion to a summary judgment motion at this juncture.

Under R.P.A.P.L. § 2001, an action "cannot be maintained unless it is commenced . . . before the expiration of two years from the completion of the structure concerned." N.Y. R.P.A.P.L. § 2001(2).[8]  Plaintiffs filed the instant action on January 10, 2010, and plaintiffs allege that a refurbishment, replacement and installation of new antennas occurred from 2007 through the end of 2009. For example, plaintiffs broadly plead that the defendants "continued to permit and authorize the installation and maintenance" of the antennas. (Compl. ¶ 104.)  Moreover, at oral argument and in their opposition papers, plaintiffs made clear that this allegation in the complaint is based upon their assertion that new antennas, larger and more numerous, were installed on the water tower through the end of 2009. (*See* Pls.' Opp. at 24 ("[T]he acts giving rise to both the claimed [restrictive covenant] violations, and the [Section 1983] claim, began in 2007 and continued through December 2009, and still continue at present."); *see also id.* at 9 ("Between 2007 and 2009, the defendants installed []a plethora of antennas"); *accord id.* at 23 ("[T]he Village has granted permission for the installation of new, more and/or larger wireless antennas.").)  If the restrictive covenants (as it related to issues such as noise) were not breached for the first time until these larger and more numerous antennas were installed through the end of 2009, the declaratory judgment claim would be timely under Section 2001, as well as the one-year or eighteen-month provision under N.Y. C.P.L.R. § 9802, and the six-year statute of limitations under N.Y. C.P.L.R. § 213.[9]

---

asserting that the ODO Covenant was violated based upon RF emissions or their potential adverse health impact.  Thus, plaintiffs do not ask the Court to make a determination as to the safety of RF emissions or to determine that RF emissions from the antennas are "offensive, dangerous or obnoxious" under the ODO Covenant. Therefore, defendants' preemption argument is rendered moot.

[8]  For the purposes of this analysis, the Court assumes, without deciding, that the antennas constitute structures pursuant to R.P.A.P.L. § 2001.

[9]  For the same reasons, the Section 1983 claim, which alleges that the plaintiffs were deprived of procedural due process in connection with this alleged conduct, also cannot be dismissed on timeliness grounds at the motion to dismiss stage. The Section 1983 claim is subject to the three-year

In other words, because there are factual questions regarding the number and size of the subject equipment and when it was put to use that allegedly violated the restrictive covenants, the Court cannot conclude at the motion to dismiss stage of the litigation that plaintiffs' claims would be time-barred.[10]

Defendants seek to overcome this issue by submitting affidavits and arguing, *inter alia*, that the replacement of antennas in 2009 did not constitute new or different conduct. (*See* Wireless Defs.' Reply at 19-20 ("The Wireless Defendants included affidavits with their motion describing in detail the replacement of certain antennas in 2009, which demonstrate that this replacement did not restart the accrual date because the substitution did not creat[e] a different or more extension [sic] violation.") (quotations and citation omitted).) Moreover, recognizing that the Court cannot consider these affidavits in connection with their motion to dismiss, defendants urge the Court to convert the motion to dismiss to a motion for summary judgment. (*See* Wireless Defs.' Mem. of Law at 11 n.10; Wireless Defs.' Reply at 20.) However, as discussed *supra*, the Court in its discretion declines to do so because plaintiffs should obtain discovery on the timing and nature of any new equipment allegedly installed in 2007 through the end of 2009 before having to respond to this timeliness issue.

In sum, because there are factual questions (which cannot be decided based upon the pleadings) regarding the number, size, and timing of the installation of the various antennas on the Property through the end of 2009, the Court cannot conclude at the motion to dismiss stage that plaintiffs' claims would be time-barred.

### C. Plaintiffs Have Provided Sufficient Allegations to Set Forth a Plausible Claim With Respect to the ODO Covenant

Defendants argue in the alternative that, even if the plaintiffs' claim under the ODO Covenant is not barred under the doctrine of collateral estoppel and is timely, the claim should be dismissed as a matter of law because the ODO Covenant cannot plausibly prohibit the defendants' conduct. The Court disagrees. For the reasons set forth below, the Court concludes that plaintiffs have provided sufficient allegations to set forth a plausible claim that the noise emanating from the Property violates the ODO Covenant. Thus, the claim under the ODO Covenant survives a

---

statute of limitations under N.Y. C.P.L.R. § 214(5). *See, e.g.*, *Ormiston v. Nelson,* 117 F.3d 69, 71 (2d Cir. 1997). Because the due process claim is allegedly based in part upon conduct that took place in 2009, the claim survives a motion to dismiss on timeliness grounds. However, as noted *infra*, the Section 1983 claim does not survive a motion to dismiss because of other defects in the pleading, but is dismissed with leave to re-plead.

[10] In addition, plaintiffs argue that in the event a statute applies, the defendants should be estopped from asserting that defense because defendants did not provide plaintiffs with the statutorily required notice under the Village code. (Pls.' Opp. at 34-36.) In response, defendants argue that the Village is exempt from providing notice when equipment is collocated. (Wireless Defs.' Reply at 16-17; Reply Decl of J. Nally ¶¶ 5-9, 11.) However, as discussed *infra* and as the Village conceded at oral argument, the issue of whether or not the equipment was collocated pursuant to the Village Code is a question of fact that cannot be resolved at this stage. In any event, the Court need not decide at this juncture whether defendants should be estopped from asserting a statute of limitations defense because the Court has already concluded, independent of this issue, that the claims survive a motion to dismiss on timeliness grounds.

motion to dismiss on this ground.

In response to plaintiffs asserting that the ODO Covenant was violated based upon noise emanating from the antennas on the Property, defendants cite *Herald Square S. Civic Association v. Consolidated Edison Co. of N.Y., Inc.*, 307 A.D.2d 213 (N.Y. App. Div. 1st Dep't. 2003) and *Kress v. Westside Tennis Club*, 293 N.Y.S.2d 666 (N.Y. Sup. Ct. 1968) for the proposition that interpreting noise as barred under the ODO Covenant would be "wholly inconsistent" with the narrow construction of covenants under New York law. (Wireless Defs.' Reply at 4.) Defendants' argument is without merit. As discussed below, those cases are inapposite to the instant case.

First, in *Herald Square*, 307 A.D.2d at 213-14, the First Department affirmed the lower court's ruling that a "21st-century electric substation is not comparable to the 19th-century trades and businesses specifically enumerated in the covenant." *See Herald Square*, No.101667/03, 2003 WL 24132999, at *5-6 (March 24, 2003 N.Y. Sup. Ct. 2003) ("[The] 1846 deed . . . precludes the use of any part of the property 'for any slaughter house, smith shop, forge, furnace, steam engine, brass foundry, nail or other iron factory or any manufactory of gun powder, glue, varnish, vitriol, ink or turpentine or for the tanning, dressing or preparing skins, hides or leather or any brewery, distillery or any other noxious or dangerous trade or business.'") However, plaintiffs never argued that noise was a violation of the restrictive covenant; rather, plaintiffs in the underlying case argued, pursuant to a section of a zoning resolution, that defendant must apply for a noise variance from the New York City Board of Standards and Appeals. *See Herald Square*, 2003 WL 24132999, at *5. Thus, the Court did not decide whether excessive noise could constitute a violation of the language of that restrictive covenant.

Second, with respect to *Kress,* the nature of the covenants and the circumstances in that case are clearly distinguishable from the instant case. In *Kress*, the covenants at issue provided that property would be used for private residence purposes only with the exception of tennis club's property so long as it was used for "club purposes," and the developer's successor granted approval to tennis club for music festival. *Kress*, at 667-68. The court concluded that, when all of the covenants and restrictions were read together, the covenant could not be read to preclude public shows such as musical festivals regardless of noise. *Id.* at 669 ("When these words are construed in context it is clear that a public music show is not within the purview of the restriction. The intent of said paragraph is to restrict businesses that are concerned with manufacturing, mental institutions or hospitals or those giving off foul odors or which are dangerous.") (citation omitted). In other words, the Court noted that, since the clear intention of the founders of the community was to allow public Tennis Championships, it made no sense to read the restriction as prohibiting public music festivals. *Id*. (it was not the intention of the drafters to ban public shows "since the founders of the community wished to have the defendant continue its public Tennis Championships" and, "[a]ccordingly, the music festivals do not come within the said covenants and restrictions").[11]

---

[11] The court also found, in the alternative, that even if the restriction applied to music festivals, there was insufficient evidence of noise issues to enjoin the festival as a "noxious, offensive or dangerous trade or business" under the covenant. *See id*. ("According to the record, although the noise of the crowd and music was loud at some of the ten performances a year, no resident other than plaintiff

In the instant case, the ODO Covenant provides that "no use of the premises shall be made or permitted which would be offensive, dangerous or obnoxious to the owners or any owner (now or hereafter) of land within a radius of one mile of the premises whether by reason of smoke, odor, fumes or any other use whatsoever offensive to such owners or owner of land." (Compl. Ex. A, ¶ 2.) In interpreting this sentence, the doctrine of *ejusdem generis* limits the construction of these general words to things of the same kind, character or nature as those enumerated before them. *See Kress*, 293 N.Y.S.2d at 668-669 (collecting cases). In the instant case, to understand this restriction in its context, one must look to the prior clause that allows "municipal uses . . . and [] recreational facilities for use by the People of Bayville" and then broadly prohibits "public amusements, concessions, vending, restaurants" or any other "commercial enterprise." (Compl. Ex. A.) In other words, it is abundantly clear that the Grantor was seeking to preserve the bucolic nature of the land for the residents of Bayville, but then went even further to protect landowners within a one-mile radius from any other non-commercial use that would substantially interfere with neighboring landowners' enjoyment of their land. Thus, when the ODO Covenant is read and construed in that context, there is no question that it should be interpreted to include any uses that are physically detectable and irritating to the physical senses in any way, and it is clear that the intent of the Grantor was to protect residents within the provided one-mile radius of the Property from these physical irritants. *See Perrin II*, 70 A.D.3d at 836 ("Restrictive covenants will be enforced when the intention of the parties is clear and the limitation is reasonable and not offensive to public policy"); *accord Chambers v. Old Stone Hill Rd. Assoc.*, 1 N.Y.3d 424, 431 (N.Y. 2004). Similarly, although the ODO Covenant gave as examples "smoke, odor, fumes," there is no suggestion that the Covenant was being limited solely to those types of irritants or issues; in fact, those examples are followed by the extremely broad catch-all phrase "or any other use whatsoever offensive of such owners or owner of land." (Compl. Ex. A, ¶ 2.) In other words, unlike in *Kress*, there is simply no indication that the Grantor in the instant case was attempting to limit the language in order to allow certain types of other physical irritants, such as excessive noise, that could significantly impair the use of, or a use that would destroy the use and enjoyment of, the neighboring land. In short, there is simply no basis, given the extremely broad language of the ODO Covenant in its proper context, to conclude that issues of noise should be excluded as a matter of law from the scope of the ODO Covenant.

Therefore, for the reasons set forth above, the Court concludes that plaintiffs have alleged a plausible claim that defendants violated the ODO Covenant based upon the noise impact resulting from the use of the Property. Accordingly, the motion to dismiss on this ground is denied.[12]

---

testified that it was offensive nor has plaintiff shown any substantial annoyance or injury to his comfort and enjoyment of his home.").

[12] Plaintiffs also argue that, in addition to alleged excessive noise, the ODO Covenant prohibits uses that are aesthetically offensive, and that plaintiffs should also be able to pursue such a claim with respect to the defendants' use of the Property. However, the Court disagrees. There is nothing in the plain language of the ODO Covenant that references aesthetic concerns in any way, or even implies that "offensive" uses would include aesthetics. Instead, it is clear from the language of the ODO Covenant that the Grantor's intention did not relate to aesthetic issues, but rather was to prevent offensive uses resulting in physical irritants (such as smell or noise) that could substantially

D. Plaintiffs Lack Standing to Enforce the CE Covenant

Defendants argue that the complaint should be dismissed with respect to the CE Covenant because plaintiffs lack standing to enforce the CE Covenant, and the alleged conduct does not violate the CE Covenant. For the reasons set forth below, the Court concludes that plaintiffs lack standing to enforce the CE Covenant.

The relevant portion of the restrictive covenant provides:

> [The Property] *shall be used for municipal uses and purposes and for recreational facilities for use by the People of Bayville, but no public amusements, concessions, vending, restaurants or other commercial enterprises shall be permitted thereon*, and, in addition, no use of the premises shall be made or permitted which would be offensive, dangerous or obnoxious to the owners or any owner (now or hereafter) of land within a radius of one mile of the premises whether by reason of smoke, odor, fumes or any other use whatsoever offensive to such owners or owner of land.

(Compl. ¶¶ 49, 75, Ex. A, ¶ 2.) (emphasis added to CE Covenant).

It is well-settled that "[r]estrictive covenants will be enforced when the intention of the parties is clear and the limitation is reasonable and not offensive to public policy" *Perrin II*, 70 A.D.3 at 836; *see also Chambers*, 1 N.Y.3d at 431; *accord 9394 LLC v. Farris*, 10 A.D.3d 708, 709 (N.Y. App. Div. 2d Dep't. 2004). Moreover, a restrictive covenant must be strictly construed against those seeking to enforce it, and may not be given an interpretation extending beyond the clear meaning of its terms. *See Kemp v. Vill. of Scarsdale*, 71 A.D.3d 956 (N.Y. App. Div. 2d Dep't. 2010) (collecting cases); *see also Marsh v. Adams*, 171 Misc. 414, 416 (N.Y. Sup. 1939) ("it is well settled that it must be literally and strictly construed against the party seeking to enforce it"). However, "[a]s a general rule, absent status as an intended third-party beneficiary, one may sue on a contract only if one is a party to the contract." *Teevee Toons, Inc. v. Gerard Schubert GMBH*, No. 00 Civ. 5189 (RCC), 2006 WL 2463537, at *3 (S.D.N.Y. Aug. 23, 2006). The test for determining who is a third-party beneficiary in New York is whether the two principal parties entered into the contract with the intention, either express or implied, of directly and primarily benefitting a third party. *See Mendel v. Henry Phipps Plaza West, Inc.*, 6 N.Y.3d 783, 786 (N.Y. 2006) (tenants were held not to be third-party beneficiaries of the land disposition agreement conveying city property to the owner and to lack standing to enforce a

---

impair the neighboring landowners' use and enjoyment of their own property. In fact, the intention of the Grantor not to restrict uses on aesthetic grounds becomes even clearer when all of the restrictions and conditions in the deed are considered. In particular, paragraph four makes clear that, notwithstanding the other restrictions and covenants, the Village was permitted under the deed to erect a water tower (of unspecified size) on the Property. *See* Compl. Ex. A, ¶ 4 ("Notwithstanding the foregoing provisions, a water tank may be erected on said premises at any point within 200 feet of Godfrey Avenue."). The Grantor's decision to allow the Village to build a water tower of unspecified size on the Property is clear and unequivocal evidence (which is consistent with the plain language of the ODO Covenant) that the Grantor did not intend the ODO Covenant to preclude uses that were aesthetically offensive. Thus, plaintiffs may pursue the claim that the ODO Covenant is violated by excessive noise from the defendants' use of the Property, but may not pursue that claim on the basis of aesthetics.

13

restrictive covenant against the housing company (citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336 (N.Y. 1983).)) The party claiming to be a third-party beneficiary has the burden of demonstrating that the contract terms grant it an enforceable right. *See Fourth Ocean Putnam Corp v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38 (N.Y. 1985).

Here, there is no ambiguity. The CE Covenant provides that the Property "shall be used for municipal uses and purposes and for recreational facilities for use by the People of Bayville, but no public amusements, concessions, vending, restaurants or other commercial enterprises shall be permitted thereon." (Compl. Ex. A, ¶ 2.) In other words, by its plain language, the Property is to be dedicated for municipal or public use with a corresponding limitation on commercial enterprises for the *People of Bayville*, the public. Although the CE Covenant dedicates the Property for use by the public, it does not suggest that the Grantor had an intent to permit enforcement by each and every member of the public. Thus, plaintiffs, as members of the public, are at most, incidental beneficiaries of the CE Covenant and lack standing to enforce it. *See H.R. Moch Co. V. Rensaelaer Water Co.*, 247 N.Y. 160, 165 (N.Y. 1928) (holding that absent an intention to permit enforcement by the public, a contract between a water company and a city to provide water to the city has a benefit to the public that is incidental. "An intention to assume an obligation of indefinite extension to every member of the public is seen to be the more improbable when we recall the crushing burden that the obligation would impose"); *see also Burns Jackson Miller Summit & Spitzer*, at 336 (finding that plaintiff is an incidental beneficiary of the collective bargaining agreement); *accord Fourth Ocean Putnam Corp v. Interstate Wrecking Co., Inc.*, at 45 (a third party can recover for a breach of contract if the language of the agreement "clearly evidences an intent to permit enforcement by the third party"). To the extent plaintiffs assert that they are specific third party beneficiaries, the Court disagrees. As discussed *supra*, owners within one-mile of the Property are expressly protected from physical irritants such as noise emanating from the Property *under the ODO Covenant*, but unlike the ODO Covenant (under which the neighboring landowners have standing), the CE Covenant names no specific group of intended beneficiaries.[13] Therefore, for the reasons stated above, by its plain language the CE Covenant is not intended to benefit a specific group of neighbors nor is it intended to permit enforcement of the CE Covenant by every resident of Bayville. Thus, the Court will not extend the meaning of the CE Covenant beyond the clear meaning of its terms. Accordingly, the Court concludes that the Grantor's intent is clear and plaintiffs are incidental beneficiaries of the CE Covenant. Thus, plaintiffs lack standing to enforce the CE Covenant and the portion of the claim based on that Covenant is dismissed.

F. The Section 1983 Due Process Claim

Defendants argue that plaintiffs' Section 1983 claim must be dismissed because it does not set forth sufficient allegations for a

---

[13] Furthermore, plaintiffs cite no authority for the proposition that incidental beneficiaries have standing to enforce a restrictive covenant. To the contrary, as noted above, it is clear that "[a] person who is not a party to the contract may bring an action for breach of contract if she or he is an intended beneficiary, and not merely an incidental beneficiary of the contract." *Cauff, Lippman & Co. v. Apogee Fin. Group, Inc.*, 807 F. Supp. 1007, 1019 (S.D.N.Y. 1992); *accord Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005).

14

plausible claim. For the reasons set forth below, the Court agrees that dismissal of plaintiffs' Section 1983 claim against the defendants is warranted. However, because plaintiffs may be capable of remedying the pleading defect identified in this Memorandum and Order, the Court grants plaintiffs leave to replead.

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983.[14] "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979). As set forth below, the Court grants defendants' motion to dismiss with respect to plaintiffs' Section 1983 claim.

In order to assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Employees, UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation omitted).[15] In order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of " 'an opportunity . . . granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971).

Here, plaintiffs' complaint does not contain any facts concerning the process alleged due or how that process was denied. Without any supporting facts, plaintiffs merely conclude that the Village Defendant has interpreted *Perrin I* as allowing the preemption of plaintiffs' property rights pursuant to The

---

[14] Specifically, Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[15] As a threshold matter, defendants argue that plaintiffs' Section 1983 claim should be dismissed because they have failed to allege that they have been deprived of any property interest under the Due Process Clause of the Fourteenth Amendment. (Defs.' Mem. of Law at 42-45.) However, the Court disagrees. "A federally protectable property interest has been recognized where the right to use one's land in a certain way, as for instance, by a building permit or a zoning ordinance, has been infringed." *Katz v. Stannard Beach Assoc.*, 95 F. Supp. 2d 90, 96 (D. Conn. 2000) (collecting cases); *see also City of Oakland v. Abend*, No. C-07-2142 EMC, 2007 WL 2023506, at *5 (N.D. Cal. July 12, 2007) ("The Ninth Circuit has recognized a constitutionally protected property interest in a landowner's right to devote [his or her] land to any legitimate use." (citations and quotations omitted).) Here, plaintiffs allege that they are being substantially deprived of the use and enjoyment of their land because of the defendants' use of the Property. The Court concludes that the complaint sufficiently alleges a property interest for the Section 1983 claim to survive a motion to dismiss.

Telecommunications Act of 1996 and, thus, have applied the Act to deprive plaintiffs of their property rights. (Compl. ¶¶ 24-25, 73-74, 103; Pls.' Opp. at 15, 23.) In addition, plaintiffs conclude that their property rights were deprived by the Village Defendant "without having afforded the plaintiffs an opportunity at a meaningful time and meaningful manner within which to review the defendant Village's behavior." (Compl. ¶ 118.) In other words, plaintiffs were unable to articulate in their complaint what process was due by the Village Defendant or how that process was deprived, only that they were never afforded an opportunity to review the Village Defendant's behavior. (*See* Pls. Opp. at 24.) ("Because the Village failed to afford the plaintiffs even a spectre of due process . . . the plaintiffs . . . seek redress . . . to prevent further deprivation of their rights.") The Court concludes that these conclusory allegations cannot survive defendants' motion to dismiss *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'") However, at oral argument and in their opposition papers, plaintiffs argued that, under the Village code, they were entitled to notice for each new antenna that was installed during the above-referenced refurbishment, installation and replacement that took place through the end of 2009. (Pls.' Opp. at 6-9.) Thus, because plaintiffs may be capable of remedying this pleading failure, the Court grants plaintiffs leave to re-plead.[16]

---

[16] Defendants contend that any claim based upon such alleged lack of notice must fail as a matter of law because the activity was a "collocation" which would exempt plaintiffs from notice under the Village code. (*See* Wireless Defs. Reply at 17-18; Reply Decl of J. Nally ¶¶ 5-9, 11.) However, as

The Court, therefore, dismisses the Section 1983 claim against the Village Defendant without prejudice, but grants plaintiffs leave to re-plead.[17] Specifically, plaintiffs shall submit any such amended pleading within thirty days of this Memorandum and Order. Failure to submit an amended pleading will result in dismissal of this cause of action with prejudice.

IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiffs' complaint is granted in part and denied in part. Specifically, the motion is granted with respect to plaintiffs' claim which seeks declaratory relief with

---

noted *supra*, this "collocation" issue is a factual question that the Court was unable to determine at the motion to dismiss stage of the proceeding. Thus, it would not be futile for plaintiffs to add such a due process claim to an amended complaint.

[17] The complaint does not contain any facts alleging that the Wireless Defendants were acting "under the color of state law" pursuant to 42 U.S.C. § 1983 or that they violated plaintiffs' procedural due process rights. (Compl. ¶¶ 115-120.) A private actor may be considered to be acting under the color of state law for purposes of § 1983 if the private actor was "'a willful participant in joint activity with the State or its agents.'" *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). In the instant case, there are no allegations that the Wireless Defendants acted jointly with the Village in any way with respect to any due process violation. Thus, the Section 1983 claim against the Wireless Defendants must also be dismissed o this ground. However, the Court dismisses the Section 1983 claim against the Wireless Defendants without prejudice, and will allow plaintiffs the opportunity, if possible, to correct this pleading defect.

respect to the CE Covenant, and is denied with respect to the ODO Covenant. The motion is also granted with respect to plaintiffs' Section 1983 claim, but plaintiffs are granted leave to replead that claim. In the first amended complaint, which shall be filed within thirty (30) days of this Memorandum and Order, plaintiffs may also supplement their allegations under the ODO Covenant regarding noise issues.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: February 25, 2011
Central Islip, New York

\* \* \*

Plaintiffs are represented by Andrew J. Campanelli of Campanelli & Associates, P.C., 623 Stewart Avenue, Suite 203, Garden City, NY 11530. The Incoporated Village of Bayville is represented by Michael L. Cirrito and James P. Nally of White, Cirrito & Nally, LLP, 58 Hilton Avenue, Hempstead, NY 11550. Attorneys for the Wireless Defendants are as follows: New York SMSA Limited is represented by Alfred L. Amato and Richard Stephen Keenan of Amato Law Group, PLLC, 666 Old Country Road, Suite 901, Garden City, NY 11530, and Joshua S. Turner, Brendan T. Carr and Brendan J. Morrissey of Wiley Rein LLP, 1776 K Street N.W., Washington, DC 20006. Sprint Spectrum Realty Company L.P. and Nextel of New York are represented by John J. Coughlin and Lawrence C. Re of Re, Nielson, Huber & Coughlin, LLP, 36 North New York Avenue, Huntington, NY 11743. T-Mobile Northeast LLC is represented by A. Ross Pearlson of Sills Cummis Epstein & Gross, PC, One Riverfront Plaza, Newark, NJ 07102.